1
2
3
4
5
6
7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8
AT SEATTLE

9  BACKPAGE.COM, LLC,                          )
                                               )   No.
10                     Plaintiff,              )
                                               )
11          v.                                 )   **MOTION OF PLAINTIFF**
                                               )   **BACKPAGE.COM FOR**
12  ROB MCKENNA, Attorney General of the       )   **TEMPORARY RESTRAINING**
    State of Washington; RANDY J. FLYCKT,      )   **ORDER AND PRELIMINARY**
13  Adams County Prosecuting Attorney;         )   **INJUNCTION**
                                               )
14  BENJAMIN C. NICHOLS, Asotin County         )
    Prosecuting Attorney; ANDREW K. MILLER,    )
15  Benton County Prosecuting Attorney; GARY   )
    A. RIESEN, Chelan County Prosecuting       )
16  Attorney; DEBORAH S. KELLY, Clallam        )
    County Prosecuting Attorney; ANTHONY F.    )
17  GOLIK, Clark County Prosecuting Attorney;  )
    REA L. CULWELL, Columbia County           )
18  Prosecuting Attorney; SUSAN I. BAUR,       )
    Cowlitz County Prosecuting Attorney;       )
19  STEVEN M. CLEM, Douglas County             )
    Prosecuting Attorney; MICHAEL SANDONA,     )
20  Ferry County Prosecuting Attorney; SHAWN P.)
    SANT, Franklin County Prosecuting Attorney;)
21  MATTHEW L. NEWBERG, Garfield County        )
    Prosecuting Attorney; ANGUS LEE, Grant     )
22  County Prosecuting Attorney; H. STEWARD    )
    MENEFEE, Grays Harbor County Prosecuting   )
23  Attorney;                                  )
                                               )
24          *(Continued on Page 2)*            )
                                               )
25  _____        )

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1

*(Continued from Page 1)*

2

GREGORY M. BANKS, Island County      )
Prosecuting Attorney; SCOTT W.        )

3

ROSEKRANS, Jefferson County Prosecuting  )
Attorney; DAN SATTERBERG, King County  )

4

Prosecuting Attorney; RUSSELL D. HAUGE,  )
Kitsap County Prosecuting Attorney;   )

5

GREGORY L. ZEMPEL, Kittitas County    )

6

Prosecuting Attorney; LORI L. HOCTOR,  )
Klickitat County Prosecuting Attorney;  )

7

JONATHAN L. MEYER, Lewis County       )
Prosecuting Attorney; JEFFREY S.      )

8

BARKDULL, Lincoln County Prosecuting  )

9

Attorney; MICHAEL K. DORCY, Mason     )
County Prosecuting Attorney; KARL F.  )

10

SLOAN, Okanogan County Prosecuting    )
Attorney; DAVID J. BURKE, Pacific County  )

11

Prosecuting Attorney; THOMAS A.       )

12

METZGER, Pend Oreille County Prosecuting  )
Attorney; MARK LINDQUIST, Pierce      )

13

County Prosecuting Attorney; RANDALL K.  )

14

GAYLORD, San Juan County Prosecuting  )
Attorney; RICHARD WEYRICH, Skagit     )

15

County Prosecuting Attorney; ADAM N.  )
KICK, Skamania County Prosecuting     )

16

Attorney; MARK K. ROE, Snohomish      )
County Prosecuting Attorney; STEVEN J.  )

17

TUCKER, Spokane County Prosecuting    )

18

Attorney; TIMOTHY D. RASMUSSEN,       )
Stevens County Prosecuting Attorney; JON  )

19

TUNHEIM, Thurston County Prosecuting  )
Attorney; DANIEL H. BIGELOW,          )

20

Wahkiakum County Prosecuting Attorney;  )

21

JAMES L. NAGLE, Walla Walla County    )
Prosecuting Attorney; DAVID S.        )

22

McEACHRAN, Whatcom County             )
Prosecuting Attorney; DENIS P. TRACY,  )

23

Whitman County Prosecuting Attorney;  )

24

JAMES P. HAGARTY, Yakima County       )
Prosecuting Attorney,                 )

25

                                      )

26

            Defendants, in their      )
            official capacities.      )

27

_____  )

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .............................................................................................................. 3

   A.  The State Attorneys General Crusade Against Adult-Oriented Advertising on the
Internet. ......................................................................................................................... 3

   B.  The Washington Legislature Passes SB 6251. .......................................................... 5

   C.  SB 6251 Will Affect Thousands of Websites and Online Services. ........................... 7

III. ARGUMENT ................................................................................................................... 8

   A.  Standards for Temporary Restraining Order or Preliminary Injunction. ..................... 8

   B.  Backpage.com is Highly Likely to Succeed on the Merits of Its Claims. .................. 8

      1.  SB 6251 Violates and Is Preempted by Section 230 of the Communications
Decency Act. ......................................................................................................... 8

      2.  SB 6251 Violates the First and Fifth Amendments Because It Creates a Strict
Liability Crime. ..................................................................................................... 12

      3.  Senate Bill 6251 Is an Overbroad Content-Based Restriction That Violates the
First Amendment ................................................................................................... 16

     4. SB 6251 Violates the Commerce Clause. ................................................................. 22

   C.  Backpage.com, Other Online Services, and the Public Will Suffer Irreparable Harm
If SB 6251 Is Not Enjoined. ........................................................................................ 23

   D.  Granting Injunctive Relief Is In the Public Interest. ................................................... 24

   E.  The Balance of the Equities Favors Granting Injunctive Relief .................................. 24

IV. CONCLUSION ............................................................................................................... 24

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACLU v. Johnson,*
194 F.3d 1149 (10th Cir. 1999) .................................................................22

*Ali v. Fed. Bureau of Prisons,*
552 U.S. 214 (2008) ...................................................................................10

*Am. Booksellers Found. v. Dean,*
342 F.3d 96 (2d Cir. 2003) .........................................................................22

*Am. Civil Liberties Union of Nev. v. City of Las Vegas,*
466 F.3d 784 (9th Cir. 2006) ......................................................................16

*Am. Civil Liberties Union v. Ashcroft,*
322 F.3d 240 (3d Cir. 2003) .......................................................................19

*Am. Libraries Ass'n v. Pataki,*
969 F. Supp. 160 (S.D.N.Y. 1997) .............................................................22

*Ashcroft v. Am. Civil Liberties Union,*
542 U.S. 656 (2004) ...................................................................................16

*Ashcroft v. Free Speech Coalition,*
535 U.S. 234 (2002)......................................................................17, 20, 21

*Baca v. Moreno Valley Unified Sch. Dist.,*
936 F. Supp. 719 (C.D. Cal. 1996) ............................................................24

*Barnes v. Yahoo!, Inc.,*
570 F.3d 1096 (9th Cir. 2009) ....................................................................11

*Bartnicki v. Vopper,*
532 U.S. 514 (2001)....................................................................................21

*Batzel v. Smith,*
333 F.3d 1018 (9th Cir. 2003) ...........................................................9, 10, 14

*Berger v. City of Seattle,*
569 F.3d 1029 (9th Cir. 2009) ....................................................................16

*Broadrick v. Oklahoma,*
413 U.S. 601 (1973).....................................................................................17

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Brown v. Cal. Dep't of Transp.*,
   321 F.3d 1217 (9th Cir. 2003) ................................................................23

*Brown v. Entm't Merchs. Ass'n*,
   131 S. Ct. 2729 (2011).................................................................... 16, 19

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (2003) ..............................................................................9

*Central Hudson Gas & Electric Corp. v. Public Service Commission*,
   447 U.S. 557 (1980)................................................................................21

*Chicago Lawyer's Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
   519 F.3d 666 (7th Cir. 2008) ..............................................9, 10, 11, 14

*Ctr. for Democracy & Tech. v. Pappert*,
   337 F. Supp. 2d 606 (E.D. Pa. 2004)......................................................22

*Cyberspace Commc'ns Inc. v. Engler*,
   142 F. Supp. 2d 827 (E.D. Mich. 2001) ................................................22

*Dart v. Craigslist, Inc.*,
   665 F. Supp. 2d 961 (N.D. Ill. 2009)................................................10, 11

*Doe II v. MySpace Inc.*,
   175 Cal. App. 4th 561, 96 Cal. Rptr. 3d. 148 (2009) ............................10

*Doe v. MySpace, Inc.*,
   528 F.3d 413 (5th Cir. 2008) ...................................................................9

*Elrod v. Burns*,
   427 U.S. 347 (1976)................................................................................23

*Fair Hous. Council v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) (en banc) ...............................................11

*Healy v. Beer Inst., Inc.*,
   491 U.S. 324 (1989)................................................................................22

*Higher Taste v. City of Tacoma*,
   755 F.Supp.2d 1130 (W.D. Wash. 2010) ...............................................24

*Hunt v. City of L.A.*,
   638 F.3d 703 (9th Cir. 2011) ..................................................................18

*Johnson v. Arden*,
   614 F.3d 785 (8th Cir. 2010) ....................................................................9

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — iii

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003) ....................................................................24

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009) ..................................................................24

*Liparota v. United States*,
   471 U.S. 419 (1985).................................................................................15

*M.A. v. Village Voice Media Holdings, LLC*,
   809 F. Supp. 2d 1041 (E.D. Mo. 2011) ............................................10, 11

*Mercer, Fraser Co. v. Cnty. of Humboldt*,
   2008 WL 4344523 (N.D. Cal. Sept. 22, 2008) ........................................24

*Mishkin v. New York*,
   383 U.S. 502 (1966).................................................................................14

*Morissette v. United States*,
   342 U.S. 246 (1952).................................................................................15

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ....................................................................9

*New York v. Ferber*,
   458 U.S. 747 (1982)...........................................................................13, 14

*People v. Gourlay*,
   2009 WL 529216 (Mich. Ct. App. Mar. 3, 2009) ....................................10

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970).................................................................................23

*PSINet, Inc. v. Chapman*,
   362 F.3d 227 (4th Cir. 2004) ....................................................................22

*Reno v. Am. Civil Liberties Union*,
   521 U.S. 844 (1997)...............................................................17, 18, 19, 21

*Republic of Iraq v. Beaty*,
   556 U.S. 848 (2009).................................................................................10

*S.O.C., Inc. v. Cnty. of Clark*,
   152 F.3d 1136 (9th Cir.), *amended by* 160 F.3d 541 (9th Cir. 1998)..........17, 21

*Se. Booksellers Ass'n v. McMaster*,
   282 F. Supp. 2d 389 (D.S.C. 2003) ..........................................................22

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — iv

*Shelton v. Sec'y, Dep't of Corr.*,
   802 F. Supp. 2d 1289 (M.D. Fla. 2011)........................................................15

*Smith v. California*,
   361 U.S. 147 (1960)........................................................................12, 13

*Speiser v. Randall*,
   357 U.S. 513 (1958)................................................................................20

*Staples v. United States*,
   511 U.S. 600 (1994)................................................................................15

*State v. Heckel*,
   143 Wn.2d 824, 24 P.3d 404 (2001)......................................................22

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) ..................................................................8

*Thalheimer v. City of San Diego*,
   645 F.3d 1109 (9th Cir. 2011) ................................................................8

*Turner Broad. Sys., Inc. v. F.C.C.*,
   512 U.S. 622 (1994)................................................................................17

*United States v. Gonzales*,
   520 U.S. 1 (1997)....................................................................................10

*United States v. Playboy Entm't Grp., Inc.*,
   529 U.S. 803 (2000)................................................................................16

*United States v. U.S. Gypsum Co.*,
   438 U.S. 422 (1978)................................................................................15

*United States v. United States District Court*,
   858 F.2d 534 (9th Cir. 1988) ................................................................14

*United States v. Williams*,
   553 U.S. 285 (2008)................................................................................20

*United States v. X-Citement Video, Inc.*,
   513 U.S. 64 (1994)......................................................................13, 14, 15

*United States v. X-Citement Video, Inc.*,
   982 F.2d 1285 (9th Cir. 1992) ..............................................................13

*Vermont Right to Life Comm., Inc. v. Sorrell*,
   221 F.3d 376 (2d Cir. 2000) ..................................................................19

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — v

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Video Software Dealers Ass'n v. Webster*,
    968 F.2d 684 (8th Cir. 1992) .................................................................. 14

*Voicenet Commun'cns, Inc. v. Corbett*,
    2006 WL 2506318 (E.D. Pa. Aug. 30, 2006) ...................................... 10

*Winter v. NRDC*,
    555 U.S. 7 (2008)............................................................................................8

*Zeran v. Am Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) .....................................................9, 10, 11

STATUTES

18 U.S.C. § 2252 ................................................................................... 13

18 U.S.C. § 2252A ................................................................................ 20

28 U.S.C. § 1746 ................................................................................... 20

42 U.S.C. § 1983 .....................................................................................8

47 U.S.C. § 230 ............................................................................passim

RCW 9.68A.040 .................................................................................... 21

RCW 9A.44 ............................................................................................. 21

OTHER AUTHORITIES

Fed. R. Civ. P. 65 ....................................................................................1

U.S. Const. amend. V ...........................................................................2

U.S. Const. amend I.....................................................................passim

U.S. Const. art. I, § 8, cl. 3 ................................................................ 22

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — vi

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Backpage.com, LLC ("Backpage.com") requests immediate injunctive relief to prevent enforcement of a new law, Senate Bill 6251 ("SB 6251"), which will otherwise take effect June 7, 2012, and may be immediately used to allege unconstitutional felony criminal charges against Plaintiff and other online service providers.  Plaintiff respectfully requests that the Court issue a temporary restraining order, followed by a preliminary injunction after any further briefing and hearing as the Court directs.

## I.      INTRODUCTION

Starting June 7, 2012, all manner of online service providers nationally will be at risk of felony prosecution under a new Washington state law.  Although legislators named the offense "advertising commercial sexual abuse of a minor," SB 6251 in purpose and effect seeks to eliminate adult-oriented Internet advertising.  The law unconstitutionally poses a threat of strict criminal liability not only to classified ad websites (such as Backpage.com and craigslist), but also to *any* site that allows third parties to post content including images. The law encompasses social networking sites, dating sites, information sites, discussion forums, blogs, chat rooms, and sites that allow user comments and reviews – as well as to all online service providers involved in the chain of disseminating or displaying the content – *i.e.*, search engines, internet service providers ("ISPs"), and more.  In other words, merely serving as a conduit for certain content can give rise to felony liability under SB 6251.

SB 6251 makes it a felony to knowingly publish, disseminate, or display or to "directly or indirectly" cause content to be published, disseminated or displayed if it contains a "depiction of a minor" and any "explicit or implicit offer" of sex for "something of value."  It is *not* a defense that a defendant did not know the age of the person depicted, and a defendant may not rely on representations by or the apparent age of the person depicted.  Instead, the law allows online service providers only one defense – that they obtained and retained certain government or school identification for the person depicted.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    SB 6251 is antithetical to free speech and requires online service providers to act as

2  the government's censors of the Internet.  The law violates the Communications Decency

3  Act of 1996 ("CDA"), 47 U.S.C. § 230, as well as the First and Fifth Amendments and

4  Commerce Clause of the Constitution.  This Court should immediately and permanently

5  enjoin its enforcement for at least four reasons.

6    *First*, SB 6251 violates section 230 of the CDA.  Explicitly designed to foster free

7  and robust speech on the Internet, section 230 prohibits treating an online service provider

8  "as the publisher or speaker of any information provided by another information content

9  provider," and forbids imposition of liability under any inconsistent state law.  47 U.S.C.

10  §§ 230(c)(1), (e)(3).  This broad immunity bars state liability for websites and other online

11  services stemming from third-party content, as courts across the country have uniformly

12  held.  SB 6251 violates section 230 because it forces online service providers to choose

13  between censoring third-party content and risking felony criminal penalties.

14    *Second*, SB 6251's imposition of strict criminal liability on speech violates the First

15  Amendment and the Due Process Clause of the Fifth Amendment.  The Supreme Court has

16  long held that the State may not impose criminal liability on distributors of expressive

17  materials without proof of scienter because of the severe chilling effect that otherwise would

18  result.  More specifically, a defendant may not be criminally liable for distributing materials

19  containing depictions of minors absent proof of the defendant's knowledge that the persons

20  depicted are minors.

21    *Third*, SB 6251 also contravenes the First Amendment because it is vastly

22  overbroad and not the least restrictive means of achieving the legislature's goals.  The law

23  is overbroad both because of the countless parties within its ambit and subject to criminal

24  liability (websites, social media providers, search engines, ISPs and others) and because of

25  the scope of third-party content that is affected and chilled (essentially all such content, and

26  even private messages and emails), which is fully protected speech. SB 6251 criminalizes

27  posts that contain any "implicit" offer of sex for "something of value," a standard so vague

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — 2

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

that no person of ordinary intelligence can determine what conduct is criminal.  The law's requirement that websites obtain and retain identification will deter adults from engaging in protected speech.  Even assuming the State's aim was to prevent commercial sexual exploitation of minors, SB 6251 is far from the least restrictive means to do so.

*Finally*, SB 6251 violates the Commerce Clause because the statute seeks to regulate conduct outside of Washington.  It is not the states' role to regulate interstate commerce, particularly on the Internet, as Congress reinforced by enacting section 230, to prevent a hodge-podge of different and inconsistent state laws from the occurrence of one interstate act.

## II.     BACKGROUND

### A.     The State Attorneys General Crusade Against Adult-Oriented Advertising on the Internet.

In 2008, a collection of state attorneys general ("AGs") began a crusade against online adult-oriented advertising.  Their initial focus was the well-known classified ad website craigslist.  Eventually, the AGs (forty-two, including Defendant McKenna) publicly issued a joint statement, which included several measures to detect and prevent ads for illegal services in the "erotic services" section of the website.  *See* Declaration of Ambika K. Doran, ¶ 3, Ex. B.  craigslist later took additional voluntary measures, including replacing the "erotic services" category with an "adult services" category.  *Id*. ¶ 4 & Ex. C.  Nonetheless, a subgroup of seventeen AGs demanded that craigslist remove its adult services section entirely.  McKenna did not join this effort because, as a spokesperson for his office stated, it could cause users to post the same ads elsewhere on the site, making it more difficult for law enforcement to police.  *Id.* Ex. D.

craigslist eliminated its adult services category in September 2010, briefly replacing the category with the word "censored."  *Id.* ¶ 6 & Ex. E.  Almost immediately, adult ads migrated to other categories and websites, including Backpage.com.  *Id.*  Backpage.com, like craigslist, operates an online classified advertising service available nationwide.

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — 3

Declaration of Carl Ferrer ¶ 2.  It hosts millions of user posts each month in a multitude of categories (*e.g.*, local places, community, buy/sell/trade, automotive, musician, rentals, real estate, jobs, forums, dating, adult and services) and subcategories.  *Id*. ¶ 5 & Ex. A.

Less than a week after craigslist eliminated its adult services category, the same subgroup of AGs wrote to Backpage.com insisting that it "like craigslist [should] shut[] down the adult services section of its website."  Doran Decl. ¶ 7 & Ex. F.  Backpage.com did not.  When McKenna became president of the National Association of Attorneys General ("NAAG"), NAAG sent and publicly released a letter to Backpage.com that leveled derogatory accusations at the company and requested extensive information "in lieu of a subpoena."  *Id.* ¶ 8 & Ex. G.  At the time, McKenna admitted the AGs "have little legal standing to forcibly shut down the site" and the "broad immunity" provided to websites by the CDA for third-party content is a "high barrier."  *Id.* ¶ 9 & Ex. H.  Nonetheless, he insisted that Backpage.com "take down adult services advertisements altogether and take aggressive steps to be sure such ads don't surface elsewhere on the site."  *Id.*

Backpage.com has attempted to cooperate with the AGs but has resisted the demand to eliminate an adult advertising category, maintaining that censorship is not the solution to problems of human trafficking and child exploitation, but rather that technology and responsible businesses – like Backpage.com – can contribute to combating these problems.

To this end, Backpage.com has worked to prevent misuse of its website, making clear that users may not offer illegal services, and particularly emphasizing that content relating to child exploitation is prohibited.  *See, e.g.*, Ferrer Decl. ¶ 8 & Ex. B (Terms of Use, forbidding any postings relating to "exchanging sexual favors for money or other valuable consideration," and "any material . . . that exploits minors in any way"); Ex. C (Posting Rules providing: "**Any post exploiting a minor in any way will be subject to criminal prosecution and will be reported to the Cybertipline for law enforcement.**" (emphasis in original)).  Users seeking to post or view material in the adult category must verify that they are at least 18 years old.  *Id.* ¶ 10.  The site cautions users to report any post

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — 4

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

that may relate to suspected exploitation of minors or human trafficking and contains links to websites of the National Center for Missing and Exploited Children and the National Human Trafficking Resource Center.  *Id.* ¶ 10 & Exs. D & E.

Backpage.com also takes extensive voluntary measures to police user content.  It employs a three-tiered system that includes automated filtering of nearly all ads and two levels of manual review by more than 100 workers.  *Id.* ¶ 13.  The automated process filters over 26,000 terms, phrases, codes, email addresses, URLs and IP addresses.  *Id.*  Through its review, Backpage.com blocks over a million posts every month.  *Id.* ¶ 14. Backpage.com refers any ads that may indicate child exploitation to the National Center for Missing and Exploited Children, and referred more than 400 ads in April 2012 alone.  *Id.*  Backpage.com also cooperates with law enforcement, including by responding to subpoenas (usually within 24 hours), and using other technological tools to voluntarily collect and submit additional evidence from across the Internet to help with investigations and prosecutions.  *Id.* ¶ 15.

**B.**     **The Washington Legislature Passes SB 6251.**

Working with AG McKenna's office, Senator Jeanne Kohl-Welles introduced SB 6251 in the Washington State Senate on January 16, 2012.  Doran Decl. ¶ 10 & Ex. I.  After several revisions, the Senate and House of Representatives approved the bill on February 8 and 27, 2012, respectively.  Governor Gregoire signed the bill into law on March 29, 2012. Absent relief from this Court, it will take effect June 7, 2012.

The substantive provisions of the final version of the law are as follows:

(1) A person commits the offense of advertising commercial sexual abuse of a minor if he or she knowingly publishes, disseminates, or displays, or causes directly or indirectly, to be published, disseminated, or displayed, any advertisement for a commercial sex act, which is to take place in the state of Washington and that includes the depiction of a minor.

(a) "Advertisement for a commercial sex act" means any advertisement or offer in electronic or print media, which includes either an explicit or implicit offer for a commercial sex act to occur in Washington.

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — 5

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

(b) "Commercial sex act" means any act of sexual contact or sexual intercourse, both as defined in chapter 9A.44 RCW, for which something of value is given or received by any person.

(c) "Depiction" as used in this section means any photograph or visual or printed matter as defined in RCW 9.68A.011 (2) and (3).

(2) In a prosecution under this statute, it is not a defense that the defendant did not know the age of the minor depicted in the advertisement. It is a defense, which the defendant must prove by a preponderance of the evidence, that the defendant made a reasonable bona fide attempt to ascertain the true age of the minor depicted in the advertisement by requiring, prior to publication, dissemination, or display of the advertisement, production of a driver's license, marriage license, birth certificate, or other governmental or educational identification card or paper of the minor depicted in the advertisement and did not rely solely on oral or written representations of the minor's age, or the apparent age of the minor as depicted. In order to invoke the defense, the defendant must produce for inspection by law enforcement a record of the identification used to verify the age of the person depicted in the advertisement.

*See id*. Ex. M.

Significantly, by its terms, the law does not require any scienter. It does indicate that one who "knowingly publishes, disseminates, or displays" violates the law, but in the very next clause it imposes liability on persons who merely "cause[] directly or indirectly" content "to be published, disseminated, or displayed," *i.e.*, those who do so unknowingly. The offending content is not confined to advertisements for child sex trafficking, but includes postings of any kind that depict a minor and contain an "implicit" offer for sex in exchange for "something of value."[1] The statute does not define "implicit" or "something of value." There is no requirement that any sex act ever take place,[2] meaning it is a felony to engage in the prohibited speech by itself. And a party can escape liability only by obtaining and retaining certain forms of identification, even if it is otherwise able to verify the age of the person depicted in the post.

---

[1] This language was broadened significantly in the drafting process. *Compare id.*, Exs. K & L (definitions of "advertisement" in original version and first substitute of SB 6251).

[2] A prior draft did require that a crime of commercial sexual abuse of a minor or prostitution actually have occurred as a result of the ad. *Id*. ¶ 13 & Ex. L (substitute SB 6251).

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION — 6

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

During hearings and in public statements, senators expressly recognized that SB 6251 was vulnerable to challenge.  *Id.* Ex. N, at 13, 16, 17, 29, 30 (1/27/12 senate hearing).  As Senator Kohl-Welles put it, "We kept asking, what does constitute a violation of freedom of speech. . ., what does constitute a violation of the federal Communications Decency Act?"  *Id.* Ex. J.  Ultimately, "we came up with the best language we could," *id.*, but "I suppose there could be a case made that, 'Well, they're chilling our free speech,'" *id.* Ex. O.  Moreover, *after* the legislature passed SB 6251, McKenna reiterated his call for Congress to amend the CDA, so that states are not "hampered in their ability to take enforcement action" against websites and other online services.  *Id.* Ex. P.

### C.    SB 6251 Will Affect Thousands of Websites and Online Services.

Legislators also made clear the law was aimed at Backpage.com.  *Id.* ¶ 15 & Ex. N, at 4, 7-8, 12, 13-14, 15 (1/27/12 hearing) Ex. O (Sen. Kohl-Welles:  "I would love to have the escort services section [of Backpage.com] shut down completely . . .").  However, SB will in effect apply to many thousands of online services that host or transmit third-party content.  Beyond classifieds, these include social networking sites, such as Facebook, MySpace, Twitter, and YouTube; dating sites, such as Match.com and Passion.com; information sites, discussion forums, blogs, chat rooms, and sites that allow user comments and reviews, such as Wikipedia and CitySearch; search engines, such as Google, Bing, and Yahoo!; and internet service providers, such as AOL, Comcast, and CenturyLink.

In fact, a recent analysis reported that escort ads continue to appear on craigslist and increasingly on other sites such as Facebook and About.com.  *Id.* Ex. S.  And a study conducted in New York City found that 61% of sex workers used craigslist, while 83% had Facebook pages.  *Id.* Ex. Q; *see also* Ex. R.  As one commentator put it, "Keeping these ads from popping up online is like trying to keep frogs in a bucket."  *Id.* Ex. S.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

### III.     ARGUMENT

**A.     Standards for Temporary Restraining Order or Preliminary Injunction.**

The standards for granting a temporary restraining order and a preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A plaintiff must show that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008).  "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction."  *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115-16 (9th Cir. 2011).

Here, Backpage.com is likely to succeed on its claims under 42 U.S.C. § 1983 that SB 6251 violates the CDA and is unconstitutional.  Defendants (referred to collectively here as "the State") cannot justify the chilling effect on speech that SB 6251 will cause.  Irreparable harm – to Backpage.com, countless other online services, and the public – may be presumed, and in any event, is obvious.  Moreover, the public interest strongly favors granting injunctive relief to prevent even a temporary loss of free speech rights.

**B.     Backpage.com is Highly Likely to Succeed on the Merits of Its Claims.**

**1.     SB 6251 Violates and Is Preempted by Section 230 of the Communications Decency Act.**

Section 230 of the Communications Decency Act unequivocally bars state law liability for interactive computer services premised on third-party content.  Because this is precisely what SB 6251 seeks to do, the law contravenes section 230 and is preempted.

Three provisions of section 230 are significant here.  First and most importantly, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  Second, "no liability may be imposed under *any* State or local law that is

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200·1201 Third Avenue·Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    inconsistent with" section 230.  47 U.S.C. § 230(e)(3) (emphasis added).  Finally, providers

2    may not be held liable for "any action voluntarily taken in good faith to restrict access to or

3    availability" of material that is "obscene, lewd, lascivious, filthy, excessively violent,

4    harassing, or otherwise objectionable."  47 U.S.C. § 230(c)(2).

5         These provisions reflect Congress's two fundamental goals.  "First, Congress wanted

6    to encourage the unfettered and unregulated development of free speech on the Internet, and

7    to promote the development of e-commerce."  *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th

8    Cir. 2003).  Second, Congress sought "to encourage interactive computer services and users

9    of such services to self-police the Internet for obscenity and other offensive material" by

10   providing immunity for such voluntary efforts.  *Id*. at 1028; *see* 47 U.S.C. §§ 230(a), 230(b).

11        The Ninth Circuit and courts across the country recognize that section 230 grants

12   broad immunity to online services for liability of any kind based on content provided by

13   third parties.  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1129 (2003) ("§ 230(c)

14   provides broad immunity for publishing content provided primarily by third parties");

15   *accord Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010); *Nemet Chevrolet, Ltd. v.*

16   *Consumeraffairs.com, Inc.*, 591 F.3d 250, 260 (4th Cir. 2009); *Doe v. MySpace, Inc.*, 528

17   F.3d 413, 418 (5th Cir. 2008).  This broad immunity avoids the "obvious chilling effect" on

18   free speech posed by the specter of liability based on third-party content.  *Zeran v. Am*

19   *Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997).

20        Consistent with its broad scope, section 230 provides immunity for websites that

21   post unlawful third-party ads, whether or not the provider knew or had any reason to know

22   of the unlawfulness.  Thus, in *Chicago Lawyer's Committee for Civil Rights Under Law,*

23   *Inc. v. Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008), the Seventh Circuit held craigslist

24   immune under section 230 for discriminatory ads posted on the site that would violate the

25   Fair Housing Act.  The court concluded that craigslist was not obligated to and could not

26   practically review all ads posted by users.  Under section 230, a plaintiff "cannot sue the

27   messenger just because the message reveals a third party's plan to engage in unlawful

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — 9

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

[conduct]." 519 F.3d at 672; *see also Zeran*, 129 F.3d at 328 (holding AOL immune from for allegedly defamatory posts even after being notified and failing to remove them).

Section 230 immunity also applies to state criminal laws. Subsection (e)(3) provides that "no liability may be imposed under ***any State or local law*** that is inconsistent with this section." 47 U.S.C. § 230(e)(3) (emphasis added). "The word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (citation omitted). In using a term of such breadth, Congress should be understood to mean what it said. *See Republic of Iraq v. Beaty*, 556 U.S. 848, 856 (2009); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219-20 (2008). Thus, section 230 grants interactive computer services immunity under any state law of whatever kind, including criminal laws. *People v. Gourlay*, 2009 WL 529216, at *3 (Mich. Ct. App. Mar. 3, 2009) ("the phrase 'any State or local law' includes civil and criminal laws").

Section 230 provides an exemption for "***federal*** criminal statutes," 47 U.S.C. § 230(e)(1), (b)(5), but no similar exemption for state criminal laws. It exempts from immunity "intellectual property laws" generally, as well as the Electronic Communications Privacy Act "or any similar state law." *Id.* § 230(e)(2)(4). Congress knew how to exempt state laws – and did so – when that was its intent. "[T]he plain language of the CDA provides internet service providers immunity from inconsistent state criminal laws." *Voicenet Commun'cns, Inc. v. Corbett*, 2006 WL 2506318, at *4 (E.D. Pa. Aug. 30, 2006).[3]

To find a provider immune under section 230 "(1) the defendant must be a provider or user of an 'interactive computer service;' (2) the asserted claims must treat the defendant as a publisher or speaker of information; and (3) the challenged communication must be 'information provided by another information content provider.'" *Batzel*, 333 F.3d at 1037.

---

[3] Similarly, courts have rejected civil claims based upon alleged violations of criminal law. *See M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1049 (E.D. Mo. 2011) (Backpage.com immune from claims of allegedly facilitating child prostitution); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 967-69 (N.D. Ill. 2009) (same as to craigslist); *see also Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561, 570, 96 Cal. Rptr. 3d. 148 (2009) (dismissing negligence claim arising from assault by men who met teenagers on networking site).

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — 10

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Backpage.com meets all three elements, as do thousands of other websites, search engines, and ISPs subject to SB 6251.

First, websites are the quintessential and most common interactive computer services under section 230. *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1162 n.6 (9th Cir. 2008) (en banc). Courts have held that Backpage.com and similar websites meet the statutory definition. *M.A.*, 809 F. Supp. 2d at 1048 (Backpage.com); *Chicago Lawyers' Comm.*, 519 F.3d at 672 (craigslist); *Dart*, 665 F. Supp. 2d at 965 (craigslist).

Second, the ads and other postings targeted by SB 6251 are created by third parties, for which websites like Backpage.com are mere conduits. *See Chicago Lawyers' Comm.*, 519 F.3d at 671 (a website "'causes' postings only in the sense of providing a place where people can post"). *See also M.A.*, 809 F. Supp. 2d at 1049 (rejecting arguments that search functions and ad revenue optimization methods made Backpage.com a content provider).

Third, by making it a felony to cause any publication, dissemination, or display of third-party content, SB 6251 treats websites like Backpage.com as the publishers of that information. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009) ("what matters is not the name of the cause of action . . . [but] whether [it] inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another"). SB 6251 impermissibly holds all online service providers  "liable for [their] exercise of a publisher's traditional editorial function – such as deciding whether to publish, withdraw, postpone or alter content." *Zeran*, 129 F.3d at 330.

SB 6251 represents a fundamental misunderstanding of section 230 and the openness of the Internet that Congress sought to protect and foster.  In passing SB 6251, legislators acknowledged they were trying to find a way to force websites to require users to provide identification for age verification, suggesting this would be no different than a newspaper requiring classified advertisers to present identification at the newspaper's office. *See* Doran Decl., Ex. N, at 4.  Yet, Internet businesses are very different from brick-and-mortar ones. The Internet is international in scope.  Online service providers do not have physical offices

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

in every location in which their service is available; since many services are global, this would be impossible.  Many online services in the "direct or indirect" chain of disseminating third-party content subject to SB 6251 (*e.g.*, search engines, websites that link to other sites, ISPs) will never have contact with the content providers and have no way to identify or obtain identification from them.  Requiring individuals to provide identification for each posting would be so burdensome, expensive and impractical or impossible that websites in all likelihood will preclude all postings that come close to the proscriptions of SB 6251.

Even assuming some website was willing to undertake the burden and risk of the law by mandating identification, likely most individuals would be dissuaded from posting content, because of the burden or invasion of their privacy.  And, if the State can require identification for postings implicitly referring to sex for "something of value," can it do the same for all Internet postings in which individuals seek sexual encounters or businesses seek to sell sex-related products or services (*e.g.*, Ebay's "Adult Only" category)?

SB 6251 reflects a disregard for the realities of the Internet and the benefits it offers.  Given the breadth of the law, its onerous requirements, and its severe penalties, online services in all likelihood will disallow content altogether, which means that SB 6251 would severely restrict speech on the Internet, exactly what Congress sought to avoid.

> **2.     SB 6251 Violates the First and Fifth Amendments Because It Creates a Strict Liability Crime.**

The Supreme Court has long held that under the First Amendment the State cannot impose criminal responsibility on a defendant for distributing expressive materials without any proof of scienter.  In *Smith v. California*, 361 U.S. 147 (1960), the Supreme Court struck down a Los Angeles ordinance making it a crime for booksellers to possess obscene books.  The Court noted that *mens rea* is a fundamental tenet of Anglo-American criminal jurisprudence, and the power to create strict liability criminal offenses is limited, especially in the First Amendment context.  *Id.* at 150.  Even though the First Amendment does not

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — 12

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

protect obscene speech, the Court concluded that a bookseller could not be held criminally liable without proof of scienter concerning the contents of a book:

> It has been well observed of a statute construed as dispensing with any requirement of scienter that: 'Every bookseller would be placed under an obligation to make himself aware of the contents of every book in his shop. It would be altogether unreasonable to demand so near an approach to omniscience.' And the bookseller's burden would become the public's burden. . . . The bookseller's limitation in the amount of reading material with which he could familiarize himself, and his timidity in the face of his absolute criminal liability, thus would tend to restrict the public's access to forms of the printed word which the State could not constitutionally suppress directly.

*Id.* at 153-54 (footnote and internal citations omitted).

The Court reiterated this principle in *New York v. Ferber*, 458 U.S. 747 (1982), in which it upheld a New York law criminalizing distribution of sexually explicit depictions of minors in large part because the statute did require scienter. Again, even though such materials were not entitled to First Amendment protection, the Court cautioned that "criminal responsibility may not be imposed without some element of scienter on the part of the defendant." *Id.* at 765 (citations omitted).

Thereafter, in *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), the Court interpreted 18 U.S.C. § 2252 (prohibiting interstate transfer of child pornography). The Ninth Circuit had held that the statute was facially unconstitutional because it did not contain any requirement that a defendant know that at least one performer in a production was under age 18. *United States v. X-Citement Video, Inc.*, 982 F.2d 1285, 1291-92 (9th Cir. 1992). The Supreme Court interpreted the law differently, holding that "the term 'knowingly' in § 2252 extends to both the sexually explicit nature of the material and to the age of the performer" because "a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts." *Id.*

As the Ninth Circuit has said: "Our reading of the relevant Supreme Court opinions, particularly *Smith v. California*, suggests that the first amendment does not permit the imposition of criminal sanctions on the basis of strict liability where doing so would

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION — 13

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

seriously chill protected speech." *United States v. United States District Court*, 858 F.2d 534, 540 (9th Cir. 1988). *Accord Mishkin v. New York*, 383 U.S. 502, 511 (1966) ("The Constitution requires proof of scienter to avoid the hazard of self-censorship of constitutionally protected material . . . ."); *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992) ("Statutes that impose criminal responsibility for dissemination of unprotected speech must contain a knowledge requirement.").

SB 6251 directly violates this well-established law. Under SB 6251, a prosecutor need not show that a defendant did anything "knowingly" so long as she can establish that the defendant "indirectly caused" dissemination or display of third-party content later shown to be unlawful. The law does not require proof that a defendant knew (or even had reason to believe) that a person depicted in a posting was a minor – it provides expressly this is ***not*** a defense. In short, if a third party posts content on the Internet containing a "depiction of a minor" and an "implicit offer" of sex for "something of value," every online service connected in any way to the dissemination of that content is subject to criminal liability, whether the conduct was intentional or accidental, knowing or unknowing. For example, Facebook could be prosecuted if one of the billions of profiles and posts by its users runs afoul of the law, merely because its platform was an "indirect cause" of the content's dissemination. Yet, as the Seventh Circuit observed in *Chicago Lawyers' Committee*, 519 F.3d at 671-72:

> An interactive computer service "causes" postings only in the sense of providing a place where people can post. . . . If craigslist "causes" the discriminatory notices, then so do phone companies and courier services (and, for that matter, the firms that make the computers and software that owners use to post their notices online), yet no one could think that Microsoft and Dell are liable for "causing" discriminatory advertisements.

Under *Smith*, *Ferber*, and *X-Citement Video*, SB 6251 is unconstitutional because it would severely chill speech on the Internet in the same way the Supreme Court expressed concern about chilling booksellers and video stores in those cases.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Even setting aside First Amendment concerns, SB 6251 runs afoul of due process principles for strict liability statutes generally.  While "strict liability offenses are not unknown to the criminal law and do not invariably offend constitutional requirements," courts accord them a "disfavored status."  *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 437-38 (1978).  Such offenses are permissible only if (1) the penalty is slight; (2) a conviction does not result in substantial stigma; and (3) the statute regulates public welfare offenses applicable to inherently harmful or injurious items.  *See Shelton v. Sec'y, Dep't of Corr.*, 802 F. Supp. 2d 1289, 1298 (M.D. Fla. 2011) (citing *Staples v. United States*, 511 U.S. 600, 619-20 (1994)).  SB 6251's penalties of five years' imprisonment and a $10,000 fine are certainly not slight.  *See U.S. Gypsum*, 438 U.S. at 442 n.8 (penalty of up to three years' imprisonment and $100,000 fine too harsh to treat individual violations of the Sherman Act as strict liability crime).  A felony conviction undoubtedly results in stigma. *See Morissette v. United States*, 342 U.S. 246, 260 (1952) (felony is "as bad a word as you can give to a man or thing").  Allowing individuals to post content on the Internet is not remotely close to the types of "public welfare" offenses the Supreme Court has acknowledged may be the subject of strict criminal liability.  *See, e.g.*, *Staples*, 511 U.S. at 607 (strict liability allowed for conduct involving "dangerous or deleterious devices or products or obnoxious waste materials," citing hand grenades and narcotics as examples); *X-Citement Video*, 513 U.S at 71-72 (people "do not harbor settled expectations that the contents of magazines and film are generally subject to public regulation . . . First Amendment constraints presuppose the opposite view.").

Fundamentally, the legislature's abandonment of scienter in SB 6251 contravenes the principle that a statute may not "criminalize a broad range of apparently innocent conduct."  *Liparota v. United States*, 471 U.S. 419, 426  (1985) (interpreting statute making unlawful the unauthorized acquisition of food stamps to include scienter element). Because that is exactly what SB 6251 does, it is unconstitutional.  *See, e.g.*, *Shelton*, 802 F.

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — 15

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Supp. 2d at 1305-06 (Florida statute dispensing with *mens rea* for drug possession offenses was facially unconstitutional).

### 3.        Senate Bill 6251 Is an Overbroad Content-Based Restriction That Violates the First Amendment.

Content-based restrictions on speech "have the constant potential to be a repressive force in the lives and thoughts of a free people.  To guard against that threat, the Constitution demands that content-based restrictions on speech be presumed invalid." *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 660 (2004).  To rebut this presumption, the government must show that the law passes strict scrutiny, *i.e.*, "it must be narrowly tailored to promote a compelling Government interest," and "[i]f a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative."  *United States v. Playboy Entm't Grp., Inc*., 529 U.S. 803, 813 (2000); *see also Brown v. Entm't Merchs. Ass'n,* 131 S. Ct. 2729, 2738 (2011).  "It is rare that a regulation restricting speech because of its content will ever be permissible."  *Brown*, 131 S. Ct. at 2738 (quoting *Playboy*, 529 U.S. at 818).  Because SB 6251 regulates speech based on content and is not narrowly tailored, it is constitutionally infirm.

"A regulation is content-based if either the underlying purpose of the regulation is to suppress particular ideas, or if the regulation, by its very terms, singles out particular content for differential treatment."  *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009).  "[T]he mere assertion of a content-neutral purpose [is not] enough to save a law which, on its face, discriminates based on content."  *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 466 F.3d 784, 793 (9th Cir. 2006) (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642-43 (1994)).  A law is content-based if, to enforce it, "an official must necessarily examine the content of the message that is conveyed."  *Id.* at 794 (internal quotation omitted); *accord Berger*, 569 F.3d at 1051-52.

SB 6251 imposes criminal liability based on the content of speech.  As noted, statements by legislators and McKenna show that the aim of SB 6251 was to eliminate

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

adult-oriented advertising on the Internet.  Moreover, even if motivated by a desire to combat sex trafficking of children, the law is plainly content-based because it cannot be enforced without reference to the content of a particular Internet post:  A law enforcement officer must determine whether the post contains an "implicit" offer for a sex act for "something of value" in Washington and appears to contain a depiction of a minor.  *See S.O.C., Inc. v. Cnty. of Clark*, 152 F.3d 1136, 1145 (9th Cir.), *amended by* 160 F.3d 541 (9th Cir. 1998).

To satisfy strict scrutiny, the State must demonstrate that SB 6251 restricts speech "no further than necessary to achieve the goal, for it is important to assure that legitimate speech is not chilled or punished."  *Ashcroft v. Am. Civil Liberties Union*, 512 U.S. at 666. The Constitution "gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere."  *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002).  A law is "unconstitutional on its face if it prohibits a substantial amount of protected expression."  *Id.*; *accord Broadrick v. Oklahoma*, 413 U.S. 601 (1973).

A law imposing criminal penalties on speech is "a stark example of speech suppression" and underscores the need for facial challenges.  *Free Speech Coalition*, 535 U.S. at 244.  With "severe penalties in force, few . . . speakers in any capacity, would risk distributing images in or near the uncertain reach of this law."  *Id.*  "The severity of criminal sanctions may well cause speakers to remain silent rather than communicate even arguably unlawful words, ideas, and images."  *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 872 (1997).

SB 6251 is vastly overbroad and far from narrowly tailored in numerous respects. First, the law is overbroad in terms of the parties it subjects to criminal liability.  Any party that "indirectly causes" offending content to be "published, disseminated, or displayed" is subject to imprisonment and a $10,000 fine.  Thus, for a single third-party post, prosecutors could charge the website where it first appeared; all search engines that identify the website

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

in response to user queries; any blogs, social networking sites, or individuals who link to the website; and even internet service providers that facilitate user access to the Internet.

The law is also overbroad because of the enormous volume of Internet content it burdens.  As craigslist's experience teaches, escort ads can appear in many categories within a classified ad website, even if an adult category is eliminated.  Personals ads fall within the ambit of the law, so that its burdens and risks also fall on dating and hookup websites (*e.g.*, Hookup.com, Passion.com, Sugardaddy.com, and Adultfriendfinder.com, perhaps obviously, but also Match.com and eHarmony).  The law also encompasses profiles and posts on social networking sites (Facebook, MySpace, Twitter), and communications in chat rooms, forums, and individual emails or text messages.  In simple terms, any website or other online service that disseminates third-party content containing photographs of people and references to sex is at risk if it does not police and censor user postings.

SB 6251's definition an "advertisement for a commercial sex act" – as including any "implicit offer" of sex for "something of value" – is certainly not narrowly tailored and is impermissibly vague.  If a woman posts on a dating website describing her sexual interests and that she is looking for a "generous man," would that constitute an "implicit offer" under the law?  If a masseuse offers customers "complete satisfaction" or an escort who intends nothing more than companionship promises "a night you'll never forget," would those be "implicit offers" contrary to the law?  For that matter, presumably all consensual sex reflects an exchange of "something of value" between the participants, even if no money changes hands.

This central definition of the law is so vague it fails to give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited," and "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Hunt v. City of L.A.*, 638 F.3d 703, 712 (9th Cir. 2011) (quotation omitted); *see also Reno*, 521 U.S. at 871-72 (vagueness of a law raises "special First Amendment concerns" when it

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — 18

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

has an "obvious chilling effect on free speech," and threatens criminal penalties and the risk

of discriminatory enforcement).  The word "implicitly" is inherently vague, because it means

"[n]ot directly expressed [and] existing [only] inferentially" and therefore "fails to clearly

mark the boundary between what is permissible and impermissible."  *Vermont Right to Life

Comm., Inc. v. Sorrell*, 221 F.3d 376, 387 (2d Cir. 2000) (invalidating state law on political

ads that "implicitly" advocate success or defeat of candidate).

SB 6251's requirement that online services obtain and retain identification from

users posting content – the only defense available under the law – is also vastly overbroad.

As discussed above, the identification requirement is practically impossible and disregards

the nature of the Internet.  *Cf. Reno*, 521 U.S. at 868-70 (noting that regulation of the

Internet must take into account the nature of the medium).  Nonetheless, even assuming an

online service could and would do this, millions of adults would have to present

identification even if they simply want to date, provide companionship as an escort, offer

massage services, or engage in a consensual sexual relationship.  Because adult-oriented

speech is more sensitive and controversial, "many Web users [will be] simply unwilling to

provide identification information."  *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240,

259 (3d Cir. 2003) (striking down age-verification requirement in affirmative defense to

law criminalizing transmission of material harmful to minors).

While SB 6251 is vastly overinclusive, at the same time it is underinclusive, which

"raises serious doubts about whether the government is in fact pursuing the interest it

invokes, rather than disfavoring a particular speaker or viewpoint."  *Brown*, 131 S. Ct. at

2740 (citation omitted); *see id.* at 2741-42 (government ends "must be pursued by means

that are neither seriously underinclusive nor seriously overinclusive").  The law's sole

defense requires production of "a driver's license, marriage license, birth certificate, or

other governmental or educational identification card or paper."  Yet, many of these

documents do not have photographs and even those that do (such as a driver's license) can

be and routinely are forged.  By contrast, visual observation that a person is well over 18 or

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — 19

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

a sworn affidavit or declaration (either of which would be competent evidence in this Court, *see, e.g.*, 28 U.S.C. § 1746) is insufficient to avoid liability. Similarly, even if a person posting content provides identification, the depiction in the post could be of someone else or the photo or text may later change. For that matter, posts that advertise "virgin," "first time," or "15-year-old" would not be restricted by the law. And, SB 6251 is also vastly underinclusive because it can only reach persons and entities within the United States. Efforts to require censorship and impose criminal penalties such as SB 6251 will increasingly drive website providers offshore, given the international reach of the Internet.

Not only is the sole defense allowed by SB 6251 a practical impossibility, it also "raises serious constitutional difficulties by seeking to impose on the defendant the burden of proving his speech is not unlawful." *Free Speech Coalition*, 535 U.S. at 255. "An affirmative defense applies only after prosecution has begun, and the speaker must himself prove, on pain of a felony conviction, that his conduct falls within the affirmative defense." *Id.* Thus, "where particular speech falls close to the line separating the lawful and the unlawful," a speaker who "knows that he must bring forth proof and persuade another of the lawfulness of his conduct necessarily must steer far wider of the unlawful zone." *Speiser v. Randall*, 357 U.S. 513, 526 (1958).[4]

Given the risks and severe penalties imposed by SB 6251, and the burden and impossibility of the sole defense, online services logically will preclude postings or block websites that could contain content remotely approaching the strictures of the law. The practical effect of this effort to make websites and other online services censors of the Internet – on the pain of felony liability – will be to chill vast amounts of protected speech.

---

[4] SB 6251 also cannot be sustained on the basis that "[o]ffers to engage in illegal transactions are categorically excluded from First Amendment protection." *United States v. Williams*, 553 U.S. 285, 297 (2008) (citations omitted). This perhaps could be a defense of the statute if it did no more than impose criminal liability on content providers who knowingly post materials intending that they be interpreted as advertisements for commercial sexual exploitation of minors, similar to the child pornography law at issue in *Williams* (18 U.S.C. § 2252A). SB 6251 goes well beyond this.

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — 20

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

The breadth of SB 6251's content-based restrictions imposes "an especially heavy burden on the Government" to explain why less restrictive means would not be as effective to accomplish the avowed purposes of the law.  *Reno*, 521 U.S. at 879.

> The Government may not suppress lawful speech as the means to suppress unlawful speech.  Protected speech does not become unprotected merely because it resembles the latter.  The Constitution requires the reverse.  "[T]he possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted . . . ."

*Free Speech Coalition*, 535 U.S. at 255 (quotation omitted).  The State can offer no valid justification for SB 6251.  The customary method for deterring unlawful conduct is to impose an appropriate punishment on persons who engage in the conduct.  *Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001).  The State can (and has) enacted criminal laws to punish persons who have sex with and promote sex trafficking of minors.  *See, e.g.*, RCW 9.68A.040, .090, .100, RCW ch. 9A.44.  The State could impose criminal liability on persons who knowingly post online ads for sex trafficking of children, as the Connecticut General Assembly did after rejecting a bill similar to SB 6251.  Doran Decl., Ex. T.  Or, the State could investigate ways to use technology and the Internet to combat exploitation and trafficking in collaboration with Internet businesses, as the California AG has recently done.  *Id.* Ex. U.  The approach of SB 6251 – imposing censorship of the Internet or eliminating a substantial swath of lawful speech – is far from the least restrictive alternative available to the State.[5]

---

[5] The State may contend that SB 6251 should be interpreted under the standard of intermediate scrutiny applicable to commercial speech because SB 6251 on its face addresses "advertising."  This would ignore the scope of the law, which as shown above, would burden vast amounts of non-commercial speech.  When a statute seeks to regulate both commercial and non-commercial speech, it is subject to heightened scrutiny.  *S.O.C., Inc.*, 152 F.3d at 1146-47.  Regardless, SB 6251 cannot satisfy the third and fourth elements of the intermediate scrutiny analysis set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980).  As discussed above, SB 6251 does not directly advance the State's ostensible purpose, and it restricts far more speech than necessary to achieve the State's purpose.

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — 21

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

#### 4.    SB 6251 Violates the Commerce Clause.

Congress has the power to "regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. "[A] statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). "Because the [I]nternet does not recognize geographic boundaries, it is difficult, if not impossible, for a state to regulate internet activities" without violating this rule. *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 104 (2d Cir. 2003) (invalidating law prohibiting transfer to minors of sexually explicit materials harmful to minors). Regulation of the Internet "highlights the likelihood that a single actor might be subject to haphazard, uncoordinated, and even outright inconsistent regulation by states." *See PSINet, Inc. v. Chapman*, 362 F.3d 227, 239-40 (4th Cir. 2004) (invalidating similar law).

Applying these principles, nearly every federal court to have confronted individual states' efforts to regulate the transmission of harmful material to minors via the Internet has found state restrictions unconstitutional. *See id. See also ACLU v. Johnson*, 194 F.3d 1149, 1160-61 (10th Cir. 1999); *Ctr. for Democracy & Tech. v. Pappert*, 337 F. Supp. 2d 606, 662 (E.D. Pa. 2004) (invalidating law requiring ISPs to block access to sites containing child pornography); *Se. Booksellers Ass'n v. McMaster*, 282 F. Supp. 2d 389, 396 (D.S.C. 2003); *Cyberspace Commc'ns Inc. v. Engler*, 142 F. Supp. 2d 827, 830-31 (E.D. Mich. 2001); *Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997). State laws regulating the Internet control extraterritorial conduct in two ways. First, "there is no guarantee that a message" from a resident of one state to another "will not travel through other states en route." *Johnson*, 194 F.3d at 1161. Second, because individuals have no way of limiting their audience on the Internet, they too are subject to any restrictions created by any one state. *Am. Booksellers Found.*, 342 F.3d at 103. *Cf. State v. Heckel*, 143 Wn.2d 824, 840, 24 P.3d 404 (2001) (distinguishing Washington anti-spam law from other Internet laws

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — 22

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

found unconstitutional because "the Act reaches only those deceptive … messages directed to a Washington resident or initiated from a computer located in Washington").

Under this authority, SB 6251 is invalid.  The statute applies to conduct anywhere, so long as an online service causes the display or dissemination of Internet content for conduct that may take place in Washington.  Postings by individuals in Oregon, Idaho, or British Columbia concerning sex that could take place in Washington would be subject to SB 6251.  A review on a travel website of an escort service in Seattle, linking to the site, would subject the poster and any online service that indirectly "caused" the publication of the review to the penalties of SB 6251.  Likewise, a message from a Washington resident sent to another Washington resident – but is transmitted through a server in a different state – falls within the law.  The Washington legislature has attempted to project its policy choices onto residents of other states, creating an undue burden on interstate commerce, and putting users at risk of inconsistent state regulation.  This is impermissible and a separate ground for invalidating SB 6251.[6]

### C.   Backpage.com, Other Online Services, and the Public Will Suffer Irreparable Harm If SB 6251 Is Not Enjoined.

 "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1226 (9th Cir. 2003) (risk of irreparable injury may be presumed when plaintiffs state a colorable First Amendment claim).  Here, the Court can and should follow this constitutional presumption and find that Backpage.com, other online service providers, and the public as a whole will suffer irreparable harm if enforcement of SB 6251 is not enjoined.  Moreover, aside from the presumption, ample evidence supports such a finding.  If the State tries to enforce SB 6251, Backpage.com and thousands of other services will be faced with the intractable choice of

---

[6] Even if the Court were to find the statute does not directly control out-of-state commerce, it is invalid because "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

censoring third-party content to exclude anything potentially prohibited (a practical impossibility), or risk felony charges and penalties.

> **D.      Granting Injunctive Relief Is In the Public Interest.**

The Ninth Circuit has also "consistently recognized the 'significant public interest in upholding free speech principles, as the 'ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of [plaintiffs], but also the interests of other people' subjected to the same restrictions." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (internal quotation and citation omitted).  As discussed above, SB 6251 would burden vast amounts of protected speech, and so the public interest also strongly favors granting injunctive relief.

> **E.      The Balance of the Equities Favors Granting Injunctive Relief.**

Finally, the balance of equities favors granting injunctive relief.  If SB 6251 takes effect, websites and other service providers will be forced to censor or block vast amounts of Internet content or may be put out of business altogether.  On the other hand, delaying enforcement of SB 6251 will not harm the State, which still has at its disposal numerous other laws it can use to combat sexual exploitation of children and human trafficking, without infringing fundamental rights under the Constitution and the CDA.[7]

> ## IV.      CONCLUSION

For now, the Court should enjoin enforcement of SB 6251 temporarily and preliminarily to prevent severe violation of federal statutory and Constitutional rights and to

---

[7] Backpage urges that no bond should be required in support of the injunction.  "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  Courts regularly dispense with the bond requirement in granting injunctions against state laws or policies based on constitutional challenges.  *See, e.g.*, *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) ("to require a bond would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public"); *Mercer, Fraser Co. v. Cnty. of Humboldt*, 2008 WL 4344523, *2 (N.D. Cal. Sept. 22, 2008) (no bond required where "the preliminary injunction will require defendant to incur little or no monetary costs and … the injunction is sought to vindicate constitutional rights and the public interest"); *see also Higher Taste v. City of Tacoma*, 755 F.Supp.2d 1130, 1138 (W.D. Wash. 2010).

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — 24

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   preserve the status quo of lawful free speech on the Internet until this action can be decided.

2   Ultimately, the Court should enjoin the law permanently and in its entirety, because the law

3   violates federal and Constitutional rights of Backpage.com, countless other online service

4   providers, and the public.

5        DATED this 4th day of June, 2012.

6                        DAVIS WRIGHT TREMAINE LLP

7                        By ___*s/ James C. Grant*_____

8                           James C. Grant, WSBA # 15358

                        Ambika K. Doran, WSBA # 38237

9                           1201 Third Avenue, Suite 2200

10                           Seattle, WA  98101-3045

                        Phone:   206-757-8096

11                           Fax:      206-757-8096

                        E-mail:  jamesgrant@dwt.com,

12                                          ambikadoran@dwt.com

13                        Of counsel:

14

15                        ____*s/ Elizabeth L. McDougall*_____

                     Elizabeth L. McDougall, WSBA # 27026

16                        Village Voice Media Holdings, LLC

                     1008 Western Avenue, Suite 300

17                        Seattle, WA 98104

                     Tel 206-467-4347

18                        Fax 206-467-4389

19                        Liz.McDougall@villagevoicemedia.com

20                        Attorneys for Backpage.com, LLC

21

22

23

24

25

26

27

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION — 25

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax