HON. RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BACKPAGE.COM, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ROB MCKENNA, Attorney General of the State of Washington; RANDY J. FLYCKT, Adams County Prosecuting Attorney; BENJAMIN C. NICHOLS, Asotin County Prosecuting Attorney; ANDREW K. MILLER, Benton County Prosecuting Attorney; GARY A. RIESEN, Chelan County Prosecuting Attorney; DEBORAH S. KELLY, Clallam County Prosecuting Attorney; ANTHONY F. GOLIK, Clark County Prosecuting Attorney; REA L. CULWELL, Columbia County Prosecuting Attorney; SUSAN I. BAUR, Cowlitz County Prosecuting Attorney; STEVEN M. CLEM, Douglas County Prosecuting Attorney; MICHAEL SANDONA, Ferry County Prosecuting Attorney; SHAWN P. SANT, Franklin County Prosecuting Attorney; MATTHEW L. NEWBERG, Garfield County Prosecuting Attorney; ANGUS LEE, Grant County Prosecuting Attorney; H. STEWARD MENEFEE, Grays Harbor County Prosecuting Attorney; <br><br> *(Continued on next page)* | Case No.: 2:12-cv-00954-RSM <br><br> **MOTION TO INTERVENE OF THE INTERNET ARCHIVE** <br><br> NOTE ON MOTION CALENDAR: June 29, 2012 <br><br> ORAL ARGUMENT REQUESTED |

---

Case No. 12-cv-00954-RSM     INTERNET ARCHIVE'S MOTION TO INTERVENE     FOCAL PLLC
800 Fifth Avenue,
Suite 4100
Seattle, WA 98104

| | |
|---|---|
| 1 | GREGORY M. BANKS, Island County ) |
| | Prosecuting Attorney; SCOTT W. ) |
| 2 | ROSEKRANS, Jefferson County Prosecuting ) |
| | Attorney; DAN SATTERBERG, King County ) |
| 3 | Prosecuting Attorney; RUSSELL D. HAUGE, ) |
| | Kitsap County Prosecuting Attorney; ) |
| 4 | GREGORY L. ZEMPEL, Kittitas County ) |
| | Prosecuting Attorney; LORI L. HOCTOR, ) |
| 5 | Klickitat County Prosecuting Attorney; ) |
| | JONATHAN L. MEYER, Lewis County ) |
| 6 | Prosecuting Attorney; JEFFREY S. ) |
| | BARKDULL, Lincoln County Prosecuting ) |
| 7 | Attorney; MICHAEL K. DORCY, Mason ) |
| | County Prosecuting Attorney; KARL F. ) |
| 8 | SLOAN, Okanogan County Prosecuting ) |
| | Attorney; DAVID J. BURKE, Pacific County ) |
| 9 | Prosecuting Attorney; THOMAS A. ) |
| | METZGER, Pend Oreille County Prosecuting ) |
| 10 | Attorney; MARK LINDQUIST, Pierce County ) |
| | Prosecuting Attorney; RANDALL K. ) |
| 11 | GAYLORD, San Juan County Prosecuting ) |
| | Attorney; RICHARD WEYRICH, Skagit ) |
| 12 | County Prosecuting Attorney; ADAM N. KICK, ) |
| | Skamania County Prosecuting Attorney; MARK ) |
| 13 | K. ROE, Snohomish County Prosecuting ) |
| | Attorney; STEVEN J. TUCKER, Spokane ) |
| 14 | County Prosecuting Attorney; TIMOTHY D. ) |
| | RASMUSSEN, Stevens County Prosecuting ) |
| 15 | Attorney; JON TUNHEIM, Thurston County ) |
| | Prosecuting Attorney; DANIEL H. BIGELOW, ) |
| 16 | Wahkiakum County Prosecuting Attorney; ) |
| | JAMES L. NAGLE, Walla Walla County ) |
| 17 | Prosecuting Attorney; DAVID S. ) |
| | McEACHRAN, Whatcom County Prosecuting ) |
| 18 | Attorney; DENIS P. TRACY, Whitman County ) |
| | Prosecuting Attorney; JAMES P. HAGARTY, ) |
| 19 | Yakima County Prosecuting Attorney, ) |
| | ) |
| 20 | Defendants, in their) |
| | official capacities. ) |
| 21 | ) |
| | ) |
| 22 | ) |

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 6

    I.    THE INTERNET ARCHIVE IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT. ................................................................................................................. 6

        A.    THE MOTION TO INTERVENE IS TIMELY. ..................................................... 6

        B.    THE INTERNET ARCHIVE HAS SIGNIFICANT PROTECTABLE INTERESTS SHIELDING IT FROM CRIMINAL LIABILITY UNDER SB 6251. .......................... 7

        C.    THE INTERNET ARCHIVE'S ABILITY TO PROTECT ITS INTERESTS MAY BE IRREPARABLY IMPAIRED BY THE DISPOSITION OF THIS LAWSUIT. ................. 10

        D.    THE INTERNET ARCHIVE'S INTERESTS ARE NOT ADEQUATELY REPRESENTED BY OTHER PARTIES TO THIS LITIGATION. .............................. 10

    II.    THE INTERNET ARCHIVE IS ENTITLED TO PERMISSIVE INTERVENTION. ................................................................................................... 11

CONCLUSION ............................................................................................................................ 12

i

Case No. 12-cv-00954-RSM     INTERNET ARCHIVE'S MOTION TO INTERVENE     FOCAL PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Library Ass'n v. Pataki*,
   969 F. Supp. 160 (S.D.N.Y. 1997) ............................................................................... 8

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) ...................................................................................... 7

*Ashcroft v. Free Speech Coalition*,
   535 U.S. 234 (2002) ...................................................................................................... 9

*Broadrick v. Oklahoma*,
   413 U.S. 601 (1973) .................................................................................................... 10

*California ex rel. Lockyer v. U.S.*,
   450 F.3d 436 (9th Cir. 2006) .................................................................................... 6, 7

*Commercial Dev. Co. v. Abitibi-Consol. Inc.*,
   C07-5172RJB, 2007 WL 2900191 (W.D. Wash. Oct. 1, 2007) ............................. 6

*Corbis v. Amazon.com*,
   351 F. Supp. 2d 1090 (W.D. Wash. 2004) ................................................................ 7

*Cyberspace Communications, Inc. v. Engler*,
   55 F. Supp. 2d. 737 (E.D. Mich. 1999),
   *aff'd*, 238 F.3d 420 (6th Cir. 2000) ............................................................................. 8

*Donaldson v. United States*,
   400 U.S. 517 (1971) ...................................................................................................... 7

*Forest Conservation Council v. U.S. Forest Serv.*,
   66 F.3d 1489 (9th Cir. 1995),
   *abrogated by Wilderness Soc. v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) .................................................................................... 11

*Gonzalez v. Arizona*,
   485 F.3d 1041 (9th Cir. 2007) ...................................................................................... 6

*Kolender v. Lawson*,
   461 U.S. 352 (1983) ...................................................................................................... 9

*League of United Latin Am. Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997) ...................................................................................... 6

*Nw. Forest Res. Council v. Glickman*,
   82 F.3d 825 (9th Cir. 1996) ........................................................................................ 12

*Prete v. Bradbury*,
   438 F.3d 949 (9th Cir. 2006) ................................................................................. 6, 11

ii

Case No. 12-cv-00954-RSM    INTERNET ARCHIVE'S MOTION TO INTERVENE    FOCAL PLLC
800 Fifth Avenue,
Suite 4100
Seattle, WA 98104

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) .................................................................................................... 9

*Reno v. ACLU*,
    521 U.S. 844 (1997) ................................................................................................. 4, 9

*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir. 1983) ..................................................................................... 11

*Seattle Audubon v. Sutherland*,
    CV06-1608MJP, 2007 WL 130324 (W.D. Wash. Jan. 16, 2007) .......................... 6, 12

*Sierra Club v. EPA*,
    995 F.2d 1478 (9th Cir. 1993) ..................................................................................... 7

*Spangler v. Pasadena City Bd. of Ed.*,
    552 F.2d 1326 (9th Cir. 1977) ................................................................................... 12

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ..................................................................................... 10

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) ................................................................................................... 10

*U.S. v. Playboy Entertainment Group, Inc.*,
    529 U.S. 803 (2000) ..................................................................................................... 9

*United States v. Oregon*,
    839 F.2d 635 (9th Cir. 1988) ..................................................................................... 10

*Voicenet Communications, Inc. v. Corbett*,
    No. 04-1318, 2006 WL 2506318 (E.D. Pa. Aug. 30, 2006) ........................................ 7

*Yniguez v. State of Arizona*,
    939 F.2d 727 (9th Cir. 1991) ..................................................................................... 10

**STATE CASES**

*Schneider v. Amazon.com, Inc.*,
    31 P.3d 37 (Wash. Ct. App. 2001) ............................................................................... 5

*Stratton Oakmont, Inc. v. Prodigy Services Co.*,
    31063/94, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) ........................................ 5

**FEDERAL STATUTES**

42 U.S.C. § 1983 .................................................................................................................. 7

47 U.S.C. § 230 ............................................................................................................ *passim*

iii

Case No. 12-cv-00954-RSM    INTERNET ARCHIVE'S MOTION TO INTERVENE

FOCAL PLLC
800 Fifth Avenue,
Suite 4100
Seattle, WA 98104

**STATE STATUTE**

SB 6251, 62nd Leg., 2012 Sess. (Wash. 2012) ................................................................. *passim*

**FEDERAL RULES**

Federal Rule of Civil Procedure Rule 24 ................................................................. 1, 6, 10, 12

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I................................................................................................... 4, 9, 12

U.S. Const. amend. XIV .................................................................................................. 12

U.S. Const. art. I, § 8 ................................................................................................. 8, 9, 12

iv

Case No. 12-cv-00954-RSM    INTERNET ARCHIVE'S MOTION TO INTERVENE    FOCAL PLLC
800 Fifth Avenue,
Suite 4100
Seattle. WA 98104

Pursuant to Federal Rule of Civil Procedure Rule 24(a)(2), Movant the Internet Archive ("Movant") moves to intervene as a matter of right as plaintiff in this action in order to protect its rights provided by federal law. In the alternative, the Internet Archive moves to intervene permissively pursuant to Federal Rule of Civil Procedure Rule 24(b)(1)(B).

The Internet Archive is a non-profit corporation whose mission – to build an "Internet library" offering permanent access for researchers, historians, and scholars to historical collections that exist in digital format – is directly at issue in this lawsuit. Because this motion is timely, Movant's fundamental rights are at stake, disposition of this lawsuit will impair Movant's ability to protect those rights, and Movant has unique, personal interests in the information that is the subject of this lawsuit that are different from the parties' interests, intervention is appropriate to ensure that Movant's constitutional rights will not be compromised in the ongoing dispute between the parties.

Counsel for the Internet Archive has contacted counsel for Plaintiff and the Defendants who have appeared. Plaintiff Backpage.com, LLC ("Backpage.com") consents to the filing of Movant's motion and complaint in intervention (*see* Exhibit A, attached). Defendants have not yet expressed an opinion, but Movant will continue to confer with Defendants in the hopes of gaining their affirmative consent.

## BACKGROUND

Less than three months after the bill was introduced, Washington Governor Christine Gregoire on March 29, 2012, signed SB 6251, 62nd Leg., 2012 Sess. (Wash. 2012), ("SB 6251"), into law. The fast-tracked legislation, originally set to go into effect on June 7, 2012, and coinciding with the 10-year anniversary of the state's passage of prior anti-trafficking laws, was aimed at "eliminating sex trafficking of minors in a manner consistent with federal laws prohibiting sexual exploitation of children." SB 6251 § 1. The statute precludes a defense that "the defendant did not know the age of the minor depicted in the advertisement." *Id.* § 2(2). The only defense identified by the statute is granted to those who screen screen content to ascertain the ages of individuals in posts "which include[] either an explicit or implicit offer for a commercial sex act to occur in Washington." *Id.* § 2(1)(a).

> It is a defense, which the defendant must prove by a preponderance of the evidence, that the defendant made a reasonable bona fide attempt to ascertain the true age of the minor depicted in the advertisement by requiring, prior to publication, dissemination, or display of the advertisement, production of a driver's license, marriage license, birth certificate, or other governmental or educational identification card or paper of the minor depicted in the advertisement and did not rely solely on oral or written representations of the minor's age, or the apparent age of the minor as depicted.

*Id*. § 2(2).

The articulated intent behind the introduction and passage of the bill was combatting advertisements for escorts, particularly on online classified web sites.[1]  Indeed, lawmakers made clear that they were overwhelmingly motivated by a desire to combat the ongoing existence of escort advertisements on Plaintiff Backpage.com's web site and their collective belief that Plaintiff's efforts to prevent the posting of illegal ads by their users were insufficient.[2]  However, even if antipathy towards Backpage.com and the type of material its users posted drove the introduction and passage of the statute, SB 6251's reach extends far beyond Backpage.com or even online classified sites generally.  For example, liability under SB 6251 would attach to publishers of traditional publications such as physical newspapers and not only to Internet publishers or distributors.  *Id.* § 2(1)(a).  There is also no explicit requirement in the statute that publishers or distributors of any type receive a direct financial benefit from user advertisements before criminal liability attaches.  Moreover, the statute has no explicit requirement that a distributor of third-party content intend for any illegal act (such as prostitution or sex trafficking) to take place.  At best,

---

[1] *See*, *e.g.*, SB 6251 § 1; Jeanne Kohl-Welles, *Anti-Trafficking Bills, Including Focus on Online Child Escort Ads, Signed Into Law*, Senate Democrats Blog (March 29, 2012), http://blog.senatedemocrats.wa.gov/kohlwelles/anti-trafficking-bills-including-focus-on-online-child-escort-ads-signed-into-law/.

[2] *See*, *e.g.*, *Public Hearing on SB 6251-6258 Before H. Pub. Safety & Emergency Preparedness Comm.*, 62nd Leg., 2012 Sess. (Wash. 2012) (testimony of Jim Pugel, Department Assistant Chief, Seattle Police Department), *available at* http://www.tvw.org/index.php?option=com_tvwplayer&eventID=2012020118 (stating that that twenty-two youth rescued in Seattle in the previous three years "were specifically off Backpage.com"); *Public Hearing on SB 6251-6260 Before the S. Jud. Comm.*, 62nd Leg., 2012 Sess. (Wash. 2012) (testimony of Sen. Jeanne Kohl-Welles, Member, S. Jud. Comm.), *available at* http://www.tvw.org/index.php?option=com_tvwplayer&eventID=2012010180 (focusing almost exclusively on Backpage.com, the web site's affiliation with the *Seattle Weekly*, and its current click-through age-verification procedure); *id.* (testimony of Tim Burgess, Councilmember, City of Seattle) (stating that in a study of commercial sex offenses, "sixty percent of the juvenile offenders were exploited through commercial advertising on Backpage.com or other Internet sites").

such a statute – one that imposes criminal penalties on indirect actors, no less – is hopelessly vague and unenforceable.  At worst, it puts at risk neutral online actors, both in and outside Washington – for example, operators of blogs, wikis, social media sites, and online archives – who redistribute or otherwise make available third-party content.

Movant is just such an actor concerned with the vagueness and overreach of the statute.  The Internet Archive is a 501(c)(3) non-profit that was founded to build an Internet library.  It offers permanent access for researchers, historians, scholars, people with disabilities, and the general public to historical collections that exist in digital format.  Founded in 1996 and located in San Francisco, the Internet Archive works to prevent the Internet and other "born-digital" materials from disappearing into the past.  In late 1999, the organization started to include more well-rounded collections.  Today, the Internet Archive includes texts, audio, moving images, and software, as well as archived web pages in its collections.  It also provides specialized services for adaptive reading and information access for the blind and other persons with disabilities.  The Internet Archive collects and displays web materials on behalf of the Library of Congress, the National Archives, most state archives and libraries, as well as universities and other countries, working to preserve a record for generations to come.

As part of its mission to create an accurate and historically relevant archive of the Internet, the Internet Archive regularly gathers "snapshots" – accessible copies – of content on the World Wide Web through its "crawling" and indexing processes.  It currently maintains over 150 *billion* web pages archived from 1996 to (nearly) the present from web sites around the world, including archives of third-party content posted to web sites like Backpage.com and craigslist.org.  While it preserves for itself the ability to remove content at its own volition and occasionally does so for a variety of reasons, it has no practical ability to evaluate the legality of any significant portion of the third-party content that it archives and makes available.[3]  Given that it inevitably archives and makes available copies of *some* content that may result in legal liability for the content's original

---

[3] Movant has also on occasion disagreed with the legal validity of requests from third parties who insisted that it remove content or provide information about its users.  *See, e.g., Internet Archive's NSL Challenge: FBI Withdraws Unconstitutional NSL Served on Internet Archive*, ACLU, http://www.aclu.org/national-security/internet-archives-nsl-challenge (last visited June 12, 2012).

authors, the Internet Archive is particularly alarmed by legislative efforts to extend liability to operators of conduits by which such content might be distributed or accessed.

Underage sex trafficking is an appalling practice that appropriately garners universal condemnation. Not surprisingly, SB 6251 and the slate of other well-intentioned anti-sex-trafficking bills passed in March were widely supported by the Washington state legislature. However, the legislature overreached in passing SB 6251, which is plainly in conflict with federal law. The statute is vague and overbroad, as it would likely lead to not only the impermissible chilling of constitutionally protected speech through self-censorship but also to arbitrary enforcement. SB 6251 also squarely conflicts with Section 230 of the federal Communications Decency Act of 1996, 47 U.S.C. § 230 ("CDA 230" or "Section 230"), which immunizes providers of "interactive computer services" who host or distribute content created by third parties. Congress created this immunity in order to limit the impact on the Internet of federal or state regulations imposed either through statute or through the application of common law causes of action. 47 U.S.C. §§ 230(a)(4), (b)(2). Congress thus recognized in Section 230 what the U.S. Supreme Court later confirmed when it extended the highest level of First Amendment protection to the Internet: "governmental regulation of the content of speech is more likely to interfere with the free exchange of ideas than to encourage it." *Reno v. ACLU*, 521 U.S. 844, 885 (1997).

While SB 6251 enjoyed popular legislative support – indeed, the bill passed both houses of the legislature unanimously – legislators recognized that the bill might be vulnerable to claims that it conflicts with the First Amendment and Section 230.[4] In fact, amendments were introduced

---

[4] *See, e.g.*, *Executive Session on SB 6251 of S. Jud. Comm.*, 62nd Leg., 2012 Sess. (Wash. 2012) (statement of Sen. Adam Kline, Member, S. Jud. Comm.), *available at* http://www.tvw.org/index.php?option=com_tvwplayer&eventID=2012021017 (expressing concern about a potential First Amendment challenge to the proposed statute); *id.* (statement of Sen. Jeanne Kohl-Welles, Member, S. Jud. Comm.) (expressing hope that the bill would be able "to pass muster" on CDA grounds); *Public Hearing on SB 6251-6260 Before the S. Jud. Comm.*, 62nd Leg., 2012 Sess. (Wash. 2012) (statement of Rep. Linda Smith), *available at* http://www.tvw.org/index.php?option=com_tvwplayer&eventID=2012010180 ("What Backpage.com would tell you is we are protected, we can hide behind the federal Communication Decency Act. What I would challenge you to do is find every way as I see you are doing to take that on and say at the state level, they're facilitators, why is that any different than setting up a mall *(footnote continued on following page)*

4

| Case No. 12-cv-00954-RSM | INTERNET ARCHIVE'S MOTION TO INTERVENE | FOCAL PLLC<br>800 Fifth Avenue,<br>Suite 4100<br>Seattle, WA 98104 |

during the legislature's consideration of SB 6251 that were aimed at addressing the bill's preemption problems, but those amendments were ultimately rejected.[5]

The statute's failings are not trivial or mere technicalities, especially as applied to online publishers and distributors. Since its passage in 1996, CDA 230 has functioned as the bedrock around which operators of online services of all kinds and sizes that provide access to third-party content have designed their operations. Absent its protections, service providers would perpetually risk incurring liability whenever they failed to adequately and accurately screen for illegal or otherwise actionable third-party material they hosted or distributed. *See, e.g.*, *Stratton Oakmont, Inc. v. Prodigy Services Co.*, 31063/94, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) (holding that online service providers can be held to be "publishers" of third-party comments, motivating Congress to pass CDA 230); *see also Schneider v. Amazon.com, Inc.*, 31 P.3d 37, 41 (Wash. Ct. App. 2001) ("Congress passed § 230 'to remove disincentives to selfregulation [*sic*]' created by a New York state court decision holding an ISP strictly liable for unidentified third parties' defamatory comments posted on its bulletin board."). If states were free to impose liability on not only the creators of offending content but also on the providers of the channels through which such content was distributed, operators would dramatically reduce the universe of content they would permit themselves to risk hosting, inevitably shrinking the availability to the public of low-cost outlets for constitutionally-protected speech.

In light of the expansive scope of the statute and the apparent belief of the Washington state legislature and law enforcement officials that a provider such as Backpage.com may be found criminally liable for hosting material posted by its users, the Internet Archive is compelled to intervene in this lawsuit. Movant seeks to defend not only its interest in making digital archives of

---

*(footnote continued from preceding page)*
like at South Center, putting kids in it for sale? Why is it any different to just move that into the sky?").

[5] *See, e.g.*, *Executive Session on SB 6251 of S. Jud. Comm.*, 62nd Leg., 2012 Sess. (Wash. 2012) (statement of Sen. Jeanne Kohl-Welles, Member, S. Jud. Comm.), *available at* http://www.tvw.org/index.php?option=com_tvwplayer&eventID=2012021017 (expressing belief that a proposed (but ultimately rejected) amendment regarding a requirement that an advertisement must result in an actual "act of commercial sexual abuse of a minor" in order to trigger liability would increase "likelihood of conflict" with Section 230).

third-party content publicly available but also to defend the proper interpretation of the important federal legal framework that helps ensure that the Internet Archive's work can proceed. Movant asks that the Court grant its motion to intervene so that it can defend its own interests that may not be adequately represented by any of the parties currently involved in the suit.

## ARGUMENT

**I.     The Internet Archive is Entitled to Intervene as a Matter of Right.**

Under Federal Rule of Civil Procedure 24(a)(2), a party is entitled to intervene where (1) the intervention is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *Gonzalez v. Arizona*, 485 F.3d 1041, 1051 (9th Cir. 2007) (quoting *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)). "Rule 24(a) is liberally construed in favor of intervenors." *Commercial Dev. Co. v. Abitibi-Consol. Inc.*, C07-5172RJB, 2007 WL 2900191, at *4 (W.D. Wash. Oct. 1, 2007) (citing *California ex rel. Lockyer v. U.S.*, 450 F.3d 436, 440 (9th Cir. 2006)). The Internet Archive meets all four of these requirements and is entitled to intervention of right.

**A.     The Motion to Intervene is Timely.**

To determine the timeliness of a motion to intervene, the Court must examine "(1) the stage of the proceedings; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Seattle Audubon v. Sutherland*, CV06-1608MJP, 2007 WL 130324, at *2 (W.D. Wash. Jan. 16, 2007) (citing *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997)). Movant satisfies this factor. The case is still in its infancy, and the Internet Archive's intervention would not delay or otherwise prejudice any party. Plaintiff Backpage.com filed its complaint on June 4, 2012, and no responsive pleading has yet been filed. Moreover, the current parties have stipulated to an extended briefing schedule regarding the immediate question before the Court: whether it should convert the temporary restraining order into a preliminary injunction. If permitted to intervene, Movant would join in the outstanding preliminary injunction motion. Movant's participation can readily be integrated into the existing briefing schedule. There is no

reason to believe that intervention will cause delay or prejudice to the existing parties regarding the preliminary injunction briefing or any subsequent aspect of the litigation.

### B.   The Internet Archive Has Significant Protectable Interests Shielding It from Criminal Liability Under SB 6251.

Movant has "a significantly protectable interest" in enjoining enforcement of SB 6251, the subject matter of this lawsuit, as required by parties seeking to intervene as a matter of right.  *See Donaldson v. United States*, 400 U.S. 517, 531 (1971).  This factor is satisfied "when 'the interest is protectable under some law, and . . . there is a relationship between the legally protected interest and the claims at issue.'"  *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)); *see also Lockyer*, 450 F.3d at 441.

At its core, this lawsuit is about the ability of the state of Washington to impose liability on online service providers for hosting or disseminating content created by third parties.  The threshold question for the Court will be whether the state can do so consistent with federal law, because "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  47 U.S.C. § 230(e)(3); *see also Corbis v. Amazon.com*, 351 F. Supp. 2d 1090, 1118 (W.D. Wash. 2004) ("In addition, the CDA preempts any inconsistent state or local law.").  As Movant will explain, the state cannot.  The Internet Archive is a provider of "interactive computer services" within the meaning of Section 230 and therefore enjoys its full protections.  47 U.S.C. § 230(f)(2).  Section 230 categorically bars attempts to treat such providers as "publishers" of material provided by third parties, such as SB 6251 tries to do by criminalizing the "publish[ing]," "disseminat[ion]," or "display[]" of (or causing "directly or indirectly, to be published, disseminated, or displayed") "any advertisement of a commercial sex act which is to take place in the state of Washington and that includes the depiction of a minor."  SB 6251 § 2(1).  *See*, *e.g.*, *Voicenet Communications, Inc. v. Corbett*, No. 04-1318, 2006 WL 2506318, at *4 (E.D. Pa. Aug. 30, 2006) ("CDA confers a § 1983-enforceable right upon internet service providers and users to not be 'treated' under state criminal laws as the publisher or speaker of information provided by someone else . . . .").  Among other activities, the Internet Archive's "Wayback Machine" archives and makes available content from across the Internet, including

7

content from Backpage.com.  *See generally* Internet Archive WayBack Machine, http://wayback.archive.org/web/*/http://backpage.com (last visited June 12, 2012).  Plaintiff has invoked CDA 230 in this lawsuit as a basis to defend against liability under SB 6251.  The Court's interpretation and application of CDA 230 will affect Movant's ability to rely upon the same federal statutory protection to support its ongoing archival activities against any future challenge under SB 6251 or a related statute.

The statute similarly runs afoul of the Commerce Clause.  In passing SB 6251, the state of Washington purports to regulate speech originating not only inside but also outside the state.  It also attempts to impose criminal liability on entities that host or disseminate speech that is accessible to readers throughout the country and around the world.  The Commerce Clause, however, prohibits individual states from regulating "Commerce with foreign Nations, and among the several States . . . ;" U.S. Const. art. I, § 8, cl. 3.  By attempting to impose liability outside the state in this manner, the state of Washington is attempting to do exactly what the Commerce Clause prohibits – regulate interstate and foreign commerce.  As a leading case applying the Commerce Clause to the Internet explained:

> The courts have long recognized that certain types of commerce demand consistent treatment and are therefore susceptible to regulation only on a national level. *The Internet represents one of those areas*; effective regulation will require national, and more likely global, cooperation.  Regulation by any single state can only result in chaos, because at least some states will likely enact laws subjecting Internet users to conflicting obligations.  Without the limitation's [*sic*] imposed by the Commerce Clause, these inconsistent regulatory schemes could paralyze the development of the Internet altogether.

*American Library Ass'n v. Pataki*, 969 F. Supp. 160, 181 (S.D.N.Y. 1997) (emphasis added). Courts across the country have applied the Commerce Clause to strike down attempts by states to regulate or otherwise burden Internet communications.  *See, e.g., Cyberspace Communications, Inc. v. Engler*, 55 F. Supp. 2d. 737, 752 (E.D. Mich. 1999) (finding Commerce Clause violation because state regulation "would subject the Internet to inconsistent regulations across the nation"), *aff'd*, 238 F.3d 420 (6th Cir. 2000).  Movant has a direct interest in ensuring that the Court correctly evaluates the validity of SB 6251 in light of the Commerce Clause.

Also at issue in this case are serious questions about the vagueness of the statute. In order to comply with the due process requirements imposed by the Fourteenth Amendment, a criminal statute must provide adequate notice to citizens as to what constitutes unlawful conduct and adequate standards to prevent the law's arbitrary enforcement. *See, e.g., Kolender v. Lawson*, 461 U.S. 352, 354 (1983). As described above, SB 6251 is unclear in a number of ways, preventing a potential defendant from ascertaining whether his or her actions fall within the conduct proscribed under the statute. It is unclear, for example, how the scienter requirement of "knowingly" is properly read, what the "indirect" dissemination of content refers to, and how one can definitively ascertain what an "implicit" offer for a commercial sex act is, under the statute. These components are vague in and of themselves but as connected elements of the same offense offer an all but insurmountable barrier; it is not at all clear what it means to "knowingly" "cause[] . . . indirectly . . . to be disseminated" an "implicit offer for a commercial sex act to occur in Washington." SB 6251 §§ 2(1), (1)(a). Movant has an interest in contesting the validity of statute on vagueness grounds.

Finally, SB 6251 is invalid under the First Amendment as a content-based restriction that fails to withstand strict scrutiny. "Content-based restrictions are presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). To survive strict scrutiny review, a government entity must show that a restriction on free speech is "narrowly tailored to promote a compelling Government interest," *U.S. v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000), and that there are no "less restrictive alternatives [that] would be at least as effective in achieving the legitimate purpose that the statute was enacted to serve." *Reno*, 521 U.S at 874. SB 6251 fails to survive strict scrutiny because its vague statutory dictates will likely lead to overbroad self-censorship in order to avoid potential criminal liability. *See, e.g., Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002) (holding that the Constitution "gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere"); *id.* (holding that a law imposing criminal penalties on speech is "a stark example of speech suppression" underscoring the need for facial challenges); *Broadrick v. Oklahoma*, 413 U.S. 601

9

Case No. 12-cv-00954-RSM   INTERNET ARCHIVE'S MOTION TO INTERVENE   FOCAL PLLC
800 Fifth Avenue,
Suite 4100
Seattle, WA 98104

(1973). Movant has a direct interest in ensuring that its First Amendment concerns as well as the First Amendment concerns of its users are raised in this litigation.

### C. The Internet Archive's Ability to Protect Its Interests May be Irreparably Impaired by the Disposition of this Lawsuit.

A party seeking intervention as a matter of right must demonstrate that "the disposition of the action may, as a practical matter, impair or impede [the applicant's] ability to protect [its] interest." *United States v. Oregon*, 839 F.2d 635, 637 (9th Cir. 1988); *see also Yniguez v. State of Arizona*, 939 F.2d 727, 737 (9th Cir. 1991) (recognizing practical impairment of applicant intervenor's interest arising from the fact that other parties in litigation are bound by court's judgment). Additionally, the Ninth Circuit follows the guidance of the Fed. R. Civ. P. 24 Advisory Committee's Notes, which state, "[I]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

Plaintiff Backpage.com's challenge will offer the Court the opportunity to make a clear declaration of the enforceability and legality of the statute, and by extension the scope of Movant's protectable interests articulated above. Because a declaration that the statute is valid and applicable to hosts of third-party content is the very harm that Movant seeks to prevent, Movant should be permitted to intervene now before these issues are resolved.

### D. The Internet Archive's Interests are Not Adequately Represented by Other Parties to this Litigation.

The Internet Archive should also be permitted to intervene as a matter of right because it has unique, institutional interests that may not be adequately represented by Backpage.com. The Supreme Court has held that the inadequacy "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). In assessing "whether a present party will adequately represent" a potential intervenor's interests, the Court should "consider several factors, including whether [a present party] will undoubtedly make all of the intervenor's arguments, whether [a present party] is capable of and willing to make such arguments, and whether the intervenor offers a necessary

10

1  element to the proceedings that would be neglected." *Prete*, 438 F.3d at 956 (alteration in original)
2  (quoting *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)).  Even though an
3  intervenor's interest may appear to be aligned with a party to the action, the intervenor cannot be
4  considered to be adequately represented if there may be a divergence in viewpoint between the
5  two.  *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995)
6  (holding that the group's interest diverged from that of the state because the state represents the
7  broad public interest and not the concerns of a particular industry), *abrogated by Wilderness Soc. v.*
8  *U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).

9  While the Internet Archive's interests in seeking a declaration that SB 6251 is invalid may
10 currently be consistent with Plaintiff Backpage.com's, such interests may diverge in the future for a
11 variety of reasons.  To begin with, Movant would not be covered by any consent decree that
12 Backpage.com – already identified by both law enforcement and the Washington state legislature
13 as a target in their collective anti-sex-trafficking efforts – may enter into with the Defendants.
14 Moreover, while both qualify as providers of "interactive computer services" under CDA 230,
15 Internet Archive and Backpage.com operate factually distinct services that could lead to different
16 types of claims.  Unlike Backpage.com, whose third-party content is under the direct control of the
17 third-party posters (and regularly expires or is updated or removed by third-party users), the
18 Internet Archive has no analogous process for fine-tuned control of content, and instead creates
19 distinct historical snapshots that preserve content that may otherwise be removed from the "live"
20 version of an indexed site.  The Internet Archive therefore has a greater interest in articulating its
21 unique concerns about liability stemming from historical third-party content.  It should be
22 permitted to intervene as a matter of right to defend these and other unique perspectives, and
23 should not be forced to rely solely on Backpage.com to defend those interests.

24 **II.    The Internet Archive is Entitled to Permissive Intervention.**

25 In the event that this Court concludes that the Internet Archive may not intervene as a
26 matter of right, permissive intervention should be granted.  "On timely motion, the court may
27 permit anyone to intervene who: has a claim or defense that shares with the main action a common
28 question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "[A] court may grant permissive intervention

11

where the applicant shows:  (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996).  A court may consider discretionary factors such as "the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, . . . whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (footnotes omitted); *see also Seattle Audubon*, 2007 WL 130324 at *5 (holding that in a case that has the potential to "significantly impact large and varied interests," affected parties should be allowed to participate).

The Court should, at minimum, allow the Internet Archive to intervene under this standard. The Internet Archive's motion is timely and intervention will not prolong or delay the litigation of this matter.  In addition, the Internet Archive's claims – seeking declaratory and injunctive relief involving its interests under CDA 230 and the First Amendment, the Fourteenth Amendment, and the Commerce Clause of the U.S. Constitution – involve similar questions of law and fact, although the Internet Archive brings its own unique perspective as an archivist of online material.  Even if this Court finds that the Internet Archive is not entitled to intervention of right, it should grant permissive intervention.

## CONCLUSION

This Court should allow the Internet Archive to intervene as a matter of right under Federal Rule of Civil Procedure Rule 24(a)(2), or, in the alternative, permissively under Federal Rule of Civil Procedure Rule 24(b)(1)(B).  Moreover, this Court should permit Movant to participate in the briefing (and oral argument) for the outstanding preliminary injunction motion if it files its opening brief by July 2, 2012, or otherwise at the Court's convenience.

Dated: June 14, 2012                                        Respectfully submitted,

                                                            By:    s/ Venkat Balasubramani

12

Case No. 12-cv-00954-RSM    INTERNET ARCHIVE'S MOTION TO INTERVENE    FOCAL PLLC
800 Fifth Avenue,
Suite 4100
Seattle, WA 98104

Venkat Balasubramani, WSBA #28269
FOCAL PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
Tel: (206) 718-4250
Fax: (206) 260-3966
venkat@focallaw.com

Matthew Zimmerman (*pro hac vice* pending)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Tel:  (415) 436-9333
Fax: (415) 436-9993
mattz@eff.org

*Attorneys for Movant
the Internet Archive*

13

Case No. 12-cv-00954-RSM    INTERNET ARCHIVE'S MOTION TO INTERVENE    FOCAL PLLC
800 Fifth Avenue,
Suite 4100
Seattle. WA 98104

**CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Dated: June 14, 2012

s/ Venkat Balasubramani
Venkat Balasubramani, WSBA #28269
FOCAL PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
Tel: (206) 529-4827
Fax: (206) 260-3966
venkat@focallaw.com

14

Case No. 12-cv-00954-RSM    INTERNET ARCHIVE'S MOTION TO INTERVENE    FOCAL PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104