HON. RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BACKPAGE.COM, LLC,<br>    Plaintiff,<br>    v.<br>ROB MCKENNA, Attorney General of the State of Washington; RANDY J. FLYCKT, Adams County Prosecuting Attorney; BENJAMIN C. NICHOLS, Asotin County Prosecuting Attorney; ANDREW K. MILLER, Benton County Prosecuting Attorney; GARY A. RIESEN, Chelan County Prosecuting Attorney; DEBORAH S. KELLY, Clallam County Prosecuting Attorney; ANTHONY F. GOLIK, Clark County Prosecuting Attorney; REA L. CULWELL, Columbia County Prosecuting Attorney; SUSAN I. BAUR, Cowlitz County Prosecuting Attorney; STEVEN M. CLEM, Douglas County Prosecuting Attorney; MICHAEL SANDONA, Ferry County Prosecuting Attorney; SHAWN P. SANT, Franklin County Prosecuting Attorney; MATTHEW L. NEWBERG, Garfield County Prosecuting Attorney; ANGUS LEE, Grant County Prosecuting Attorney; H. STEWARD MENEFEE, Grays Harbor County Prosecuting Attorney; GREGORY M. BANKS, Island County Prosecuting Attorney; SCOTT W. ROSEKRANS, Jefferson County Prosecuting Attorney; DAN SATTERBERG, King County | Case No.: 2:12-cv-00954-RSM<br><br>**THE INTERNET ARCHIVE'S REPLY IN SUPPORT OF INTERVENTION**<br><br>NOTE ON MOTION CALENDAR:<br>June 29, 2012<br><br>ORAL ARGUMENT REQUESTED |

REPLY IN SUPP. OF MOTION TO INTERVENE
Case No.: 2:12-cv-00954-RSM

focal PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

1  Prosecuting Attorney; RUSSELL D. HAUGE,
2  Kitsap County Prosecuting Attorney;
   GREGORY L. ZEMPEL, Kittitas County
3  Prosecuting Attorney; LORI L. HOCTOR,
   Klickitat County Prosecuting Attorney;
4  JONATHAN L. MEYER, Lewis County
5  Prosecuting Attorney; JEFFREY S.
   BARKDULL, Lincoln County Prosecuting
6  Attorney; MICHAEL K. DORCY, Mason
   County Prosecuting Attorney; KARL F.
7  SLOAN, Okanogan County Prosecuting
8  Attorney; DAVID J. BURKE, Pacific County
   Prosecuting Attorney; THOMAS A.
9  METZGER, Pend Oreille County Prosecuting
   Attorney; MARK LINDQUIST, Pierce
10 County Prosecuting Attorney; RANDALL K.
11 GAYLORD, San Juan County Prosecuting
   Attorney; RICHARD WEYRICH, Skagit
12 County Prosecuting Attorney; ADAM N.
   KICK, Skamania County Prosecuting
13 Attorney; MARK K. ROE, Snohomish
14 County Prosecuting Attorney; STEVEN J.
   TUCKER, Spokane County Prosecuting
15 Attorney; TIMOTHY D. RASMUSSEN,
   Stevens County Prosecuting Attorney; JON
16 TUNHEIM, Thurston County Prosecuting
17 Attorney; DANIEL H. BIGELOW,
   Wahkiakum County Prosecuting Attorney;
18 JAMES L. NAGLE, Walla Walla County
   Prosecuting Attorney; DAVID S.
19 McEACHRAN, Whatcom County
   Prosecuting Attorney; DENIS P. TRACY,
20 Whitman County Prosecuting Attorney;
21 JAMES P. HAGARTY, Yakima County
   Prosecuting Attorney,
22
            Defendants, in their official capacities.
23

REPLY IN SUPP. OF MOTION TO INTERVENE
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

## INTRODUCTION

The Internet Archive asks the Court to grant its Motion to Intervene in the above-captioned matter so that it can challenge the enforceability of SB 6251 on its own behalf. On its face, SB 6251 purports to criminalize any act of making certain sex trafficking advertisements available to others, from "directly" "publish[ing]" to "indirectly" "caus[ing] to be" "disseminated, or displayed" such banned content. SB 6251 § 1. Parties need not have a commercial interest regarding this material, nor are they required to intend that illegal acts such as prostitution or trafficking occur. Furthermore, criminal liability does not hinge on a potential defendant's knowledge that ads include minors (or, contrary to Defendants'[1] assertion, that an ad necessarily be for child prostitution). Instead, parties risk incurring criminal liability if they should have known[2] that material posted by a third party that is either hosted on or is disseminated through its system amounts to an offer for prostitution, "implicit" or otherwise. Not only does SB 6251 rest on unreasonable expectations of conduits of online information, it contradicts controlling law.

The Internet Archive, recognized as a library by the State of California[3] and a member of the American Library Association, is concerned with any legislation like SB 6251 that seeks to impose new legal liability for online speech that extends beyond the direct speakers themselves – and even beyond the operators of their chosen platforms – to others whose mission is not to facilitate the creation of content *per se* but to provide access to information and knowledge created by others. Libraries are the archetypal example of such actors, and their pivotal societal

---

[1] "Defendants" as used herein refer individually and collectively to all named Defendants, except for the following Defendants who did not join the response to Movant's Motion to Intervene: Benjamin C. Nichols, Asotin County Prosecuting Attorney; Timothy D. Rasmussen, Stevens County Prosecuting Attorney; and David J. Burke, Pacific County Prosecuting Attorney.

[2] *See* Wash. Rev. Code § 9A.08.010(1)(b)(ii) (2009) ("A person knows or acts knowingly or with knowledge when … he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.").

[3] Adrian McCoy, *The Internet Gives Birth to an 'Official' Online Library*, Pittsburgh Post-Gazette (Mar. 17, 2012), *available at* http://www.post-gazette.com/stories/ae/cybertainment/the-internet-gives-birth-to-an-official-online-library-490707.

REPLY IN SUPP. OF MOTION TO INTERVENE - 1
Case No.: 2:12-cv-00954-RSM

focal PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

role rests in large part on their ability to be treated distinctly from the creators of objectionable content in the event that a speaker crosses a legal line.  Libraries in the twenty-first century who seek to provide broad access to digital information necessarily rely on clear protections that take them out of the line of fire when legal disputes about online material arise.  Without them, they risk being dragooned by well-meaning but misguided government officials into policing the behavior of others on their behalf under threat of sanction.  When such problems are compounded by vague statutory langue such that clear rules do not exist, libraries and others are effectively sent a message to over-censor content in order to avoid potential criminal liability.

In response to the Internet Archive's Motion, Defendants misconstrue both the reach of the statute in question as well as the Internet Archive's interest in intervening.  The Internet Archive does not play the "direct" role that Plaintiff Backpage.com does in providing a platform for third-party speakers.  Nor is it similarly situated with "every other online service provider," as the scope of its public archive is unique and unrivaled, providing access to historical Internet snapshots – going back over 15 years – of content that is no longer even accessible by direct visits to web sites themselves.  It would be uniquely situated in this litigation given (among other things) the scope of the archival material it has amassed and the different statutory elements of SB 6251 that its behavior may implicate.  The Internet Archive satisfies the legal standard for intervening and should be permitted to do so.

## ARGUMENT

Defendants do not contest that the Internet Archive has an interest in the outcome of the proceedings: "exposure to criminal liability under SB 6251".  Resp. at 9.  Rather, their opposition to intervention focuses on the nature of that interest and an assertion that that interest is "identical" to Plaintiff Backpage.com's and can therefore be adequately represented short of intervention.  Defendants are incorrect regarding both the law and facts at issue.

First, as a threshold matter, Defendants misstate the appropriate standard for intervention.  In deciding a motion to intervene as a matter of right, courts in the Ninth Circuit must construe

REPLY IN SUPP. OF MOTION TO INTERVENE - 2
Case No.: 2:12-cv-00954-RSM

focal PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

the requirements of Rule 24 broadly and "are guided primarily by practical and equitable considerations." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).  This is a "liberal policy in favor of intervention" and it "serves both efficient resolution of issues and broadened access to the courts." *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002) ("By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court." (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995))).  Contrary to Defendants' narrow argument, the Ninth Circuit does not equate the stringent requirements for joinder under Rule 19 with the test for intervention under Rule 24 but rather has adopted a policy-oriented view of when parties should be allowed to intervene.  *Compare City of Los Angeles*, 288 F.3d at 398, *with* Resp. at 8.  The Second Circuit's test for intervention by right stands in sharp contrast to the Ninth Circuit's more lenient standard that permits participation in order to streamline legal challenges and to solicit alternative viewpoints by interested parties.  Intervention by the Internet Archive is consistent with these policy objectives.

      Second, Defendants similarly misstate the appropriate standard for evaluating whether a movant has a protectable interest at stake sufficient to grant intervention.  Without citation to any authority, Defendants assert that "it is clear that the intent behind this requirement [of an "interest relating to the property or transaction which is the subject of the action"] is to only allow intervention as a matter of right in order to protect a specific property or contractual right held by the proposed intervenor."  Resp. at 9.  However, such a construction is refuted by the only case cited by Defendants that interprets the "interest" prong of Rule 24(a):  "[S]everal courts, including this one, have, implicitly at least, rejected the notion that Rule 24(a)(2) requires 'a specific legal or equitable interest.'"  *Blake v. Pallan*, 554 F.2d 947, 952 (9th Cir. 1977) (citing *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 132–36 (1967)).  Instead, in the Ninth Circuit, "[a]n applicant has a 'significant protectable interest' in an action if

REPLY IN SUPP. OF MOTION TO INTERVENE - 3
Case No.: 2:12-cv-00954-RSM

focal PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

. . . it asserts an interest that is protected under some law, and . . . there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly*, 159 F.3d at 409. That interest is all the more pressing if the proposed intervenor is "subject to potential criminal liability." *Natural Res. Def. Council v. Norton*, No. 1:05CV01207, 2006 WL 39094, at *8 (E.D. Cal. Jan. 5, 2006). Indeed, there is no "more direct, specific, and non-representative interest a perspective [sic] intervenor could have" than exposure to criminal liability. *Id*.

As discussed by the Internet Archive in its opening brief, SB 6251 fails for a myriad of reasons: the attempt to impose liability on not only the *authors* of offending online speech but on *conduits* of such speech runs afoul of the Section 230 of the Communications Decency Act, the Commerce Clause, and the First and Fourteenth Amendments. Mot. to Intervene at 9. The Internet Archive plainly has an interest in striking down legislation such as SB 6251 that purports to eliminate clear legal protections that grant it (and other online intermediaries who provide access to materials created by others) immunity against vague state laws designed to make them responsible for what third parties say and do. This interest stems from the First Amendment impact imposed by this flawed legislation. The Internet Archive's own liberty interests are obviously at stake. But the added effect of such threatened liability goes beyond the Internet Archive and risks harm to protected speech that it and other intermediaries disseminate or provide access to: SB 6251's "vague statutory dictates will likely lead to overbroad self-censorship in order to avoid potential criminal liability." Mot. at 9. The First Amendment does not tolerate such overreach, however well-motivated, precisely because of the collateral harm of such laws. *See, e.g.*, *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) ("Litigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."); *NAACP v. Button*, 371 U.S. 415, 432–33 (1963) ("The objectionable quality of vagueness and overbreadth . . . depend[s] . . . upon the danger of tolerating, in the area of First Amendment freedoms, the

REPLY IN SUPP. OF MOTION TO INTERVENE - 4
Case No.: 2:12-cv-00954-RSM

focal PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

existence of a penal statute susceptible of sweeping and improper application."). The Internet Archive's interest in protecting speech channels from the overreaching laws—for itself, third-party authors, and the public generally—is an interest sufficient to permit intervention.

Finally, contrary to Defendants' assertions, while the relief they seek may be the same (the invalidation of the entire statute), Plaintiff's and the Internet Archive's interests are not identical. To begin with, even though the legislature plainly had Backpage.com in its sights when it passed SB 6251, its statutory approach was anything but surgical. Instead of narrowly proscribing certain behavior, the legislature drafted multi-faceted and independently-operating elements that appear to cover any number of functions performed by otherwise innocent actors. For example, while law enforcement would seem to be able to target Backpage.com as a "direct" "publisher" under the statute, what is to stop it from pressuring online archives (or Internet service providers or providers of open wireless connections) as "indirect" "disseminators"? Or monitor manufacturers, for that matter, as actors who "directly" "display" the advertisements barred by the statute? The Internet Archive, performing archiving activities and therefore an additional step removed from any offending conduct posted by Backpage.com's users, is concerned with the unenforceability of the entire statutory scheme but particularly with elements that seeks to impose liability on "indirect" disseminators of information. Backpage.com, who directly hosts third-party content, need not and therefore may not focus on similar elements. The Internet Archive need not simply sit idly by and hope that Backpage.com invokes its particular concerns. It can and should be permitted to make such arguments on its own.[4] *See, e.g.*, *Sw. Ctr.*

---

[4] Especially given the vitriol aimed at Backpage.com by state legislators and law enforcement officials, it is hardly surprising that Movant would want to present its own concerns about the statute as an independent entity—a library without any direct financial interest in the content archived on its system—that is distinct from Backpage.com. *See, e.g.*, *United States v. Am. Library Ass'n, Inc.*, 539 U.S. 194, 203 (2003) ("Public libraries pursue the worthy missions of facilitating learning and cultural enrichment."); *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1255 (3d Cir. 1992) (a library is "the quintessential locus of the receipt of information."). *See also, e.g.*, *Public Hearing on SB 6251-6260 Before the S. Jud. Comm.*, 62nd Leg., 2012 Sess. (Wash. 2012) (testimony of Sen. Jeanne Kohl-Welles, Member, S. Jud. Comm.), *available at* http://www.tvw.org/index.php?option=com_tvwplayer&eventID=2012010180 ("We know that one publication, Backpage.com, which is owned by Village Voice, and here in the state of Washington comes under the umbrella of the Seattle Weekly makes over 20 million dollars a year in advertising."); *id.* (testimony of Rev. John Vaughn, Auburn Seminary and Groundswell) ("[M]ore than 500 clergy and 80,000 Americans have joined our effort in

REPLY IN SUPP. OF MOTION TO INTERVENE - 5
Case No.: 2:12-cv-00954-RSM

focal PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

1 *for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (permitting intervention because the defendants cannot successfully safeguard intervenor's legally protectable interests). *See also City of Los Angeles*, 288 F.3d at 398.

Seeking to narrow the hopelessly broad reach of the statute, Defendants simply conjure limiting principles: "The law does not … extend to other forms of illegal content, such as prostitution ads relating to adults." Resp. at 6. This assertion is hardly reassuring. Aside from the fact that their proposed interpretation has no binding effect, Defendants flatly misread the statute they seek to defend: on its face, SB 6251 applies to ads that *depict* minors, not just to ads that amount to "offer[s] [of] a <u>sexual encounter with</u> a minor in the state of Washington." *Id.* (emphasis added). *Compare* SB 6251 § 2(1). Defendants' assertion merely emphasizes the Internet Archive's concerns about the statute's vagueness: if Defendants' own interpretation of the statute stands in such contrast with the plain language, libraries and communications conduits who provide access to speech created by others must have the ability to challenge the statute on this and related grounds.

The Internet Archive respectfully asks this Court to grant its Motion to Intervene.

Dated: June 29, 2012

---

asking Village Voice Media to shut down the adult section of Backpage.com."); *id.* (testimony of Rev. John Vaughn, Auburn Seminary and Groundswell) ("Underage girls are still being trafficked by pimps on [Backpage.com]."); *id.* (testimony of Sean O'Donnell, King County Deputy Prosecutor) ("They [Backpage advertisements] are what you see. These are online brothels."); *It's an Uphill Fight, But Officials Right to Go After Backpage.com*, The Olympian (Sept. 8, 2011), http://www.theolympian.com/2011/09/08/v-print/1790463/its-an-uphill-fight-but-officials.html ("According to McKenna, industry analysts suggest that Village Voice's stake in adult services advertisements is worth about $22.7 million in annual revenue."); Jonathan Kaminsky, *Wash. Senate Passes Bill Pressuring Sex Ad Sellers*, Seattlepi (Feb. 8, 2012), *available at* http://www.seattlepi.com/news/article/Wash-Senate-passes-bill-pressuring-sex-ad-sellers-3157541.php ("The bill's primary target is Backpage.com, which operates a robust online clearinghouse for sex escorts."); Jeanne Kohl-Welles, *Bill to Combat Child Escort Ads on Backpage.com Now Law*, Senate Democrats Blog (March 29, 2012), http://blog.senatedemocrats.wa.gov/kohlwelles/bill-to-combat-child-escort-ads-on-backpage-com-signed-into-law ("Backpage.com, whose parent company is The Village Voice, makes at least $22 million a year from online adult escort ads, but refuses to verify the ages of those who place the ads or are depicted in them. . . . All state attorneys general have called on Backpage.com to stop selling online adult escort ads.").

REPLY IN SUPP. OF MOTION TO INTERVENE - 6
Case No.: 2:12-cv-00954-RSM

focal PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

|   |   |   |
|---|---|---|
| 1 |   | Respectfully submitted, |
| 2 | By: | /s/ Venkat Balasubramani |
|   |   | Venkat Balasubramani, WSBA #28269 |
| 3 |   | FOCAL PLLC |
|   |   | 800 Fifth Avenue, Suite 4100 |
| 4 |   | Seattle, WA 98104 |
|   |   | Tel: (206) 718-4250 |
| 5 |   | Fax: (206) 260-3966 |
| 6 |   | venkat@focallaw.com |

Matthew Zimmerman (*pro hac vice*)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Tel:  (415) 436-9333
Fax: (415) 436-9993
mattz@eff.org

*Attorneys for Movant The Internet Archive*

REPLY IN SUPP. OF MOTION TO INTERVENE - 7
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2012, I electronically filed the foregoing REPLY IN SUPPORT OF MOTION TO INTERVENE with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Dated: June 29, 2012

                                            s/ Venkat Balasubramani
Venkat Balasubramani, WSBA #28269
FOCAL PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
Tel: (206) 529-4827
Fax: (206) 260-3966
venkat@focallaw.com

REPLY IN SUPP. OF MOTION TO INTERVENE - 8
Case No.: 2:12-cv-00954-RSM

focal PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827