HON. RICARDO S. MARTINEZ

1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**
       **WESTERN DISTRICT OF WASHINGTON**
9              **AT SEATTLE**

10   BACKPAGE.COM, LLC,

11          Plaintiff,                    Case No.: 2:12-cv-00954-RSM

12   and                                  **MOTION OF THE INTERNET**
                                          **ARCHIVE JOINING IN THE**
13   INTERNET ARCHIVE,                    **MOTION FOR A PRELIMINARY**
                                          **INJUNCTION**
14          Plaintiff-Intervenor,
                                          HEARING DATE:  July 20, 2012
15          v.

16   ROB MCKENNA, Attorney General of the
     State of Washington; RANDY J. FLYCKT,
17   Adams County Prosecuting Attorney;
     BENJAMIN C. NICHOLS, Asotin County
18   Prosecuting Attorney; ANDREW K. MILLER,
     Benton County Prosecuting Attorney; GARY A.
19   RIESEN, Chelan County Prosecuting Attorney;
     DEBORAH S. KELLY, Clallam County
20   Prosecuting Attorney; ANTHONY F. GOLIK,
     Clark County Prosecuting Attorney; REA L.
21   CULWELL, Columbia County Prosecuting
     Attorney; SUSAN I. BAUR, Cowlitz County
22   Prosecuting Attorney; STEVEN M. CLEM,
     Douglas County Prosecuting Attorney;
23   MICHAEL SANDONA, Ferry County
     Prosecuting Attorney; SHAWN P. SANT,
24   Franklin County Prosecuting Attorney;
     MATTHEW L. NEWBERG, Garfield County
25   Prosecuting Attorney; ANGUS LEE, Grant
     County Prosecuting Attorney; H. STEWARD
26   MENEFEE, Grays Harbor County Prosecuting

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

1   Attorney; GREGORY M. BANKS, Island
    County Prosecuting Attorney; SCOTT W.
2   ROSEKRANS, Jefferson County Prosecuting
    Attorney; DAN SATTERBERG, King County
3   Prosecuting Attorney; RUSSELL D. HAUGE,
    Kitsap County Prosecuting Attorney;
4   GREGORY L. ZEMPEL, Kittitas County
    Prosecuting Attorney; LORI L. HOCTOR,
5   Klickitat County Prosecuting Attorney;
    JONATHAN L. MEYER, Lewis County
6   Prosecuting Attorney; JEFFREY S.
    BARKDULL, Lincoln County Prosecuting
7   Attorney; MICHAEL K. DORCY, Mason
    County Prosecuting Attorney; KARL F.
8   SLOAN, Okanogan County Prosecuting
    Attorney; DAVID J. BURKE, Pacific County
9   Prosecuting Attorney; THOMAS A.
    METZGER, Pend Oreille County Prosecuting
10  Attorney; MARK LINDQUIST, Pierce
    County Prosecuting Attorney; RANDALL K.
11  GAYLORD, San Juan County Prosecuting
    Attorney; RICHARD WEYRICH, Skagit
12  County Prosecuting Attorney; ADAM N.
    KICK, Skamania County Prosecuting
13  Attorney; MARK K. ROE, Snohomish
    County Prosecuting Attorney; STEVEN J.
14  TUCKER, Spokane County Prosecuting
    Attorney; TIMOTHY D. RASMUSSEN,
15  Stevens County Prosecuting Attorney; JON
    TUNHEIM, Thurston County Prosecuting
16  Attorney; DANIEL H. BIGELOW,
    Wahkiakum County Prosecuting Attorney;
17  JAMES L. NAGLE, Walla Walla County
    Prosecuting Attorney; DAVID S.
18  McEACHRAN, Whatcom County
    Prosecuting Attorney; DENIS P. TRACY,
19  Whitman County Prosecuting Attorney;
    JAMES P. HAGARTY, Yakima County
20  Prosecuting Attorney,

21          Defendants, in their official capacities.

22

23

24

25

26

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................ 1

II.     BACKGROUND .............................................................................................................. 2

        A.      The Statute ............................................................................................................ 2

        B.      The Impact on the Internet Archive and Other "Indirect" Actors. ......................... 6

III.    ARGUMENT ................................................................................................................... 8

        A.      The Preliminary Injunction Should Be Granted to Prevent Enforcement of
                Washington Senate Bill 6251 Because the Internet Archive is Likely to Prevail
                on its Claims. ........................................................................................................ 8

                1.      SB 6251 Conflicts With, and Is Therefore Preempted by, Section 230 of
                        the Communications Decency Act. ............................................................. 8

                2.      SB 6251 Violates the Commerce Clause By Improperly Regulating
                        Interstate and Foreign Commerce. ........................................................... 12

                3.      SB 6251 Violates the First and Fourteenth Amendments. ........................ 14

                        i.      SB 6251 Impermissibly Creates a Strict Liability Crime. ............. 14

                        ii.     SB 6251 Is Overbroad and Cannot Satisfy Strict Scrutiny. .......... 15

                        iii.    SB 6251 Is Unconstitutionally Vague. .......................................... 17

        B.      The Internet Archive and Other Service Providers Are Likely to Suffer
                Irreparable Harm in the Absence of Preliminary Relief ....................................... 18

        C.      The Balance of Equities Favors Granting a Preliminary Injunction. ................... 19

        D.      The Preliminary Injunction Is in the Public Interest. ........................................... 19

IV.     CONCLUSION .............................................................................................................. 20

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - i
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

# TABLE OF AUTHORITIES

## Federal Cases

*ACLU v. Johnson*,
      194 F.3d 1149 (10th Cir. 1999)...............................................................................13

*American Library Ass'n v. Pataki*,
      969 F. Supp. 160 (S.D.N.Y. 1997)..........................................................................14

*Ashcroft v. ACLU*,
      535 U.S. 564 (2002)..................................................................................................15

*Ashcroft v. Free Speech Coalition*,
      535 U.S. 234 (2002) ..............................................................................15, 16, 17

*Batzel v. Smith*,
      333 F.3d 1018 (2003)..................................................................................................9

*Boyce Motor Lines v. United States*,
      342 U.S. 337 (1952)..................................................................................................18

*Broadrick v. Oklahoma*,
      413 U.S. 601 (1973)..................................................................................................16

*Cal. Teachers Ass'n v. State Bd. Of Educ.*,
      271 F.3d 1141 (9th Cir. 2001)..................................................................................18

*City of Houston, Tex. v. Hill*,
      482 U.S. 451 (1987)..................................................................................................16

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
      657 F.3d 936 (9th Cir. 2011)....................................................................................16

*Corbis v. Amazon.com, Inc.*,
      351 F. Supp. 2d 1090 (W.D. Wash. 2004) ................................................................9

*Cyberspace Communications, Inc. v. Engler*,
      55 F. Supp. 2d. 737 (E.D. Mich. 1999) *aff'd*, 238 F.3d 420 (6th Cir. 2000) ...................14

*Elrod v. Burns*,
      427 U.S. 347 (1976)..................................................................................................19

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
      521 F.3d 1157 (9th Cir. 2008) (en banc)...................................................................9

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - ii
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

*Farris v. Seabrook*,
    677 F.3d 858 (9th Cir. 2012) ......................................................................................... 19

*FCC v. Fox Television Stations, Inc.*,
    132 S. Ct. 2307 (2012) ........................................................................................... 17, 18

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ...................................................................................................... 17

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989) ...................................................................................................... 12

*Hunt v. City of Los Angeles*,
    638 F.3d 703 (9th Cir. 2011) ......................................................................................... 16

*Kev, Inc. v. Kitsap Cnty*,
    793 F.2d 1053 (9th Cir. 1986) ....................................................................................... 18

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2009) ....................................................................................... 20

*Kolender v. Lawson*,
    461 U.S. 352 (1983) ...................................................................................................... 17

*Lanzetta v. New Jersey*,
    306 U.S. 451 (1939) ...................................................................................................... 17

*NAACP v. Button*,
    371 U.S. 415 (1963) ...................................................................................................... 18

*Papachristou v. Jacksonville*,
    405 U.S. 156 (1972) ...................................................................................................... 17

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) ................................................................................................ 12, 13

*Reno v. ACLU*,
    521 U.S. 844 (1997) ....................................................................................... 5, 15, 16, 18

*S.O.C., Inc. v. Cnty. of Clark*,
    152 F.3d 1136 (9th Cir. 1998) ....................................................................................... 19

*Sammartano v. First Judicial Dist. Court, in & for Cnty. of Carson City*,
    303 F.3d 959 (9th Cir. 2002) ......................................................................................... 20

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
    502 U.S. 105 (1991) ...................................................................................................... 16

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - iii
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

*Smith v. California*,
 361 U.S. 147 (1959) ........................................................................... 15

*Smith v. Goguen*,
 415 U.S. 566 (1974) ........................................................................... 17

*Thalheimer v. City of San Diego*,
 645 F.3d 1109 (9th Cir. 2011)........................................................ 8, 19

*Turner Broad. Sys., Inc. v. FCC*,
 512 U.S. 622 (1994) ........................................................................... 16

*United States v. Playboy Entm't Grp., Inc.*,
 529 U.S. 803 (2000) ........................................................................... 15

*United States v. U.S. Dist. Court for Cent. Dist. of Cal.*,
 858 F.2d 534 (9th Cir. 1988)............................................................. 15

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
 478 F.3d 413 (1st Cir. 2007) ............................................................. 10

*Voicenet Commc'ns, Inc. v. Corbett*,
 No. 04-1318, 2006 WL 2506318 (E.D. Pa. Aug. 30, 2006)................. 9

*Warsoldier v. Woodford*,
 418 F.3d 989 (9th Cir. 2005)............................................................. 19

*Winter v. Natural Res. Def. Council*,
 555 U.S. 7 (2008) ................................................................................ 8

*Zeran v. America Online, Inc.*,
 129 F.3d 327 (4th Cir. 1997)........................................................ 9, 10

## State Cases

*Schneider v. Amazon.com, Inc.*,
 31 P.3d 37 (Wash. Ct. App. 2001) ...................................................... 5

*State ex rel. Schillberg v. Barnett*,
 488 P.2d 255 (Wash. 1971)............................................................... 11

*State v. Roggenkamp*,
 106 P.3d 196 (Wash. 2005)............................................................... 11

*Stratton Oakmont, Inc. v. Prodigy Services Co.*,
 31063/94, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995).................. 5

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - iv
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

**Federal Statute**

47 U.S.C. § 230 (2006) ..................................................................................*passim*

**Rule**

Federal Rule of Civil Procedure 65 .................................................................... 1

**Constitutional Provision**

U.S. Const. amend. I ......................................................................................*passim*

U.S. Const. amend. XIV .................................................................................. 14

U.S. Const. art. I, § 8 ...................................................................................... 12

**Legislative Material**

Wash. Rev. Code Ann. § 9.68A.004 (West 2012) ("SB 6251") ...........................*passim*

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - v
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff-Intervenor the Internet Archive hereby joins Plaintiff Backpage.com's motion for a preliminary injunction preventing enforcement of newly-passed Senate Bill 6251.  Wash. Rev. Code Ann. § 9.68A.004 (West 2012) ("SB 6251").  Plaintiff-Intervenor's motion is based upon the pleadings and papers filed in support of the preliminary injunction motion, any oral argument this Court may allow, and any other matter of which this Court takes notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On June 4, 2012, Plaintiff Backpage.com, LLC filed suit against the Attorney General of the state of Washington and each county prosecuting attorney.  This Court issued a temporary restraining order on June 5, 2012, finding a likelihood of success that Backpage.com would prevail on the merits of its claims, preventing the statute from going into effect on June 7, 2012, as originally scheduled.  Plaintiff-Intervenor the Internet Archive filed its motion to intervene on June 14, 2012; the Court granted the motion on July 2, 2012.[1]

Plaintiff-Intervenor seeks a preliminary injunction to prevent the enforcement of SB 6251, a recently-enacted Washington statute that unconstitutionally restricts free speech over the Internet and violates and is preempted by Section 230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230 (2006).  Section 230 protects any "interactive computer services," such as the Internet Archive, from being "treated as the publisher or speaker of any information provided by another information content provider." § 230(c)(1).  SB 6251 should be enjoined for the following reasons: (1) the law violates and is preempted by section 230 of the CDA; (2) the law is unconstitutionally vague; (3) the law is substantially overbroad; and (4) the

---

[1] A hearing on the preliminary injunction motion is currently scheduled for July 20, 2012.  On June 27, 2012, Defendants who had at that point appeared in this matter entered into a stipulation regarding Plaintiff-Intervenor's briefing schedule with this opening brief in support of the preliminary injunction due July 2, 2012 (in the event that the Court granted the motion to intervene).

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - 1
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

law violates the Commerce Clause of the United States Constitution because it attempts to regulate commercial transactions that take place outside the state of Washington.

## II.   BACKGROUND

### A.   The Statute.

On March 29, 2012, less than three months after the bill was introduced, Washington Governor Christine Gregoire signed SB 6251 into law.  The fast-tracked legislation, originally set to go into effect on June 7, 2012 and coincide with the 10-year anniversary of the state's passage of prior anti-trafficking laws, was aimed at "eliminating sex trafficking of minors in a manner consistent with federal laws prohibiting sexual exploitation of children."  SB 6251 § 1. While SB 6251 enjoyed popular legislative support – indeed, the bill passed both houses of the legislature unanimously – legislators recognized that the bill might be vulnerable to claims that it conflicts with the First Amendment and Section 230.[2]  In fact, amendments were introduced during the legislature's consideration of SB 6251 that were aimed at addressing the bill's preemption problems, but those amendments were ultimately rejected.[3]

---

[2] *See, e.g.*, *Executive Session on SB 6251 of S. Jud. Comm.*, 62nd Leg., 2012 Sess. (Wash. 2012) (statement of Sen. Adam Kline, Member, S. Jud. Comm.), *available at* http://www.tvw.org/index.php?option=com_tvwplayer&eventID=2012021017 (expressing concern about a potential First Amendment challenge to the proposed statute); *id.* (statement of Sen. Jeanne Kohl-Welles, Member, S. Jud. Comm.) (expressing hope that the bill would be able "to pass muster" on CDA grounds); *Public Hearing on SB 6251-6260 Before the S. Jud. Comm.*, 62nd Leg., 2012 Sess. (Wash. 2012) (statement of former Rep. Linda Smith), *available at* http://www.tvw.org/index.php?option=com_tvwplayer&eventID=2012010180 ("What Backpage.com would tell you is we are protected, we can hide behind the federal Communication Decency Act. What I would challenge you to do is find every way as I see you are doing to take that on and say at the state level, they're facilitators, why is that any different than setting up a mall like at South Center, putting kids in it for sale? Why is it any different to just move that into the sky?").

[3] *See, e.g.*, *Executive Session on SB 6251 of S. Jud. Comm.*, 62nd Leg., 2012 Sess. (Wash. 2012) (statement of Sen. Jeanne Kohl-Welles, Member, S. Jud. Comm.), *available at* http://www.tvw.org/index.php?option=com_tvwplayer&eventID=2012021017 (expressing belief that a proposed (but ultimately rejected) amendment regarding a requirement that an advertisement must result in an actual "act of commercial sexual abuse of a minor" in order to trigger liability would increase "likelihood of conflict" with Section 230).

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - 2
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

The language of SB 6251 as passed is as follows:

(1) A person commits the offense of advertising commercial sexual abuse of a minor if he or she knowingly publishes, disseminates, or displays, or causes directly or indirectly, to be published, disseminated, or displayed, any advertisement for a commercial sex act, which is to take place in the state of Washington and that includes the depiction of a minor.

(a) "Advertisement for a commercial sex act" means any advertisement or offer in electronic or print media, which includes either an explicit or implicit offer for a commercial sex act to occur in Washington.

(b) "Commercial sex act" means any act of sexual contact or sexual intercourse, both as defined in chapter 9A.44 RCW, for which something of value is given or received by any person.

(c) "Depiction" as used in this section means any photograph or visual or printed matter as defined in RCW 9.68A.011 (2) and (3).

(2) In a prosecution under this statute it is not a defense that the defendant did not know the age of the minor depicted in the advertisement. It is a defense, which the defendant must prove by a preponderance of the evidence, that the defendant made a reasonable bona fide attempt to ascertain the true age of the minor depicted in the advertisement by requiring, prior to publication, dissemination, or display of the advertisement, production of a driver's license, marriage license, birth certificate, or other governmental or educational identification card or paper of the minor depicted in the advertisement and did not rely solely on oral or written representations of the minor's age, or the apparent age of the minor as depicted. In order to invoke the defense, the defendant must produce for inspection by law enforcement a record of the identification used to verify the age of the person depicted in the advertisement.

The articulated intent behind the introduction and passage of the bill was to combat advertisements for escorts, particularly on online classified web sites.[4]  Indeed, lawmakers made clear that they were overwhelmingly motivated by a desire to combat the ongoing existence of escort advertisements on Plaintiff Backpage.com's web site and by their collective belief that Plaintiff Backpage.com's efforts to prevent the posting of illegal ads by their users were

---

[4] *See, e.g.*, SB 6251 § 1; Jeanne Kohl-Welles, *Anti-Trafficking Bills, Including Focus on Online Child Escort Ads, Signed Into Law*, Senate Democrats Blog (March 29, 2012), http://blog.senatedemocrats.wa.gov/kohlwelles/anti-trafficking-bills-including-focus-on-online-child-escort-ads-signed-into-law/.

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - 3
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

insufficient.[5]  However, even if antipathy towards Backpage.com and the type of material its users posted drove the introduction and passage of the statute, SB 6251's reach extends far beyond Backpage.com or even online classified sites generally.  For example, liability under SB 6251 would attach to publishers of traditional publications such as physical newspapers and not only to Internet publishers or distributors.  *Id.* at § 1(a).  The statute does not explicitly require that publishers or distributors of any type receive a direct financial benefit from user advertisements before criminal liability attaches.  Moreover, the statute has no explicit requirement that a distributor of third-party content intend for any illegal act (such as prostitution or sex trafficking) to take place.  At best, such a statute – one that imposes criminal penalties on indirect actors – is hopelessly vague and unenforceable.  At worst, it puts at risk neutral online actors, both in and outside Washington – for example, operators of blogs, wikis, social media sites, and online archives – who redistribute or otherwise make available third-party content.

Underage sex trafficking is an appalling practice that appropriately garners universal condemnation.  Not surprisingly, SB 6251 and the slate of other well-intentioned anti-sex-trafficking bills passed in March were widely supported.  However, the legislature overreached in passing SB 6251, which is plainly in conflict with federal law.  The statute is vague and overbroad, as it would likely lead to not only to the impermissible chilling of constitutionally protected speech through self-censorship but also to arbitrary enforcement.  SB 6251 also

---

[5] *See, e.g.*, *Public Hearing on SB 6251-6258 Before H. Pub. Safety & Emergency Preparedness Comm.*, 62nd Leg., 2012 Sess. (Wash. 2012) (testimony of Jim Pugel, Department Assistant Chief, Seattle Police Department), *available at* http://www.tvw.org/index.php?option=com_tvwplayer&eventID=2012020118 (stating that that twenty-two youth rescued in Seattle in the previous three years "were specifically off Backpage.com"); *Public Hearing on SB 6251-6260 Before the S. Jud. Comm.*, 62nd Leg., 2012 Sess. (Wash. 2012) (testimony of Sen. Jeanne Kohl-Welles, Member, S. Jud. Comm.), *available at* http://www.tvw.org/index.php?option=com_tvwplayer&eventID=2012010180 (focusing almost exclusively on Backpage.com, the web site's affiliation with the *Seattle Weekly*, and its current click-through age-verification procedure); *id.* (testimony of Tim Burgess, Councilmember, City of Seattle) (stating that in a study of commercial sex offenses, "sixty percent of the juvenile offenders were exploited through commercial advertising on Backpage.com or other Internet sites").

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - 4
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

1    squarely conflicts with Section 230, which immunizes providers of "interactive computer

2    services" who host or distribute third-party content.  47 U.S.C. § 230(c)(1).  Congress created

3    this immunity to limit the impact of federal or state regulations imposed on the Internet either

4    through statute or through the application of common law causes of action.  *Id.* §§ 230(a)(4),

5    (b)(2).  Congress thus recognized in Section 230 what the U.S. Supreme Court later confirmed

6    when it extended the highest level of First Amendment protection to the Internet:  "governmental

7    regulation of the content of speech is more likely to interfere with the free exchange of ideas than

8    to encourage it."  *Reno v. ACLU*, 521 U.S. 844, 885 (1997).

9          The statute's failings are not trivial or mere technicalities, especially as applied to online

10   publishers and distributors.  Since its passage in 1996, Section 230 has functioned as the bedrock

11   upon which operators of online services of all kinds and sizes that provide access to third-party

12   content have designed their operations.  Absent its protections, service providers would

13   perpetually risk incurring liability whenever they failed to adequately and accurately screen for

14   illegal or otherwise actionable third-party material they hosted or distributed.  *See, e.g.*, *Stratton*

15   *Oakmont, Inc. v. Prodigy Services Co.*, No. 31063/94, 1995 WL 323710 (N.Y. Sup. Ct. May 24,

16   1995) (holding that online service providers can be held to be "publishers" of third-party

17   comments, motivating Congress to pass Section 230); *see also Schneider v. Amazon.com, Inc.*,

18   31 P.3d 37, 41 (Wash. Ct. App. 2001) ("Congress passed Section 230 'to remove disincentives to

19   selfregulation [*sic*]' created by a New York state court decision holding an ISP strictly liable for

20   unidentified third parties' defamatory comments posted on its bulletin board.").  If states were

21   free to impose liability on not only the creators of offending content but also on the providers of

22   the channels through which such content was distributed, operators would dramatically reduce

23   the universe of content they would permit themselves to risk hosting, inevitably shrinking the

24   availability to the public of low-cost outlets for constitutionally-protected speech.

25

26

**B.      The Impact on the Internet Archive and Other "Indirect" Actors.**

The Internet Archive is just such an actor concerned with the vagueness and overreach of the statute. The Internet Archive is a 501(c)(3) non-profit that was founded to build an Internet library. Order Grant Mot. Intervene 5, 8; Kahle Decl. ¶ 4. It offers permanent access for researchers, historians, scholars, people with disabilities, and the general public to historical collections that exist in digital format. Order Grant Mot. Intervene 5; Kahle Decl. ¶ 4. Founded in 1996 and located in San Francisco, the Internet Archive works to prevent the Internet and other "born-digital" materials from disappearing into the past. Order Grant Mot. Intervene 5; Kahle Decl. ¶ 4. In late 1999, the organization expanded to include other media types to its collections. Kahle Decl. ¶ 5. Today, the Internet Archive's collections include texts, audio, moving images, and software, as well as archived web pages. Kahle Decl. ¶ 5. It also provides specialized services for adaptive reading and information access for the blind and other persons with disabilities. Kahle Decl. ¶ 5. Generally, the Internet Archive "aggregates and displays content from every corner of the Internet." Order Grant Mot. Intervene 8. It collects and displays web materials on behalf of the Library of Congress, the National Archives, and most state archives and libraries, as well as universities and other countries, working to preserve a record for generations to come. Kahle Decl. ¶ 6. The vast majority of the material in the Internet Archive's collection is material authored by third parties. Kahle Decl. ¶ 4.

As part of its mission to create an accurate and historically relevant archive of the Internet, the Internet Archive regularly gathers "snapshots" – accessible copies – of content on the World Wide Web through its "crawling" and indexing processes. Order Grant Mot. Intervene 5; Kahle Decl. ¶ 7. It currently maintains over 150 *billion* web pages archived from 1996 to (nearly) the present from web sites around the world, including archives of third-party content posted to web sites like Backpage.com and craigslist.org. Order Grant Mot. Intervene 5; Kahle Decl. ¶ 8. While it preserves for itself the ability to remove content at its own volition and occasionally does so for a variety of reasons, even if it had unlimited resources, it has no

1  practical ability to evaluate the legality of any significant portion of the third-party content that it

2  archives and makes available.  Nor does it have the ability to obtain and retain copies of

3  government-issued or school identification of all persons whose images are displayed in

4  connection with an "implicit offer for a commercial sex act to occur in Washington" on the

5  websites it indexes.[6]  Order Grant Mot. Intervene 5, 8; *see* Kahle Decl. ¶ 12.  Unlike

6  Backpage.com, the Internet Archive is not a for-profit corporation and has significantly less

7  control over the contents of library as it does not have any access to the people who are posting

8  content to the archived web pages.  Order Grant Mot. Intervene 8.  Given that it inevitably

9  archives and makes available copies of *some* content that may result in legal liability for the

10  content's original authors, the Internet Archive is particularly alarmed by legislative efforts to

11  extend liability to operators of conduits by which such content might be distributed or accessed.

12       The Internet Archive was compelled to move to intervene in this lawsuit in light of the

13  expansive scope of the statute and the apparent belief of the Washington state legislature and law

14  enforcement officials that third-party providers may be found criminally liable for hosting

15  material posted by their users, whether or not they intend that any illegal act occur.  The Internet

16  Archive seeks not only to defend its interest in making digital archives of third-party content

17  publicly available but also to defend the proper interpretation of the important federal legal

18  framework that helps ensure that the Internet Archive's work can proceed.  It asks that the Court

19  grant the motion for a preliminary injunction in light of the statute's serious substantive and

20  procedural failings and the harm to protected expression that will inevitably occur if it is allowed

21  to go into effect.

22

23

---

24       [6] The Internet Archive has also on occasion disagreed with the legal validity of requests from
      third parties who insisted that it remove content or provide information about its users.  *See, e.g.*,
25  *Internet Archive's NSL Challenge: FBI Withdraws Unconstitutional NSL Served on Internet
      Archive*, ACLU, http://www.aclu.org/national-security/internet-archives-nsl-challenge (last
26  visited June 12, 2012).

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - 7
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

## III.   ARGUMENT

### A.   The Preliminary Injunction Should Be Granted to Prevent Enforcement of Washington Senate Bill 6251 Because the Internet Archive Is Likely to Prevail on its Claims.

A preliminary injunction is appropriate when the movant establishes that "[1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). "[T]he moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011). Plaintiff satisfies each of these requirements. The Court should temporarily enjoin enforcement of SB 6251 by granting the motion for a preliminary injunction because SB 6251 violates and is preempted by Section 230 of the CDA, because SB 6251 violates the Commerce Clause, and because it is unconstitutionally vague and overbroad in violation of the First and Fourteenth Amendments.

### 1.   SB 6251 Conflicts With, and Is Therefore Preempted by, Section 230 of the Communications Decency Act.

First, SB 6251 squarely conflicts with Section 230 of the federal Communications Decency Act. Pursuant to subsection (c) of Section 230, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c); *see also* § 230(f)(3) ("The term 'information content provider' means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."). The practical effect of the statute is that it immunizes online service providers – providers of "interactive computer services" – from attempts to hold them liable for the behavior of and materials provided by third parties; *i.e.*, other "information content

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - 8
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

providers." *See, e.g.*, *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1179 (9th Cir. 2008) (en banc) ("By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.") (citing *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).  Some limited exceptions to Section 230's protections are written into the statute, including carve-outs for intellectual property claims (§ 230(e)(2)), for enforcement of the federal Electronic Communications Privacy Act (§ 230(e)(4)), and for federal criminal law ((§ 230(e)(1)).[7]  If a proposed cause of action does not fall into such an exception, however, it is preempted:  "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." § 230(e)(3).  *See, e.g.*, *Corbis v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1118 (W.D. Wash. 2004) ("[T]he CDA preempts any inconsistent state or local law.").

The Internet Archive is a provider of an interactive computer service within the meaning of Section 230.  47 U.S.C. § 230(f)(2) (defining an interactive computer service as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such *systems operated or services offered by libraries* or educational institutions") (emphasis added); *see also, e.g.*, *Batzel v. Smith*, 333 F.3d 1018, 1030, n.15 (9th Cir. 2003) (recognizing a variety of websites to be "interactive computer services" under the statute).  By providing and preserving access to software, film, audio and text in digital format, the Internet Archive serves as an important conduit for Internet users to access information online that may otherwise disappear.  *See* Internet Archive, http://archive.org/about/about.php (last visited July 1, 2012).  Facilitating access to information

---

[7] The exception for *federal* criminal liability does not extend to state criminal laws that purport to trump the CDA.  *See, e.g.*, *Voicenet Commc'ns, Inc. v. Corbett*, No. 04-1318, 2006 WL 2506318, at *4 (E.D. Pa. Aug. 30, 2006) ("[I]f Congress had wanted state criminal statutes to trump the CDA as well, it knew how to say so.").

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

was one of Congress's compelling policy objectives when it passed the CDA as it sought to preserve the Internet as a "forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity." 47 U.S.C. § 230(a)(3).

SB 6251 runs afoul of Section 230 and is preempted as applied to providers of interactive computer services such as the Internet Archive who fall squarely within Section 230's protections. SB 6251 makes it a felony to "knowingly publish[], disseminate[], or display[] … any advertisement for a commercial sex act, which is to take place in the state of Washington and that includes the depiction of a minor." SB 6251 § 1. To begin with, merely "knowing" that offending material resides or passes through a provider's system does not affect the protection provided by Section 230. *See Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007) ("It is, by now, well established that notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech."); *see also Zeran*, 129 F.3d at 333 ("Liability upon notice would defeat the dual purposes advanced by § 230 of the CDA."). SB 6251's scienter requirement does not take the statute outside the scope of Section 230.

The scope of actors affected by the statute is inconsistent with Section 230. Under SB 6251, liability is not limited to the person who *authors* an offending advertisement; that is, the statute does not impose criminal liability solely on the "information content provider" who created the material in the first place. Rather, criminal liability extends far beyond the limits set by Congress. Even the most narrow application of the most narrow elements of the statute – purporting to criminalize the "knowing[]" "publi[cation]" of an advertisement for commercial sex – violates Section 230 to the extent the "publisher" is not also the author. Such statutory language was, at minimum, intended to criminalize the "direct publication" of escort advertisements by sites such as Backpage.com.[8] *See, e.g., Voicenet Commc'ns*, No. 04-1318,

---

[8] *See, e.g.*, Jeanne Kohl-Welles, *Anti-Trafficking Bills, Including Focus on Online Child Escort Ads, Signed Into Law*, Senate Democrats Blog (March 29, 2012),

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

2006 WL 2506318, at *4 ("CDA confers a § 1983-enforceable right upon internet service providers and users to not be 'treated' under state criminal laws as the publisher or speaker of information provided by someone else . . . .").

Liability does not end there, however; the statute as passed goes much further, extending not simply to "publish[ers]" but to those who "indirectly" "cause" advertisements "to be published, disseminated, or displayed."  SB 6251 § 1.  It is unclear how far legislators intended this causal chain to extend – perhaps, for example, to manufacturers of computer monitors who are informed that such advertisements are being "displayed" on their products, or to ISPs who are similarly notified about such advertisements flowing through their channels – but as written it extends beyond the initial publisher:  courts must give effect to the additional elements chosen by the legislature.  *See, e.g.*, *State v. Roggenkamp*, 106 P.3d 196, 201 (Wash. 2005) ("[E]ach word of a statute is to be accorded meaning.") (citing *State ex rel. Schillberg v. Barnett*, 488 P.2d 255, 258 (Wash. 1971)).  The only reasonable reading of such expansive elements is that criminal liability extends to other entities in the communications chain who do not "directly" host such online information but who in some way provide some sort of link to content created by others.  No matter the interpretation, all fail because they make interactive computer service providers liable for third party speech.

The Internet Archive is a crucial player in achieving the important federal objective of preserving the "vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation."  47 U.S.C. § 230(b)(2).  The Internet Archive's "Wayback Machine" makes available access to more than 150 billion web pages archived from 1996 onwards, including to earlier versions of Backpage.com's site.  *See generally* Internet Archive WayBack Machine, http://wayback.archive.org/web/*/http://backpage.com (last visited June 12, 2012).  The value

http://blog.senatedemocrats.wa.gov/kohlwelles/anti-trafficking-bills-including-focus-on-online-child-escort-ads-signed-into-law/.

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - 11
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

and utility of the Internet Archive is premised upon its ability to preserve access to third-party content; it does not significantly develop or produce new information itself. It thus fills a vital niche role in online services by preserving and disseminating valuable historical records of online life. SB 6251 plainly conflicts with federal law by punishing interactive computer services for permitting unwelcome speech and cannot be allowed to go into effect.

> **2.      SB 6251 Violates the Commerce Clause By Improperly Regulating Interstate and Foreign Commerce.**

SB 6251 also runs afoul of the Constitution in that it is inconsistent with the Commerce Clause. The Commerce Clause prohibits individual states from regulating "Commerce with foreign Nations, and among the several States . . . " U.S. Const. art. I, § 8, cl. 3. By passing SB 6251, however, the state of Washington attempts to do just that. On its face, the statute criminalizes the knowing publication of a commercial offer for an act to take place in the state of Washington. The offer itself is sufficient to trigger liability, and no action need actually take place in the state. Moreover, the state seeks to impose criminal liability on entities that host or disseminate speech that is accessible to readers throughout the country and around the world. By attempting to impose liability outside the state in this manner, the state of Washington aims to do exactly what the dormant Commerce Clause prohibits – regulate interstate and foreign commerce; accordingly, the statute cannot stand. *See, e.g., Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). ("[A] statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature.").

In *Pike v. Bruce Church, Inc.*, the Supreme Court set forth the "general rule" for "determining the validity of state statutes affecting interstate commerce." 397 U.S. 137, 142 (1970). Under the *Pike* test, a statute that affects interstate commerce will be upheld "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest," where "its effects on interstate commerce are only incidental," and where the burden imposed on interstate

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - 12
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

1    commerce is not "clearly excessive in relation to the putative local benefits." *Id*.  SB 6251

2    clearly fails this test.  The effect of the statute on interstate commerce is far more than

3    incidental – it is part and parcel of the law's sweeping regulatory intent:  to incentivize conduits

4    of information, via the threat of criminal liability wherever they may be located, to take down

5    advertisements that suggest offending conduct to take place within the state of Washington.  The

6    statute will of necessity reach interstate conduct, and the governmental interest in prosecuting

7    wrongdoers is severely undermined by the practical obstacles to exercising jurisdiction over

8    defendants whose criminal acts take place outside the state.  *ACLU v. Johnson*, 194 F.3d 1149,

9    1161–62 (10th Cir. 1999) (holding that a New Mexico statute that criminalized "dissemination"

10   of materials that are "harmful to minors" violated the Commerce Clause because "the nature of

11   the Internet" made it impossible for the statute to reach purely intrastate conduct and the benefits

12   to be achieved were limited).

13          Indeed, the out-of-state burden imposed will, by design, be significant, particularly for

14   parties such as the Internet Archive that recirculate content from all 50 states. The statute sets

15   forth a single safe harbor to escape liability:  pre-publication screening of content and the

16   collection of government-issued identification that must be produced for inspection on demand

17   of law enforcement.  SB 6251 § 2.  As criminal liability is triggered under the statute regardless

18   of context – offending content may take the form not only of an ad appearing in a clearly-labeled

19   "adult" section of a web site that hosts classified ads but also an "offer" made in a general-

20   purpose forum or even material mislabeled as a means of obfuscation – the statute would all but

21   require the pre-screening of *all* content by *all* service providers who may occasionally,

22   unintentionally, host offending content and want to ensure that they qualify for the safe harbor.

23   Such a requirement imposed by even a single state on service providers who disseminate or

24   otherwise make available any significant amount of third-party content would be significant, to

25   say the least, not to mention the possibility of multiple requirements from a multitude of states.

26

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - 13
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

The Internet, which facilitates fluid cross-border transactions, highlights the concerns about inconsistent state regulation.  As one leading case explained:

> The courts have long recognized that certain types of commerce demand consistent treatment and are therefore susceptible to regulation only on a national level. The Internet represents one of those areas; effective regulation will require national, and more likely global, cooperation. *Regulation by any single state can only result in chaos*, because at least some states will likely enact laws subjecting Internet users to conflicting obligations.  Without the limitation's [*sic*] imposed by the Commerce Clause, these inconsistent regulatory schemes could paralyze the development of the Internet altogether.

*American Library Ass'n v. Pataki*, 969 F. Supp. 160, 181 (S.D.N.Y. 1997) (emphasis added). Indeed, courts across the country have applied the Commerce Clause to strike down attempts by states to regulate or otherwise burden Internet communications.  *See, e.g.*, *Cyberspace Communications, Inc. v. Engler*, 55 F. Supp. 2d 737, 752 (E.D. Mich. 1999) (finding Commerce Clause violation because state regulation "would subject the Internet to inconsistent regulations across the nation"), *aff'd*, 238 F.3d 420 (6th Cir. 2000).  Because the statute is fundamentally flawed and inconsistent with the Commerce Clause, the Court should bar implementation on this ground as well.

### 3.   SB 6251 Violates the First and Fourteenth Amendments.

#### i.   SB 6251 Impermissibly Creates a Strict Liability Crime.

SB 6251 additionally violates the First Amendment in several ways.  First, on its face, the statute impermissibly imposes criminal liability for speech acts without an accompanying scienter requirement.  While knowledge is a required element for criminal liability to attach for "publish[ing], disseminat[ing], or display[ing]" barred offers, liability can also strictly attach, without the knowledge element being satisfied, if anyone "causes directly or indirectly, to be published, disseminated, or displayed" those same offers.  SB 6251 § 1.  While the state can without question bar unprotected speech, it cannot do so without a scienter requirement.  *See, e.g.*, *Smith v. California*, 361 U.S. 147, 153 (1959) (holding that a state obscenity statute could not constitutionally eliminate altogether a scienter requirement, and that, in order to be

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - 14
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

1  constitutionally applied to a book distributor, it must be shown that he had "knowledge of the

2  contents of the book"); *United States v. U.S. Dist. Court for Cent. Dist. of Cal.*, 858 F.2d 534,

3  540 (9th Cir. 1988) ("Our reading of the relevant Supreme Court opinions, particularly *Smith v.*

4  *California*, suggests that the first amendment does not permit the imposition of criminal

5  sanctions on the basis of strict liability where doing so would seriously chill protected speech.").

6  To the extent it does not contain a scienter requirement, SB 6251 is unconstitutional.

7          **ii.**        **SB 6251 Is Overbroad and Cannot Satisfy Strict Scrutiny.**

8         As it imposes liability on information conduits based on the content of third party posts –

9  explicit or implicit offers for commercial sex acts – SB 6251 is also a content-based restriction

10  on speech.  Content-based restrictions are "presumptively invalid," *Ashcroft v. ACLU*, 535 U.S.

11  564, 591 (2002) (Kennedy, J., concurring), and must satisfy strict scrutiny by being "narrowly

12  tailored to achieve a compelling government interest" and the least restrictive means to achieve

13  that interest.  *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000).  *See also*

14  *Reno*, 521 U.S. at 874.  Assuming *arguendo* that the identified interest is compelling for First

15  Amendment purposes ("eliminating sex trafficking of minors in a manner consistent with federal

16  laws prohibiting sexual exploitation of children"), SB 6251 is most certainly not the least

17  restrictive means to achieve it.  SB 6251 encompasses vast amounts of speech that do not fit

18  within the proscribed category.  At best, the proscription of  "indirect" and "implicit"

19  advertisements for sex will impact ads for other products and services.  At worst, it will include

20  advertisements for art, literature, and political discussion revolving around important social

21  themes.  *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 246 (2002) ("The statute proscribes

22  the visual depiction of an idea—that of teenagers engaging in sexual activity—that is a fact of

23  modern society and has been a theme in art and literature throughout the ages.").  This

24  overinclusiveness prevents the law from being considered "narrowly tailored."  *Simon &*

25  *Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 123 (1991).  Moreover,

26  SB 6251 cannot "in fact alleviate [the identified] harms in a direct and material way."  *Turner*

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - 15
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

*Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994).  As a result, SB 6251 is not the least restrictive means of achieving the government's interest, however construed.

The vague statutory dictates of SB 6251 which impose unclear burdens on indirect actors, will likely lead to overbroad self-censorship in order to avoid potential criminal liability.  *See, e.g.*, *Free Speech Coal.*, 535 U.S. at 244  (holding that the Constitution "gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere" and that a law imposing criminal penalties on speech is "a stark example of speech suppression" underscoring the need for facial challenges).  SB 6251 reaches any "indirect" speech that "implicitly" offers sex in exchange for "something of value" but fails to define any of those terms.  Legislation is overbroad when it suppresses a significant amount of protected speech in addition to the targeted, unprotected speech.  *Broadrick v. Oklahoma*, 413 U.S. 601 (1973).  Here, the statute's fundamental overbreadth problem inheres in its text; the essential terms cabining liability ("explicit," "implicit," "direct" and "indirect") remain entirely undefined.

Courts look on content-based restrictions enforced by recourse to criminal punishment with special skepticism.  *See, e.g.*, *City of Houston, Tex. v. Hill*, 482 U.S. 451, 459 (1987).  "The severity of criminal sanctions may well cause speakers to remain silent rather than communicate even arguably unlawful words, ideas, and images." *Reno*, 521 U.S. at 872.  Criminal enforcement of an overbroad law thus threatens to chill more speech than statutes with only civil penalties.  *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011).  Laws with criminal penalties are subject to heightened scrutiny for this very reason.  *Hunt v. City of Los Angeles*, 638 F.3d 703, 712 (9th Cir. 2011) (applying a "more demanding standard of scrutiny" to situations where "criminal sanctions are involved and/or the law implicates First Amendment rights") (internal quotations omitted).  The aim of the statute is to prevent criminal conduct from taking place, but "[t]he evil in question depends upon the actor's unlawful conduct, conduct defined as criminal quite apart from any link to the speech in

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - 16
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

1  question." *Free Speech Coal.*, 535 U.S. at 252.  And as in *Free Speech Coalition*, the

2  criminalization of "implicit offers," without restriction as to the content, context, or wording of

3  those offers, sweeps in as illegal much innocent speech as well.

4  ### iii.    SB 6251 Is Unconstitutionally Vague.

5  The vagueness of SB 6251 also renders it unenforceable on due process grounds:  the

6  Constitution requires this Court to strike down legislation if it is impermissibly vague.  *See, e.g.,*

7  *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972) ("Living under a rule of law entails

8  various suppositions, one of which is that '[all persons] are entitled to be informed as to what the

9  State commands or forbids'" (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939)

10  (alteration in original)); *see also FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307 (2012)

11  (same).  This "basic principle of due process" is designed to protect citizens' autonomous choice

12  "to steer between lawful and unlawful conduct," to constrain law enforcement, and to prevent

13  chilling First Amendment protected speech.  *Grayned v. City of Rockford*, 408 U.S. 104, 108–09

14  (1972).  The void-for-vagueness doctrine therefore forbids states to "delegate[] basic policy

15  matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis."  *Id.*

16  Vague statutes can otherwise "encourage arbitrary and discriminatory enforcement."  *Kolender*

17  *v. Lawson*, 461 U.S. 352, 357 (1983).  For this reason, states are required to "establish minimal

18  guidelines to govern law enforcement."  *Id.* (quoting *Smith v. Goguen*, 415 U.S. 566, 574

19  (1974)).  Because SB 6251 fails to define essential terms cabining criminal liability, it vests

20  complete discretion with the police and prosecutors to determine when to prosecute those who

21  might "cause[] . . . indirectly . . . to be disseminated" an "implicit offer for a commercial sex act

22  to occur in Washington."  SB 6251 § 1(a).

23  SB 6251 fails to define important terms under the statute and thus prevents citizens from

24  knowing what is prohibited.  *See Grayned*, 408 U.S. at 108.  Among the terms that the

25  Washington legislature has neglected to define are "indirect," "direct," "implicit" and "offer."  In

26  addition, as discussed above, the statute seems to require scienter if one "publishes, disseminates,

or displays" a prohibited advertisement, but is imprecise as to the level of knowledge required if one "causes directly or indirectly" the publication of the same content. Clear scienter requirements can save an otherwise vaguely worded statute, but vagueness regarding the scienter can only doom the rest of SB 6251. *See Kev, Inc. v. Kitsap Cnty.*, 793 F.2d 1053, 1057 (9th Cir. 1986) (citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 342 (1952) (emphasizing that because the burden is on the government to prove the knowledge of the defendant, enforcing the statute would not result in arbitrary or discriminatory application)).

As alluded to above, courts are especially skeptical of vague statutes where free speech is at issue, because of "the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." *NAACP v. Button*, 371 U.S. 415, 432 (1963). Thus, courts apply a heightened vagueness analysis where First Amendment freedoms are at stake, "requiring statutes to provide a greater degree of specificity and clarity than would be necessary under ordinary due process principles." *Cal. Teachers Ass'n v. State Bd. Of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001). "[R]igorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *FCC v. Fox*, 132 S. Ct. at 2307; *see also Reno*, 521 U.S. at 870-71 ("The vagueness of [a content-based regulation of speech] raises special First Amendment concerns because of its obvious chilling effect.").

### B.     The Internet Archive and Other Service Providers Are Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief.

If the Court does not enjoin enforcement of SB 6251, providers of interactive computer services, like the Internet Archive, and the public will suffer irreparable harm. Faced with a combination of severe criminal penalties and unclear restrictions, providers of online speech channels will quickly grow more conservative, and opportunities for protected speech, especially on the margins, will begin to dry up. Speakers and listeners alike will suffer when platforms and others in the speech chain grow more wary or disappear altogether. "'The loss of First

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - 18
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury' for the purposes of the issuance of a preliminary injunction." *Warsoldier v. Woodford*, 418 F.3d 989, 1002 (9th Cir. 2005) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also S.O.C., Inc. v. Cnty. of Clark*, 152 F.3d 1136, 1148 (9th Cir. 1998) (holding that a civil liberties organization that had demonstrated probable success on the merits of its First Amendment overbreadth claim had thereby also demonstrated irreparable harm).

### C.    The Balance of Equities Favors Granting a Preliminary Injunction.

The harm suffered by the Internet Archive and other online service providers in the absence of preliminary relief is greater than the harm suffered by Washington state if the law is enjoined.  Preliminary relief would maintain the status quo, permitting law enforcement to continue to investigate and arrest sex traffickers but precluding (at least for the moment) reliance on legislation targeting not criminals but the operators of platforms over which messages are carried.  The state of Washington has numerous laws at its disposal to combat child trafficking. The liberty interests of those who provide access to information should not be threatened in the meantime.

### D.    The Preliminary Injunction Is in the Public Interest.

In considering preliminary injunctions, the Ninth Circuit has recognized a significant public interest in preventing First Amendment restrictions.  *See Farris v. Seabrook*, 677 F.3d 858, 868 (9th Cir. 2012) (holding that the public interest in upholding free speech rights outweighed the continued enforcement of a Washington statute); *Thalheimer*, 645 F.3d at 1128–29 (holding that the public interest in upholding free speech rights outweighed the continued enforcement of a municipal ordinance).  Additionally, "[t]he public interest inquiry primarily addresses the impact on non-parties rather than parties." *Sammartano v. First Judicial Dist. Court, in & for Cnty. of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002).  "The 'ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of [plaintiffs], but also the interests of other people' subjected to the same

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - 19
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827

1  restrictions." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (citing

2  *Sammartano*, 303 F.3d at 974).  As discussed above, SB 6251 threatens to burden large swaths of

3  constitutionally and statutorily protected speech and the underlying platforms for that speech.

4  The preliminary injunction should be granted because the risked harm to protected speech is

5  harm is too great and counter to the public interest.

6  **IV.    CONCLUSION**

7        Plaintiff-Intervenor the Internet Archive has established that: (1) it is likely to succeed on

8  the merits because SB 6251 is expressly preempted by federal statute, unconstitutionally vague

9  and overbroad, and in violation of the Commerce Clause; (2) it will suffer irreparable harm if SB

10 6251 is not enjoined; (3) the balance of equities tips in favor of granting preliminary relief; and

11 (4) the public interest favors protecting First Amendment freedoms.  All of the required elements

12 for a preliminary injunction are met.

13        Accordingly, for the reasons stated above, the Internet Archive requests that the motion

14 for a preliminary injunction be granted, enjoining enforcement of SB 6251.

15 Dated: July 2, 2012                        Respectfully submitted,

16                                 By:    /s/ Venkat Balasubramani
                                         Venkat Balasubramani, WSBA #28269
17                                       FOCAL PLLC
                                         800 Fifth Avenue, Suite 4100
18                                       Seattle, WA 98104
                                         Tel: (206) 718-4250
19                                       Fax: (206) 260-3966
                                         venkat@focallaw.com
20
                                         Matthew Zimmerman (*pro hac vice*)
21                                       ELECTRONIC FRONTIER FOUNDATION
                                         454 Shotwell Street
22                                       San Francisco, CA 94110
                                         Tel:  (415) 436-9333
23                                       Fax: (415) 436-9993
                                         mattz@eff.org
24
                                         *Attorneys for Plaintiff-Intervenor*
25                                       *the Internet Archive*

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2012, I electronically filed the foregoing (1) Internet Archive's Joinder Motion in Support of Preliminary Injunction and (2) the Declaration of Brewster Kahle with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Dated: July 2, 2012

s/ Venkat Balasubramani
Venkat Balasubramani, WSBA #28269
FOCAL PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
Tel: (206) 529-4827
Fax: (206) 260-3966
venkat@focallaw.com

INTERNET ARCHIVE'S JOINDER MOTION IN SUPPORT OF
PRELIMINARY INJUNCTION - 1
Case No.: 2:12-cv-00954-RSM

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.529.4827