The Honorable RICARDO S. MARTINEZ

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| BACKPAGE.COM, LLC | NO.  C12-954-RSM |
| Plaintiff, | ATTORNEY GENERAL AND PROSECUTING ATTORNEYS' OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION |
| and | |
| THE INTERNET ARCHIVE, | |
| Plaintiff Intervenor, | NOTED:  July 20, 2012 at 1:30 p.m. |
| v. | |
| ROB MCKENNA, Attorney General of Washington, et al., | |
| Defendants, in their official capacities. | |

## I.    INTRODUCTION

This case is about whether a state may adopt a law that criminalizes knowingly advertising the commercial sexual abuse of minors.  Washington's Senate Bill 6251 ("SB 6251"),[1] enacted in 2012, is such a law.  These advertisements, whether in print or online, are a method used by human traffickers to make minors available for commercial sexual abuse.  SB 6251 addresses this abhorrent practice.

---

[1] ESSB 6251, 62d Leg. (Wa. 2012).

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO.  C12-954-RSM

1

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

Plaintiff Backpage.com provides online advertising of "escort services," a euphemism for prostitution.  Backpage.com seeks to prevent enforcement of SB 6251, thereby allowing traffickers to continue advertising minors for commercial sexual abuse.  Intervenor Internet Archive, which is a significantly different type of entity than Backpage.com, provides free access to historical materials posted from other websites.  Internet Archive is outside the scope of SB 6251 but nonetheless also seeks to prevent this statute's enforcement.  Plaintiffs' motions challenge SB 6251 on its face even though it has a broad range of potential applications.

Plaintiffs' motions should be denied.  They do not have standing to bring this premature facial challenge, and even if they did, their legal claims fail.  First, Section 230 of the Communications Decency Act (CDA) is a shield, not a sword, and it cannot be used offensively in a case that is not an application of SB 6251.  Even if section 230 could be used to invalidate a law on its face, it does not preempt SB 6251 because SB 6251 has applications that would not implicate section 230.  Alternatively, section 230 does not preempt SB 6251 because when SB 6251 is properly construed, it is consistent with the CDA.  Second, SB 6251, when properly construed, is not a strict liability crime.  Third, SB 6251 readily satisfies the requirements of the First and Fourteenth Amendments.  It narrowly affects only speech that is unprotected by the First Amendment, and it is not overly broad.  It makes clear what facts must be proven for liability to be imposed and, therefore, is not vague under the Fourteenth Amendment.  Finally, SB 6251 creates none of the risks of burdening interstate commerce present in the child pornography cases cited by plaintiffs and does not violate the dormant Commerce Clause.

SB 6251 is a valid, necessary tool to combat a pernicious problem.  The request for a

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

2

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

preliminary injunction against the Attorney General and the Prosecuting Attorneys of this state should be denied, and the temporary restraining order should be lifted.[2]

## II.     STATEMENT OF FACTS

**A.     The trafficking of minors in Washington for commercial sexual abuse.**

"Experts estimate at least 100,000 American juveniles are victimized through prostitution in America each year."  Declaration of Lana Weinmann ¶ 3.  Online classified advertisements are frequently used to pimp minors to prospective customers.  Declaration of Ryan Long ("Long Decl.") ¶ 19.  The Washington State Legislature, in enacting SB 6251, found the growing problem of child sex trafficking through advertisements must be addressed:

> The legislature finds it unacceptable that Washington's children are being sold for sex in advertisements.  A 2008 Seattle human services department report estimated that there are three hundred to five hundred children being exploited for sex in the Seattle area alone each year.  The legislature finds that the practice of escort services advertising includes minors who are being sold for sex, a form of sex trafficking and commercial sexual abuse of minors. According to the Seattle police department, since the beginning of 2010, at least twenty-two children have been advertised online in the Seattle area for commercial sex and were recovered by the police department.  The legislature is committed to eliminating sex trafficking of minors in a manner consistent with federal laws prohibiting sexual exploitation of children.

SB 6251, section 1.

**B.     The escort services advertising business.**

Online escort advertisements are thinly veiled offers of prostitution.  Long Decl. ¶¶ 19-21, 24.  Even in the absence of discovery, there is evidence that Backpage.com is aware of this fact.  Declaration of Paula Selis ¶ 3.  Advertisements on Backpage.com are often made by prostitutes at the direction of a pimp or by the pimp.  Long Decl. ¶ 19.  These advertisements

---

[2] The Kitsap County Prosecuting Attorney has noted a separate Motion pursuant to Fed. R. Civ. P. 12(b)(6).

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

are frequently paid for by credit card.  Long Decl. ¶ 20.  In an effort to avoid detection by law enforcement, sometimes the prostitute or pimp uses a third party to post an online advertisement.  Long Decl. ¶ 19.  Once the advertisement is posted, "dates" are set up via the phone number listed on the advertisement.  *Id.*  "Dates" for prostitution are also set up in person.  Long Decl. ¶ 21.  Since 2007, however, over ninety percent of the "dates" leading to arrest by the Seattle Police Department were arranged through advertisements on websites such as Backpage.com.  *Id.*

These advertisements are organized by city and state in which the advertisement will appear.  Declaration of Rebecca Hartsock ("Hartsock Decl.") ¶¶ 4, 17, 27, 43.  Backpage.com provides users a template for creating the advertisement that includes the required fields of "Title," "Description," "Age," "Location" and email address.  Hartsock Decl. ¶ 45.  Users are also given a template to upload photographs which are reviewed by moderators employed by Backpage.com.  Hartsock Decl. ¶ 46.

A recent investigation involving a fifteen year old Washington girl revealed Backpage.com's efforts to combat sex trafficking are ineffective.  Declaration of Todd Novisedlak ¶¶ 5-20.  Despite intervention by local police, and its own recognition that the advertisements in question involved an underage child, Backpage.com allowed the posting of nearly identical advertisements no less than ten times in a two week period of time.  *Id.*

**C.      Internet Archive's archive of online material.**

The Internet Archive provides free access for researchers, historians, scholars, people with disabilities, and the general public to historical collections that exist in digital format via its website known as the Wayback Machine.  Hartsock Decl. ¶¶ 52-53.  The Wayback Machine

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

4

employs a "Terms of Use" that requires its users to certify that their use of the site is for non-commercial purposes.  Hartsock Decl. ¶ 58.  The Internet Archive uses a technology that "crawls" through other websites on a periodic basis and posts newly found materials to its site after a lag time of anywhere from six to twenty-four months.  Hartsock Decl. ¶¶ 54-56.  There is no public access to the materials collected by the Internet Archive until they are indexed and transferred to long-term storage to appear in the Wayback Machine.  *Id*.  A recent search of the Wayback Machine reveals that the most current historical records of "escort" advertisements from several representative websites, including Backpage.com, are approximately one year old or more.  Hartsock Decl. ¶¶ 63, 68, 74.

## III.   ARGUMENT

**A.   A preliminary injunction is an extraordinary remedy.**

A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. NRDC*, 555 U.S. 7, 24 (2008).  A plaintiff seeking a preliminary injunction must establish (1) a likelihood of success on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of hardships tips in its favor; and (4) that the public interest favors an injunction.  *Id.* at 20.  A plaintiff can also satisfy the first and third elements of the test by raising serious questions going to the merits of its case and a balance of hardships that tips sharply in its favor.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

**B.   Plaintiffs are not likely to succeed on the merits.**

**1.   Plaintiffs lack standing to bring this action.**

The standing doctrine represents an essential part of the "case or controversy" requirement of Article III of the United States Constitution.  *See Lujan v. Defenders of*

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

5

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

*Wildlife,* 504 U.S. 555, 560 (1992).  Courts analyzing First Amendment facial challenges brought under 42 U.S.C. § 1983 use the Article III standing analysis.  *See, e.g., Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 390-93 (1988).  At a minimum, the plaintiff must allege that (1) it has suffered an "injury in fact" that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the defendant's conduct, and (3) a favorable decision is likely to redress the injury.  *See Lujan*, 504 U.S. at 560-61.

In a pre-enforcement facial challenge to a criminal statute on First Amendment grounds, one does not have to first risk exposure to actual arrest or prosecution.  *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979).  Nevertheless, the plaintiff must, at a minimum, allege (1) an intention to engage in constitutionally protected conduct that is proscribed by the statute, and (2) a credible threat of prosecution under the statute.  *Id*.  The court must decide whether the threat of prosecution to the plaintiff bringing suit is more than imaginary or speculative.  *Id.*  Generalized threats of prosecution will not suffice; instead, there must be a "genuine threat of imminent prosecution."  *Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1139 (9th Cir. 2000).  Given this test, each case requires a fact specific determination.  Here, neither plaintiff has alleged facts indicating the existence of a genuine threat of imminent prosecution.

Moreover, Internet Archive cannot suffer an actual injury because it does not fall within the scope of SB 6251.  Under Internet Archive's business model, it would not have the required state of mind to "knowingly" participate in advertising of commercial sex acts containing depictions of minors.  *See infra* Part 3.  SB 6251 addresses actual advertisements which by definition must be capable of conveying a timely offer to engage in a commercial sex

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO.  C12-954-RSM

6

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

act.

While a plaintiff may demonstrate an actual injury if a statute "chills" it from exercising First Amendment rights, the mere allegation of a subjective chill is no substitute for a claim of specific present objective harm or a threat of specific future harm. *See Laird v. Tatum,* 408 U.S. 1, 13-14 (1972). A plaintiff must present objective evidence to show that the challenged law, regulation, or ordinance will deter it from engaging in constitutionally protected speech. *See Bordell v. General Electric Co.*, 922 F.2d 1057, 1061 (2d Cir. 1991). Here, plaintiffs have made no allegation that their speech has been chilled nor provided evidence of any self-censorship – evidence that would be readily available to them if it existed. There would also be no reason for Internet Archive to engage in any self-censorship as SB 6251 does not affect it.

Plaintiffs also contend that other online service providers face a threat of prosecution under SB 6251. However, a party ordinarily may assert only its own legal rights and not those of third parties not before the court. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975). Plaintiffs are not entitled to invoke the exception from this general rule that was articulated in *Stoianoff v. State of Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983), in which a plaintiff may assert the constitutional rights of others in an overbreadth facial challenge involving protected speech. That exception is not available because SB 6251, if it pertains to protected speech at all, pertains to commercial speech. The overbreadth doctrine does not apply to commercial speech. *See Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 497 (1982). Moreover, even under the exception, a plaintiff still must demonstrate an injury-in-fact to invoke the federal court's jurisdiction. *Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947,

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

7

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

958 (1984); *Bordell,* 922 F.2d at 1061.  Because plaintiffs here fail to allege an actual injury to themselves, the overbreadth exception to the traditional standing rule cannot provide them with standing in this case.

**2.      The Communications Decency Act ("CDA") does not preempt SB 6251.**

Plaintiffs cannot support their claim that section 230 preempts SB 6251.  Subsections (c)(1) and (e)(3) are explicit statements of Congress's intent.  The scope of these subsections is to establish an immunity, which can be asserted depending on the facts of an as-applied proceeding.  SB 6251 does not directly impose liability itself prior to an as-applied proceeding, and therefore is not preempted by section 230.  Even assuming that SB 6251 imposes liability on its face, plaintiffs' challenge fails for three alternative reasons.  First, SB 6251 cannot be invalidated in this facial challenge because it could be applied to persons who are not entitled to protection under section 230.  Second, section 230 expressly recognizes that states may enforce "any State law that is consistent with [section 230]," and SB 6251 is such a law.  Third, section 230 does not preempt criminal laws generally.

**a.      Section 230, which creates an immunity for an as-applied proceeding, is not a basis to preempt SB 6251.**

Plaintiffs seek to enjoin enforcement of SB 6251 based on section 230 of the CDA, which protects "certain internet-based actors from certain kinds of lawsuits."  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009).  Plaintiffs, however, misread the CDA.

Two subsections of section 230 are relevant.  First, subsection (c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  Second, subsection (e)(3) provides that "[n]othing in this section shall be construed to prevent any State from

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO.  C12-954-RSM

8

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

enforcing any State law that is consistent with this section.  No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."

The scope of subsections (c)(1) and (e)(3) is well established.  When they are read together, subsection (c)(1) protects from liability: (1) a provider or user of an interactive computer service, (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker, (3) of information provided by another information content provider. *Barnes*, 570 F.3d at 1100-01.  "By its terms . . . section (c)(1) only ensures that in certain cases an internet service provider will not be 'treated' as the 'publisher or speaker' of third-party content for the purposes of another cause of action." *Id*. at 1101.  "Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties . . . ." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (*en banc*).  This grant of immunity applies only if the interactive computer service provider is not also an information content provider. *Id*.

In a cause of action under state law for civil liability, section 230 can be asserted as a basis to dismiss a claim. *See, e.g., Barnes*, 570 F.3d at 1105 (involving a motion to dismiss a state law claim for negligent provision of services based on section 230); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109, 1119 (9th Cir. 2007) (involving summary judgment on state intellectual property claims based on section 230); and *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (involving summary judgment on state tort claims based on section 230).  If a state were to initiate a prosecution or other action such as a search warrant

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO.  C12-954-RSM

9

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

1   under a state criminal law, section 230, if it applies in the criminal context, would have the

2   same effect as it does under state civil law – it is an immunity that can be asserted by a

3   defendant.  The two unpublished cases cited by Backpage.com confirm that, if section 230

4   applies to state criminal laws, it is an immunity.[3]  *See People v. Gourlay*, No. 278214, 2009

5   WL 529216, at *1 (Mich. Ct. App. Mar. 3, 2009) (involving a prosecution) and *Voicenet*

6   *Commc'ns, Inc. v. Corbett*, No. 04-1318, 2006 WL 2506318, at *1 (E.D. Pa. Aug. 30, 2006)

7

8   (involving execution of a search warrant).

9        Plaintiffs' assertion that section 230 preempts SB 6251 on its face fails under

10  preemption analysis.  Federal law preempts state law in three circumstances.  *English v.*

11  *General Elec. Co.*, 496 U.S. 72, 78-79 (1990).  First, Congress can explicitly define the extent

12  to which its enactments preempt state law.  Second, in the absence of explicit statutory

13  language, state law is preempted where it regulates conduct in a field that Congress intended

14  the federal government to occupy exclusively.  Third, state law is preempted to the extent that

15  it actually conflicts with federal law.  *Id.* at 78-79.

16

17       Subsection (e)(3) of section 230 is an explicit statement of Congressional intent: "[n]o

18  <u>cause of action may be brought and no liability may be imposed</u> under any State or local law

19  that is inconsistent with this section." (Emphasis added.)  Courts have interpreted the plain

20  language of section 230 to create an immunity when an interactive computer service provider

21  is not also an information content provider.  Accordingly, an internet-based actor, in a civil or

22  criminal proceeding, may assert section 230 immunity and may succeed, depending on the

23  facts.  Section 230 does not, however, preempt SB 6251 on its face.

24

25

26       [3] *See infra* Part 2.b.ii for the argument that section 230 does not apply to state criminal laws.

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

10

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

    **b.**  **Even if section 230 were a basis to preempt a law on its face, it does not preempt SB 6251.**

      **(1)**  **SB 6251 could be applied in circumstances in which section 230 immunity is not available and, therefore, survives a facial preemption challenge.**

   In a facial preemption case, the Ninth Circuit applies the facial challenge standard from *United States v. Salerno*, 481 U.S. 739 (1987).  *Sprint Telephony PCS v. County of San Diego*, 543 F.3d 571, 579 n.3 (9th Cir. 2008).  Under *Salerno*, "the challenger must establish that no set of circumstances exists under which the Act would be valid."  *Salerno*, 481 U.S. at 745. *See, e.g., U.S. v. Bynum*, 327 F.3d 986, 990-91 (9th Cir. 2003) (rejecting a facial challenge to a federal criminal law that had been constitutionally applied).

   Here, SB 6251 could apply in circumstances in which section 230 immunity is not available.  First, SB 6251 applies to advertisements in "print media."  This plainly does not implicate section 230.  Second, SB 6251 applies to persons who post ads in electronic media.  They would not be entitled to section 230 immunity because they are information content providers.  Third, even for interactive computer service providers, section 230 immunity is not automatically available.  It does not apply when an interactive computer service provider is also an information content provider.  *See Anthony v. Yahoo! Inc*., 421 F. Supp. 2d 1257, 1262-63 (N.D. Cal. 2006) (plaintiff alleged that website created false dating profiles).  Nor does it apply when an interactive service provider helps to develop unlawful content by contributing materially to the alleged illegality of the conduct of the parties posting the content.  *See Fair Housing Council*, 521 F.3d at 1168 (provider of on-line roommate-matching service responsible for discriminatory preferences in users' profiles); *Federal Trade Commission v. Accusearch, Inc.,* 570 F.3d 1187, 1198-99 (10th Cir. 2009) (provider of service for accessing

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

11

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

personal telephone records responsible for the conduct of the third-party contributors who were unlawfully obtaining the records).[4]

There are additional reasons that section 230 immunity may not apply in a given application.  For example, section 230 may not apply to injunctive relief.  *See Mainstream v. Loudoun Board of Trustees of Library*, 24 F. Supp. 2d 552, 561 (E.D. Va. 1998) ("§230 provides immunity from actions for damages; it does not, however, immunize defendant from an action for declaratory and injunctive relief"); *but see Noah v. AOL Time Warner, Inc.,* 261 F. Supp. 2d 532, 539-40 (E.D. Va. 2003) (applying section 230 immunity to a claim for injunctive relief).  Also, section 230 may not bar suits seeking to treat plaintiffs as distributors rather than as publishers.  *See Batzel v. Smith*, 333 F.3d 1018, 1027 n.10 (9th Cir. 2003). ("We . . . need not decide whether § 230(c)(1) encompasses both publishers and distributors.")

Because SB 6251 has valid applications regardless of whether section 230 immunity would be available in some applications, it survives plaintiffs' facial preemption challenge.

**(2)     Alternatively, SB 6251 is not preempted because it is consistent with the CDA and federal criminal laws.**

An alternative basis to uphold SB 6251 against plaintiffs' facial preemption challenge is that it is consistent with section 230 and federal criminal laws.  Section 230 provides that "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section."  47 U.S.C. § 230(e)(3).  Plainly, Congress did not intend to preempt state laws that are consistent with section 230.  SB 6251 is consistent with section 230 because it complies with Congress's purposes in enacting the CDA and is substantially similar to federal criminal laws regarding sexual exploitation of children that Congress specified are

---

[4] Discovery would be required to determine whether plaintiffs are ever information content providers or ever contribute materially to illegal conduct underlying a specific advertisement.

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

12

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

not subject to section 230's protection from liability.  Congress identified three purposes in enacting section 230, two of which are relevant here – to promote the continued development of the internet as a forum for exchanging ideas, and to ensure vigorous enforcement of criminal laws – especially in the areas of obscenity, stalking and harassment.  18 U.S.C. §§ 230(b)(1), (2), and (5).[5]

SB 6251 targets advertising of commercial sex abuse of a minor.  It is consistent, therefore, with Congress's purpose to promote the continued development of the internet as a forum for the meaningful exchange of ideas.  SB 6251 applies only to speech about illegal conduct, which is not protected speech.  *See infra* Part 4.a.  This is because the law requires proof that an advertisement is <u>knowingly</u> published, disseminated or displayed for a commercial sex act, which is illegal whether it involves adults or minors.  This predicate requirement distinguishes it from other criminal statutes that would apply to activities that would be lawful for adults to engage in, but unlawful for minors.  For example, a statute that required age verification for viewing pornography online might interfere with the free speech of adults who may lawfully do so.  Because of the limited application of SB 6251 to unprotected speech – knowing publication of advertisements for commercial sex acts – it has no impact on the speech that Congress intended to protect in adopting the CDA.

Second, and of substantial importance here, SB 6251 is consistent with Congress's purpose of ensuring the vigorous enforcement of criminal laws.  SB 6251 is similar to the federal statutes that Congress singled out as exempt from section 230's liability protection.  Subsection (e)(1) provides:

---

[5] Congress's third purpose – to encourage the development and utilization of blocking and filtering technologies, is not implicated by SB 6251.

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

No effect on criminal law.
Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of title 18, or any other federal criminal statute.

This explicit exemption shows that Congress did not perceive criminal sanctions – especially in the areas of obscenity and child sexual exploitation – to pose a threat to continued development of the internet as a forum for ideas.  SB 6251 is entirely consistent with this purpose of prohibiting the transmission of child pornography and obscenity.  In addition, SB 6251 is consistent with specific federal criminal statutes – particularly 18 U.S.C. § 1591, which pertains to sex trafficking of children.  Under Section 1591, anyone who knowingly benefits financially from knowingly or with reckless disregard for the fact causing a person under the age of 18 to engage in a commercial sex act is guilty of a criminal offense.  SB 6251 similarly addresses the problem of individuals or entities that profit from the prostitution of minors.  While 18 U.S.C. § 1591 attacks the knowing profiting from underage prostitution, SB 6251 attacks the knowing advertising of it.  These two approaches are entirely consistent.

It is true that SB 6251 is not identical to these federal statutes, but section 230 does not require it to be.  SB 6251 is only required to be "consistent" with section 230, which exempts similar federal criminal statutes.  *See* 47 U.S.C. § 230(e)(3).  Because section 230 does not define the term "consistent," the ordinary meaning of the word applies in this case.  "Consistent" means "in agreement with, compatible, or conforming to the same principles or course of action. . . ."  *Orthopaedic Hospital v. Belshe*, 103 F.3d 1491, 1496 (9th Cir. 1997) (citing Webster's II New Riverside University Dictionary, c. 1984).  In this case, the federal criminal statutes are in agreement with, compatible to and conform to the same principles as SB 6251.

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

1    Plaintiffs argue that Congress intended that any state criminal laws must not only be

2 consistent with federal criminal laws but must also be consistent with subsection (c)(1), which

3 provides that interactive computer service providers shall not be treated as speakers or

4 publishers of information provided by another information content provider.  If Congress had

5 intended such a result, it would have provided that "[n]othing in this section shall be construed

6 to prevent any State from enforcing any State law that is consistent with subsection (c)(1)

7 above."  Instead, Congress expressly provided that states may enforce any state law that is

8 consistent with all of section 230, and not just to the subsection under which plaintiffs seek

9 shelter.  SB 6251 is consistent with section 230 and may be enforced.

10    Finally, while SB 6251 is a criminal law that is consistent with section 230, and

11 therefore not preempted, Congress also did not intend to preempt state criminal laws <u>generally</u>.

12 This presents a separate basis to conclude that SB 6251 is not preempted.  As noted above,

13 subsection(e)(1), which provides that section 230 shall not be construed to impair enforcement

14 of federal criminal statutes, carries the broader title: "[n]o effect on criminal law."  This title is

15 helpful in interpreting the meaning of subsection(e)(1) because it was included in the

16 amendment which created subsection (e)(1). 141 Cong. Rec. H8468 (Aug. 4, 1995).

17 *West Coast Truck Lines, Inc., v. Arcata Community Recycling Center, Inc.*, 846 F.2d 1239,

18 1243 (9th Cir. 1988) (citation omitted).  ("Although titles cannot expand the meaning of a

19 statute, they may be helpful in interpreting ambiguities within the context of the statute.")  The

20 broad reference in the title clearly shows Congress's intent that section 230 not impair

21 enforcement of either state or federal criminal laws.

22    Additionally, the legislative history indicates that Congress intended that section 230

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

would only preempt civil laws.[6]  The conference agreement states, "[t]his section provides 'Good Samaritan' <u>protections from civil liability</u> for providers or users of an interactive computer service for actions to restrict or to enable restrictions on access to objectionable online material. . . ." 142 Cong. Rec. H1130 (Jan. 31, 1996) (emphasis added).  The Ninth Circuit has recognized Congress's intent to provide immunity from civil liability.  *Carafano*, 339 F.3d at 1124.  ("Congress made a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potential injurious messages.")

The unpublished decisions that plaintiffs cite do not provide any reason to conclude that their argument is correct.  *People v. Gourlay* involved a state prosecution related to child pornography on a website.  2009 WL 529216, *1.  The court rejected the defendant's assertion of section 230 immunity because he helped create and develop the pornography, making him a content provider.  *Id.* at *5.  While the court speculated that section 230 might apply in a criminal case, *see id.*, these portions of the opinion are dicta.  *Voicenet Communications, Inc. v. Corbett* involved civil litigation that arose after the execution of a criminal search warrant against an entity that asserted that it qualified for section 230 immunity.  2006 WL 2506318, *1.  The court decided that section 230 applies to state criminal laws, which was relevant to the status of the civil litigation.  *Id.* at *3-4.  *Voicenet* is not, however, controlling authority.

There is no clear and manifest congressional purpose to preempt state criminal laws, and controlling authority involves applications of section 230 in the civil context only.

---

[6] This court should look to the legislative history and intent of Congress to resolve the question regarding state criminal laws.  *U.S. v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 221 (1952).  ("[The Court] may utilize, in construing a statute not unambiguous, all the light relevantly shed upon the words and the clause and the statute that express the purpose of Congress".)

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

Accordingly, this Court should conclude that section 230 does not apply to state criminal laws.[7]

Plaintiffs cannot support their claim that section 230 preempts SB 6251.  Section 230 creates an immunity for as-applied proceedings and is not a basis to preempt SB 6251.  Even assuming section 230, as an immunity, could be analyzed as a basis to facially preempt SB 6251, it does not.  First, a preemption challenge fails under *Salerno*.  Second, SB 6251 is consistent with section 230.  Third, section 230 does not preempt criminal laws generally.

### 3.     SB 6251 does not create a strict liability crime.

Plaintiffs' second basis for requesting an injunction against enforcement of SB 6251 in its entirety is their allegation that it creates a strict liability crime in violation of the First and Fourteenth Amendments.  To support a facial challenge, plaintiffs must show that no set of circumstances exists under which SB 6251 would be valid.  *Salerno*, 481 U.S. at 745.  Under this test, a facial challenge to SB 6251 on the ground that it creates strict liability fails because there could be applications of SB 6251 in which a defendant would have a level of knowledge that would moot the question whether he or she was being held to a strict liability standard.  Additionally, any misguided attempt to impose a strict liability standard in a given prosecution would be subject to an as-applied challenge at that time, thus preserving the constitutionality of SB 6251.

Plaintiffs' challenge also fails on the merits.  The central premise of their argument is that SB 6251 imposes criminal liability without any scienter requirement.  Citing a list of

---

[7] This question whether section 230 preempts criminal laws generally involves conflict preemption rather than express preemption.  The interpretation of the title of subsection (e)(1) and the legislative history show that conflict preemption does not arise.  *See, e.g., English*, 496 U.S. at 87-88 (discussing congressional purpose and legislative history in holding that conflict preemption did not apply).

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

websites which do not operate so-called escort service advertising sections, Backpage.com

argues that these websites will be swept into the allegedly broad reach of liability under

SB 6251.  Plaintiffs' argument is based on an erroneous premise – that the statute does not

contain a scienter requirement.

>    a.   **SB 6251 requires scienter for all elements except the age of the minor.**

SB 6251 must be interpreted to require scienter for all elements except the age of the

minor depicted in the advertisement.[8]  Two provisions of SB 6251 are relevant.  First, section

2, subsection (1) states:

> A person commits the offense of advertising commercial sexual abuse of a
> minor if he or she <u>knowingly</u> publishes, disseminates, or displays, or causes
> directly or indirectly, to be published, disseminated, or displayed, any
> advertisement for a commercial sex act, which is to take place in the state of
> Washington and that includes the depiction of a minor.

(Emphasis added). Second, section 2, subsection (2) states:

> In a prosecution under this statute it is not a defense that the defendant did not
> know the age of the minor depicted in the advertisement.  It is a defense, which
> the defendant must prove by a preponderance of the evidence, that the
> defendant made a reasonable bone fide attempt to ascertain the true age of the
> minor depicted in the advertisement by requiring, prior to publication,
> dissemination, or display of the advertisement, production of a driver's license,
> marriage license, birth certificate, or other governmental or educational
> identification card or paper of the minor depicted in the advertisement and did
> not rely solely on oral or written representations of the minor's age, or the
> apparent age of the minor as depicted.  In order to invoke the defense, the
> defendant must produce for inspection by law enforcement a record of the
> identification used to verify the age of the person depicted in the advertisement.

Section 2, subsection (1) of SB 6251 uses the word "knowingly" to modify "publishes,

disseminates, or displays . . . any advertisement for a commercial sex act."  The use of the

word "knowingly" shows that the Legislature intended to require some mental state for the

---

[8] In a facial challenge, a federal court may interpret a state law, *see, e.g., Flipside*, 455 U.S. at 500-03 (interpreting a local ordinance in a vagueness facial challenge), and may consider any limiting construction that a state court has proffered. *Id*. at 495, n.5.

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

18

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

crime defined in subsection (1).  Plaintiffs argue, however, that the absence of the word

"knowingly" in front of the separate clause "causes directly or indirectly, to be published,

disseminated, or displayed, any advertisement for a commercial sex act" makes that portion of

the law a strict liability crime.

Plaintiffs' argument is based on a strained interpretation of the law of scienter.  In cases

cited by plaintiffs, it is clear that criminal statutes are construed in light of the background

rules of common law "in which the requirement of some *mens rea* for a crime is firmly

embedded."  *Staples v. United States*, 511 U.S. 600, 605 (1994).  "[W]e have suggested that

some indication of congressional intent, express or implied, is required to dispense with *mens*

*rea* as an element of a crime."  *Id.* at 606 (citations omitted).

Washington courts apply the same presumption that offenses with no mental element

are disfavored.  *See, e.g., State v. Williams*, 158 Wn.2d 904, 909 (2006) (discussing *Staples*).

The presumption applies to statutes that are altogether silent as to *mens rea.  See, e.g., Staples*,

511 U.S. at 619.  It also applies to statutes that contain a knowing requirement but are

ambiguous as to the extent of the knowledge required.  *See, e.g., United States v. X-Citement*

*Video, Inc*, 513 U.S. 64, 69 (1994); *Liparota v. United States*, 471 U.S. 419, 424 (1985);

*Morissette v. United States*, 342 U.S. 246, 250 (1952).

An additional presumption is that SB 6251 should be construed, where possible, to

avoid a substantial constitutional question.  *See X-Citement Video*, 513 U.S. at 69.  The Court

should reject plaintiffs' attempt to use a strained construction of SB 6251 to create a First

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

19

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

Amendment difficulty.[9]

The presumptions apply here.  The Legislature was not silent about scienter in

SB 6251.  To the contrary, the presence of the word "knowingly" in subsection (1) indicates

that the Legislature intended there to be scienter in the statute, with the exception of the age of

the minor as provided in subsection (2).  The Legislature's express omission of scienter for the

age of the minor where the defendant made no reasonable bone fide attempt to ascertain the

minor's true age shows that it knew how to dispense with scienter where it intended to.  The

fact that a technical grammatical argument can be made that subsection (1) might be clearer if

the word "knowingly" were added before the disjunctive "or causes directly or indirectly . . . to

be published, disseminated, or displayed" is not a clear indication of legislative intent to

dispense with scienter.  SB 6251 is properly interpreted to require scienter for causing directly

or indirectly the publication, dissemination, or display of an advertisement for a commercial

sex act.[10]

> **b.      Section 2, subsection (2), satisfies First and Fourteenth Amendment requirements.**

Given the interpretation of subsection (1) above, plaintiffs' First and Fourteenth

Amendment concerns are pertinent only to the strict liability aspect of subsection (2).

Subsection (2) satisfies First Amendment requirements.  Washington courts have confronted

the question whether a bar on the defense of not knowing the age of a minor satisfies First

Amendment requirements when the issue is possession of child pornography.  *See State v.

Rosul*, 95 Wn. App. 175 (1999); *State v. Garbaccio*, 151 Wn. App. 716 (2009).  In *Rosul* and

---

[9] The *Liparota* Court also cited the rule of lenity as an interpretive guideline that supports construing a statute to require scienter when Congressional purpose is unclear.  471 U.S. at 427-28.

[10] Because SB 6251 should be interpreted to require scienter, *Smith v. California*, 361 U.S. 147, 154-55 (1959) does not apply because that statute was construed as imposing strict liability.

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

*Garbaccio*, the statute – RCW 9.68A.070 – provided that "[a] person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a class C felony." *Rosul*, 95 Wn. App. at 180.  Additionally, RCW 9.68A.110 provided that "it is not a defense that the defendant did not know the age of the child depicted in the visual or printed matter . . . ."[11]

Possession of child pornography presents significantly different First Amendment issues than publishing, disseminating, or displaying advertisements for commercial sex acts that include the depiction of a minor.  Washington courts' interpretations of RCW 9.68.070 are instructive, however, for analyzing the First Amendment issue presented by SB 6251.  RCW 9.68.070 has been construed to have a stricter scienter requirement than results from a natural reading of the statute.  In *Rosul*, Division One of the Washington Court of Appeals recognized that "a natural grammatical reading of [the statute] would apply the scienter requirement to possession, but not to the age of the children depicted."  95 Wn. App. at 182.  Additionally, the court recognized the need to construe the statute to ensure that innocent possessors of child pornography do not face prosecution.  *Id*. at 184.  The court, therefore, construed RCW 9.68A.070 to "require a showing that the defendant was aware not only of possession, but also of the general nature of the material he or she possessed." *Id*. at 185.  *See also Garbaccio*, 151 Wn. App. at 733.

*Rosul* addressed the First Amendment overbreadth problem that can occur when a criminal statute imposes liability on a person engaged in otherwise innocent conduct who happens to possess proscribed material.  When a statute addresses child pornography, as in

---

[11] RCW 9.68A.110 also provided for an affirmative defense that the defendant was not in possession of any facts on the basis of which he or she should reasonably have known that the person depicted was a minor.

ATTORNEY GENERAL AND PROSECUTING ATTORNEYS' OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION -- NO.  C12-954-RSM

21

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

*Rosul*, the overbreadth concern includes possession of adult pornography, because possession of adult pornography is protected under the First Amendment.  It is necessary, therefore, to interpret RCW 9.68A.070 to require knowledge of the general nature of the materials so that a defendant is not penalized for possession of constitutionally protected materials.

SB 6251 does not present the same overbreadth issue as RCW 9.68A.070 because an advertisement for a commercial sex act is not protected speech, regardless of whether the advertisement depicts a minor.  *See infra* Part 4.a.  Because an advertisement for a commercial sex act is not protected speech, whether it depicts an adult or a minor, subsection (2) does not need to be construed to protect advertisements that depict adults.  Accordingly, subsection (2)'s bar on the defense of not knowing the age of the minor is constitutional on its face. SB 6251 requires proof that the defendant knew that an advertisement was for a commercial sex act and proof that the advertisement depicted a minor.  A person who is convicted under SB 6251, even without knowledge of the age of the minor, will not have been engaged in protected expression.

Alternatively, even if an advertisement for a commercial sex act that depicts an adult were to be considered protected speech, any overbreadth concern that SB 6251 presents could be addressed by applying the rationale of *Rosul*.  SB 6251, like RCW 9.68A.070, can be construed to require a showing that the defendant "was aware not only of possession, but also of the general nature of the material he or she possessed."  *Garbaccio*, 151 Wn. App. at 733, citing *Rosul*, 95 Wn. App. at 184.  "It is not constitutionally necessary that the State prove a defendant's specific knowledge of the child's age."  *Rosul*, 95 Wn. App. at 185.  SB 6251,

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

22

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

1   when construed in this manner, satisfies First Amendment requirements if they apply.[12]

2       Nor can plaintiffs sustain an argument that the strict liability aspect of subsection (2)

3   presents a Fourteenth Amendment concern.  Backpage.com cites *Shelton v. Sec'y, Dep't of*

4   *Correction*, 802 F.Supp.2d 1289 (M.D. Fl. 2011), for the proposition that a strict liability crime

5   violates the Fourteenth Amendment.  In *Shelton*, the court concluded that a Florida statute

6   created strict liability for a drug offense and held that the statute violated due process.  *Id*. at

7   1298.  The court relied on *Staples*, however, which does not apply when the question is the

8   constitutionality of a statute.  *Id*.  Instead, *Staples* addressed the question of how to interpret a

9   statute that is silent as to *mens rea*.  *Staples*, 511 U.S. at 619-20.  *Shelton* does not establish

10  that subsection (2) violates the Fourteenth Amendment.  To the contrary, a legislative body has

11  authority to define the elements of a criminal offense.  *See Staples*, 511 U.S. at 604-05.

12      Under the presumptions applied by federal and Washington courts, SB 6251 does not

13  create strict liability.  Rather, it requires scienter for all elements of the crime, except the age of

14  the minor depicted in the advertisement, and for that element it provides an affirmative

15  defense. SB 6251 satisfies First Amendment requirements because a defendant who

16  knowingly publishes, disseminates, or displays – or knowingly causes directly or indirectly to

17  be published, disseminated, or displayed – an advertisement for a commercial sex act is not

18  engaged in activity that is protected by the First Amendment.  Alternatively, SB 6251 can be

---

[12] In this scenario, *X-Citement Video* does not establish that the term "knowingly" must extend to the age of a minor depicted in an advertisement.  *X-Citement Video*, like *Rosul*, involved a statute pertaining to child pornography.  The federal child pornography statute at issue in *X-Citement Video* did not appear to contain <u>any</u> scienter requirement related to the contents of the proscribed material.  513 U.S. at 68.  In construing the statute, the Supreme Court determined that Congress intended to apply the scienter requirement of "knowingly" to the sexually explicit nature of the material.  *Id*. at 77-78.  While the *X-Citement Video* Court also applied the scienter requirement to the child's age, that was a matter of statutory construction.  *See Rosul*, 95 Wn. App. at 182-83 (citing *People v. Gilmour*, 678 N.Y.S.2d 436, 439 (1998)).

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

23

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

construed to require a showing that would address the possibility of overbreadth in its applications.  There is no basis to invalidate SB 6251 as facially unconstitutional as a strict liability crime.

### 4.   SB 6251 does not violate the First or Fourteenth Amendments.

Plaintiffs' third claim is a facial challenge to SB 6251 under the First and Fourteenth Amendments.  This challenge also fails.  First, on its face, SB 6251 proscribes only unprotected speech and, therefore, is not content-based.  If collateral burdens result from steps that private actors take in light of SB 6251, the burdens will similarly fall on unprotected speech.  Alternatively, the burdens will fall on commercial speech and survive scrutiny under *Central Hudson*.  Second, the fact that SB 6251 reaches only proscribed speech means that it is not overbroad.  Third, SB 6251 is not unconstitutionally vague because its terms provide fair notice of its prohibitions.

### a.   SB 6251 is not a content-based restriction requiring strict scrutiny.

SB 6251 is not a content-based restriction, and even if persons who are at risk of prosecution under SB 6251 take actions to reduce their risk, the collateral burdens on speech, if any, would not violate the First Amendment.  SB 6251 criminalizes only the publication, dissemination, or display of an advertisement for a "commercial sex act" that includes the depiction of a minor.  It defines a "commercial sex act" as "any act of sexual contact or sexual intercourse . . . for which something of value is given or received by any person."[13]  A commercial sex act involving a minor is illegal.  *See* chapter 9.68A RCW pertaining to sexual exploitation of children.

---

[13] A similar definition is contained in the federal law that criminalizes sex trafficking of children.  18 U.S.C. § 1591(a)(3) defines "commercial sex act" to mean "any sex act, on account of which anything of value is given to or received by any person."

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

24

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

Because a commercial sex act with a minor is illegal, an advertisement for a commercial sex act depicting a minor is unprotected speech.  "Offers to engage in illegal transactions are categorically excluded from First Amendment protection."  *United States v. Williams*, 533 U.S. 285, 297 (2008).  Plaintiffs attempt to characterize SB 6251 as content-based, relying on the rule that a law is content-based if an official must examine the content of a message in order to determine whether to enforce the law.  *See, e.g., S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1145 (9th Cir.), amended by 160 F.3d 541 (9th Cir. 1998).  This rule does not apply to categories of speech that are outside First Amendment protection.

Because SB 6251 proscribes only unprotected speech, it is facially valid.  Further scrutiny is limited to cases where the only reasonable recourse available to private actors under SB 6251 is to necessarily block a significant amount of protected speech.  *United States v. Playboy Entm't Group*, 529 U.S. 803 (2000), although distinguishable from this case, illustrates the analysis.  In *Playboy Entm't*, a federal statute required cable television operators to either fix the unintentional transmission of adult programming to non-subscribing customers, or restrict the hours of transmission to just one third of the day.  *Id*. at 806.  Because fixing the unintentional transmission was not economically feasible, private actors chose to limit the hours of transmission.  Because this reasonable choice had a profound impact on protected sexually-oriented programming, the Supreme Court characterized it as a "significant restriction" by the government, and the law did not withstand strict scrutiny.  *Id*. at 813.

Another illustrative case, also distinguishable, is *Ctr. for Democ. & Tech. v. Pappert*, 337 F. Supp. 2d 606 (E.D. Pa. 2004).  *Pappert* involved a Pennsylvania statute that required internet service providers ("ISP") to remove or disable access to child pornography residing on

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

25

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

its service after notification by the Attorney General. *Id*. at 610. "This case is unusual in that the Act, on its face, does not burden protected speech . . . . Facially, the Act only suppresses child pornography, which can be completely banned from the [i]nternet." *Id*. at 649. (Citation and quotation omitted.) Despite the statute's facial validity, the court applied a scrutiny analysis because the alternatives reasonably available to the ISPs blocked protected speech "to a significant degree." *Id*. at 651. The court found that the statute could not pass strict or intermediate scrutiny, in part because of significant overblocking of innocent websites in the effort to block a small portion of child pornography websites. *Id*. at 655.

This case is distinguished from *Playboy Entm't* and *Pappert* because in both of those cases, the burdens on speech were known and could be evaluated by each court, and the courts could determine whether a scrutiny analysis applied. In contrast, plaintiffs' claimed burdens on speech in this facial challenge are entirely hypothetical. Because SB 6251 targets only advertisements for commercial sex acts with minors, any collateral burdens reasonably would fall only on advertisements for commercial sex acts involving adults, which also are illegal. *See* RCW 9A.88.030 (criminalizing prostitution).[14] For example, if a website contains a section for postings for escort services such that the operator would have the requisite knowledge for liability under SB 6251, the operator can eliminate its exposure to prosecution by ceasing the posting of advertisements for commercial sex acts altogether. Alternatively, the operator can conduct age verification as provided in the affirmative defense. In either case, the only burdened speech is the unprotected speech of advertising for commercial sex acts, and no further scrutiny is warranted. A website operator may assert that SB 6251 requires broader

---

[14] *See also First Global Communications, Inc. v. Bond*, 413 F. Supp.2d 1150, 1152 (W.D. Wash. 2006) (noting that counsel acknowledged at oral argument that "escort service" is a euphemism for prostitution).

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

26

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

steps, for example extensive age verification across an entire website that could contain hidden advertisements for commercial sex acts.  This assertion would be incorrect, however, as broad age verification would not be reasonable given the limited application of SB 6251 to persons who have the required scienter.

Alternatively, even if commercial sex act advertisements involving adults were protected speech, any collateral burdens on such speech survive scrutiny under the test for restrictions on commercial speech.  An advertisement for a commercial sex act is an advertisement that does no more than propose a commercial transaction, which makes it commercial speech.  *See Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council*, 425 U.S. 748, 762 (1976).  *Cf. S.O.C., Inc*., 152 F.3d at 1143 (ordinance reached commercial and noncommercial speech because it did not limit the scope of the regulated activity to purely commercial expression).  Plaintiffs' allegation that SB 6251 burdens vast amounts of non-commercial speech reflects their misapprehension that the statute does not require scienter.  Instead, SB 6251 targets only advertisements for commercial sex acts, and any collateral burdens caused by reasonable actions that websites take due to SB 6251 would be limited to the same subject.

If collateral burdens on advertisements for commercial sex acts occur, they are justified under the *Central Hudson* test as a valid restriction on commercial speech because SB 6251 serves a substantial governmental interest, directly and materially advances that interest, and reaches no further than necessary to accomplish the objective.  *Central Hudson Gas & Elec.*

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

27

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

*Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980).[15]  The state's interest in reducing the sexual exploitation of children is substantial, including reducing the sex trafficking of minors.  "The legislature finds it unacceptable that Washington's children are being sold for sex in advertisements."  SB 6251, section 1.

SB 6251 directly and appropriately advances this significant interest by attaching criminal liability to commercial sex advertisements depicting minors.  Criminal liability will likely limit the number of these advertisements and correspondingly reduce the number of minors trafficked for commercial sex acts.  *See Coyote Publishing. Inc. v. Miller*, 598 F.3d 592, 608 (9th Cir. 2010).  ("Common sense counsels that . . . prohibitions on advertising tend to limit demand.")  An effort to reduce the number of advertisements for commercial sex acts depicting minors is a reasonable step that the state may take in an iterative response toward addressing the problem of sex trafficking.  *See Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 910 (9th Cir. 2009).  SB 6251 reaches no further than necessary to accomplish its objective given its scienter requirement.

Backpage.com's argument targeting the age verification affirmative defense reflects its mistaken theory that SB 6251 is content-based.  It cites *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240 (3d Cir. 2003), for its argument that many web users will be unwilling to provide identification.  *Am. Civil Liberties Union* is, however, distinguishable.  It involved a statute that restricted knowingly communicating for commercial purposes material available to any

---

[15] Alternatively, if the speech is non-commercial and intermediate scrutiny under *Central Hudson* does not apply, any burdens on adult advertisements would be evaluated under the test set forth in *United States v. O'Brien*, 391 U.S. 367, 377 (1968).  It requires that a valid regulation (1) furthers an important or substantial governmental interest, (2) the governmental interest is unrelated to the suppression of free expression, and (3) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.  *O'Brien* intermediate scrutiny would be the appropriate alternative to *Central Hudson* because SB 6251 is directed at unprotected speech.  Both analyses produce the same result.

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

28

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

minor and that included material that was harmful to minors – a content-based restriction. *Id.*
at 245, 251.  The statute also included an affirmative defense related to age-verification by a
credit card, debit account, adult access code, or adult personal identification number. *Id.* at
257-58.  The court held that the statute failed strict scrutiny for several reasons, including that
the affirmative defense burdened otherwise protected adult speech that could be considered
harmful to minors. *Id.* at 258-59.  In contrast, SB 6251's age verification affirmative defense
affects only a narrow group of persons involved in advertisements for commercial sex acts,
meaning that the burden, if any, falls on unprotected speech, or in the alternative, commercial
speech.

Contrary to Backpage.com's assertion, the affirmative defense does not render SB 6251
unconstitutionally underinclusive.  A regulation is unconstitutionally underinclusive if it
contains exceptions that ensure that the regulation will fail to achieve its end. *Metro Lights*,
551 F.3d at 906.  Additionally, exceptions that make distinctions among different kinds of
speech must relate to the interest the government seeks to advance. *Id.*  SB 6251's affirmative
defense does not make distinctions among kinds of speech, and the possibility of some
occurrences of fraudulent presentation of age identification is not a credible argument that
SB 6251 fails to achieve its ends.  Nor is the affirmative defense impossible to implement.[16]
SB 6251's affirmative defense does not create the constitutional problem that Backpage.com
alleges.

**b.    SB 6251 is not overly broad.**

Plaintiffs' argument that SB 6251 is overbroad also fails.  Under the First Amendment

---

[16] Backpage.com also claims it is impossible to verify the age of escort advertisers.  However, at least
one of its competitors, Erosads.com, requires photo identification sent via the same online mechanism used to post
the photograph for the advertisement.  Hartsock Decl. ¶¶ 32-37.

overbreadth doctrine, a statute is facially invalid if it prohibits or chills a substantial amount of protected speech. *Williams*, 553 U.S. at 292. A statute's overbreadth must be substantial "in an absolute sense" and "relative to the statute's plainly legitimate sweep." *Id.* The first step in an overbreadth analysis is to construe the challenged statute, in order to then determine whether it reaches too far. *Id.* at 293. *See* discussion *supra* Part 3. SB 6251 will not apply to persons who innocently publish, disseminate, or display, or innocently cause directly or indirectly to be published, disseminated, or displayed, an advertisement for a commercial sex act. It applies only to those who knowingly do so. SB 6251 does not, therefore, facially reach a substantial amount of protected speech beyond its plainly legitimate sweep.

### c.    SB 6251 is not unconstitutionally vague.

A statute does not comport with due process if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304. The Supreme Court has invalidated statutes that "tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent' – wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Id.* at 306 (citations omitted). Additionally, a plaintiff must demonstrate that the law is "impermissibly vague in all of its applications." *Flipside*, 455 U.S. at 497.

Plaintiffs assert the need for rigorous adherence to these requirements when First Amendment freedoms are at stake. Yet, as discussed above, SB 6251 does not implicate First Amendment scrutiny because it criminalizes only offers to engage in illegal transactions. But even under a more stringent analysis where First Amendment rights are implicated, "perfect

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

30

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-6430

clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id.* at 305.

In this case, plaintiffs' vagueness claim fails under either analysis. They assert that SB 6251 is vague because it defines an advertisement for a commercial sex act as including any "implicit" "offer" of sex in exchange for "something of value," and because it applies to "directly or indirectly" causing an advertisement to be published, disseminated or displayed. These complaints mirror those rejected in *Williams*. Properly construed in their context and applying their well-settled legal meanings, these words provide fair notice of SB 6251's prohibitions.

"Implicit" is used to bring offers of sex within the statute's purview in cases where the advertisement does not explicitly indicate that a sex act will be provided in exchange for something of value. The Legislature used "implicit" because these advertisements contain a common code to thinly veil the offer of the sex act. "Implicit" is widely used in American jurisprudence and has a settled legal meaning, particularly in the context of express and implied threats.[17] In spite of this, Backpage.com cites *Vermont Right to Life Comm., Inc. v. Sorrell,* 221 F.3d 376, 387 (2d Cir. 2000), claiming that "implicit" is unacceptably vague. However, *Williams,* which was decided after *Vermont Right to Life,* controls. In *Williams*, the Supreme Court rejected the reasoning applied in *Vermont Right to Life* and made clear that "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating act it establishes has been proved; but rather the

---

[17] *See, e.g,.* 18 U.S.C. § 891(7). ("An extortionate means is any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person.") *See also* RCW 9A.44.010(6) (defining "forcible compulsion" for sexual offenses as including coercion through express or implied threats).

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

indeterminacy of precisely what that fact is." *Williams*, 553 U.S. at 306.  SB 6251 is consistent with *Williams* because it tells plaintiffs what facts must be determined for liability to accrue.

"Offer" is used to make clear that a transaction does not have to be consummated for SB 6251 to apply.  The term is so well settled in the law that it is difficult to understand why Internet Archive expects it to be specially defined in the statute.  In fact, Congress used this word in the statute approved by the Supreme Court in *Williams*.  *Id*. at 297.

"Something of value" is used in the statute to indicate that it regulates not just offers of sex for money, but also those offers to exchange sex for other valuable things, such as drugs.  This language tracks the federal sex trafficking statute, 18 U.S.C. § 1591(e)(3), which has been upheld twice.  *See United States v. Wilson,* No. 10-60102, 2010 WL 2991561, at *8 and *9 (S.D. Fla. July 27, 2010); *and see United States v. Paris*, No. 03:06-CR-64, 2007 WL 3124724, at *13 (D. Conn. Oct. 24, 2007).

"Directly or indirectly" is used in the statute to reach pimps.  For example, a pimp who places an advertisement depicting a child victim "directly" causes that advertisement while a pimp who enlists someone else, likely the child victim, to place the advertisement does so "indirectly."  The purpose of "indirectly" is to prevent a pimp from escaping liability when others place the advertisements at his direction or on his behalf.  There is no difficulty in understanding this distinction or the reason for it, and this language has been approved by the Ninth Circuit in the more stringent context of political advertising.  *See Alaska Right to Life Committee v. Miles*, 441 F.3d 773, 782-83 (9th Cir. 2006).  ("'Indirectly' is an easily understood word in common English usage."  Omitting it "would have left open the possibility that a communication identifying a candidate would have escaped regulation.")  *See also State*

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

*v. Hansen*, 122 Wn.2d 712, 718 (1993) (reasoning that the crime of intimidating a judge, because it included "direct" and "indirect" threats, reflected legislative intent to include threats communicated in an indirect fashion).

Backpage.com imagines various innocent advertisers who might be included in SB 6251's sweep because of its definitions.  These include an innocent masseuse who advertises "complete satisfaction," an escort who promises "a night you'll never forget," and anyone seeking consensual sex.  See Docket Entry No. 2 at 18.  These are precisely analogous to the hypothetical examples rejected by the Supreme Court in *Williams*.  *Id.* at 305.  None of these hypotheticals would allow a reasonable juror to find, beyond a reasonable doubt, that the advertisement was for a commercial sex act.

SB 6251 sets forth the facts to be determined – whether there is an "implicit" "offer" of sex in exchange for "something of value."  Prosecutors, judges and juries can distinguish between "implicit" "offers" of sex for "something of value" and advertisements for legitimate escort services (if such services exist), massages, and consensual sex.  They can also determine when a pimp is "indirectly" causing the placement of advertisements.  SB 6251 may present a challenge of proof for a prosecutor with the burden of demonstrating that a website like Backpage.com <u>knows</u> this is what is being posted on its website.[18]  But it does not leave unclear to plaintiffs what "implicit" "offers" of sex for "something of value" are.

### 5.   SB 6521 does not violate the Commerce Clause.

Finally, plaintiffs claim that SB 6251 violates the Commerce Clause.  The Commerce Clause grants Congress the "power . . . [t]o regulate commerce with foreign nations, and among the several states."  U.S. CONST. art. I, § 8, cl. 3.  Implicit in this affirmative grant is the

---

[18]  Requiring such knowledge mitigates a law's alleged vagueness.  *See Flipside*, 455 U.S. at 499.

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO.  C12-954-RSM

33

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

"dormant" Commerce Clause – the principle that the states impermissibly intrude on this federal power when they enact laws that unduly burden interstate commerce. *National Ass'n of Optometrists & Opticians v. Harris*, ___ F.3d ___, 2012 WL 2126043 *3 (9th Cir. 2012).

Plaintiffs believe that because SB 6521 can be applied to advertising on the internet, it necessarily violates the Commerce Clause. However, a state regulation is not invalid merely because it affects interstate commerce. *Id.* Instead, Supreme Court jurisprudence also respects federalism by protecting local autonomy. *Id.* at *4, *citing Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008). The Supreme Court has recognized that "under our constitutional scheme the States retain broad power to legislate protection of their citizens in matters of local concern such as public health" and "not every exercise of local power is invalid merely because it affects in some way the flow of commerce between the States." *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976) (citations omitted).

Where the regulatory measure does not discriminate against interstate commerce[19] but regulates even-handedly to effectuate a legitimate local public interest, the regulation is valid unless it imposes a clearly excessive burden on interstate commerce. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); *Optometrists and Opticians*, 2012 WL 2126043 *4. "And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Pike,* 397 U.S. at 142.

There is no question that SB 6251 effectuates a legitimate local public interest. It was passed in furtherance of the goal of eliminating sex trafficking of Washington minors.

---

[19] Plaintiffs do not allege discrimination against out of state actors.

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

34

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

SB 6251, section 1.  Protecting children from sexual exploitation is not only a "legitimate public interest," but a substantial one.  *New York v. Ferber*, 458 U.S. 747, 757 (1982).  ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.")

SB 6251 does not impose a clearly excessive burden on interstate commerce.  Plaintiffs claim that SB 6251 requires <u>all</u> internet actors, including ISPs, websites, and web hosts to modify their practices.  However, the statute is narrowly aimed at a small group of actors who target Washington and knowingly participate in the advertisement of commercial sex acts where the advertisement contains a depiction of a minor.  The vast universe of internet advertisers, websites, server operators and others remain unaffected by the statute because, under its terms, they do not knowingly participate in this advertising.

Backpage.com first cites *Healy v. Beer Inst. Inc*., 491 U.S. 324 (1989), in support of its claim.  In *Healy*, a Connecticut statute required out-of-state shippers to take account of their Connecticut prices in setting their border-state prices and restricted their ability to offer discounts in the border states.  The statute violated the Commerce Clause because it controlled commercial activity occurring wholly outside the state.  *Id.* at 337.  SB 6251 does not control any activity wholly outside of Washington.

SB 6251 only applies to advertisements for a commercial sex act "which is to take place in the state of Washington."  SB 6251, section 2, subsection (1).  Moreover, Backpage.com advertisements are posted by city.  While some of the advertisements may be posted from computers outside of Washington, the audience to which the advertisements are directed is located in Washington, and the acts they advertise must occur in Washington for

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

35

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

SB 6251 to apply.  Backpage.com speculates that an advertisement can be read in a border state by a person with the intention of traveling to Washington to engage the services of the advertiser.  Even if such a situation exists, the services would be rendered in Washington.  Because SB 6251 affects commerce that is directed at Washington residents and must always occur in Washington, there is no regulation of commerce occurring wholly outside of Washington and *Healy* cannot apply.

Plaintiffs next cite cases finding unconstitutional the states' efforts to regulate transmission of harmful material to minors via the internet, for example, *Pappert*, 337 F.Supp.2d at 662.   It is true that inconsistent regulation of activities that are inherently national or require a uniform system of regulation may result in excessive burdens on interstate commerce.  *See Optometrists and Opticians*, 2012 WL 2126043 at *3.  However, all of the statutes plaintiffs cite are readily distinguishable because each of them created inconsistent regulation of child pornography.  *See State v. Heckel*, 143 Wn.2d 824, 838 (2001) (distinguishing Commerce Clause problems with regulations on internet pornography from statute that prohibited sending internet spam to a Washington resident).

Child pornography regulations have violated the dormant Commerce Clause because posting of such material may occur in any state and be seen in any other state.  Thus persons posting materials in a state where the material is legal would unknowingly violate the law in the state where it is illegal because someone could view it in the regulating state.  SB 6251 does not have this effect because it applies only to ads that specifically target Washington.

Because SB 6251 furthers a substantial state interest without imposing an excessive burden on interstate commerce, it does not violate the dormant Commerce Clause.

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

36

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

**C.      Plaintiffs are not entitled to injunctive relief.**

Plaintiffs' federal rights have not been violated by the adoption of SB 6251.  Even if the application of SB 6251 could violate plaintiffs' federal rights, the denial of injunctive relief in this facial challenge would not result in irreparable harm because plaintiffs could assert those rights in an as-applied challenge to the statute.  Plaintiffs attempt to elude this problem by alleging that a vast range of speech will be chilled if the statute is not enjoined.  However, SB 6251 does not burden any protected speech nor will any collateral burdens reach protected speech.  They cannot show irreparable harm if injunctive relief is denied.

The balance of equities favors denial of injunctive relief.  SB 6251 is narrowly targeted at people and entities that advertise sex for money.  Properly construed, the statute applies when a person knowingly engages in advertising for commercial sex acts and when the advertisement depicts a minor.  The balance of equities does not favor the protection of persons engaged in advertising such abhorrent illegal conduct.  Because of the surpassing importance of the public interest in the protection of children from these activities, it is in the public interest to deny plaintiffs' request for injunctive relief.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION  --  NO.  C12-954-RSM

37

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

## IV.    CONCLUSION

Based on the foregoing, the Attorney General and Prosecuting Attorneys of this state

respectfully request that this Court deny plaintiffs' motions.

DATED this 10th day of July, 2012.

ROBERT M. MCKENNA
Attorney General

By: /s/ Lana S. Weinmann
LANA S. WEINMANN, WSBA #21393
Senior Assistant Attorney General
Attorney General's Office

DANIEL T. SATTERBERG
King County Prosecuting Attorney

By: /s/ David J. Eldred
DAVID J. ELDRED, WSBA No. 26125
Senior Deputy Prosecuting Attorney
Attorneys for County Defendants

By: /s/ Amy K. Eiden
AMY K. EIDEN, WSBA No. 35105
Senior Deputy Prosecuting Attorney
Attorneys for County Defendants

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFF'S
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

38

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430

1

**CERTIFICATE OF SERVICE**

2

  I, Victoria Robben, declare that on this 10th day of July, 2012, I caused to be

3

electronically filed the foregoing document with the Clerk of the Court using CM/ECF system,

4

which will send notification of such filing to all counsel of record.

5

  I certify under penalty of perjury under the laws of the state of Washington that the

6

foregoing is true and correct.

7

8

  DATED this 10th day of July, 2012, at Seattle, Washington.

9

10

        By:  /s/ Victoria Robben   

11

           VICTORIA ROBBEN

           Legal Assistant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ATTORNEY GENERAL AND
PROSECUTING ATTORNEYS'
OPPOSITION TO PLAINTIFFS'
MOTIONS FOR PRELIMINARY
INJUNCTION -- NO. C12-954-RSM

ATTORNEY GENERAL'S OFFICE
Criminal Justice Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-6430