1
2
3
4
5
6

The Honorable Ricardo S. Martinez

7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| BACKPAGE.COM, LLC, | ) | No. 2:12-cv-000954-RSM |
| Plaintiff, | ) | |
| | ) | **REPLY IN SUPPORT OF** |
| and | ) | **BACKPAGE.COM'S MOTION** |
| | ) | **FOR PRELIMINARY** |
| THE INTERNET ARCHIVE, | ) | **INJUNCTION** |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROB MCKENNA, Attorney General of the | ) | |
| State of Washington, *et al.* | ) | |
| | ) | |
| Defendants, in their | ) | |
| official capacities. | ) | |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

BACKPAGE.COM'S REPLY ON MOTION FOR PRELIMINARY
INJUNCTION (2:12-CV-00954-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT ........................................................................................................2

      A.    Backpage.com Has Standing to Challenge SB 6251.................................2

      B.    Legal Errors Permeate Defendants' Opposition........................................3

            1.    Neither Defendants Nor The Court May Rewrite SB 6251. ............3

            2.    Backpage.com Need Not Show that SB 6251 is Unconstitutional in
                  Every Application...............................................................................5

      C.    Section 230 Preempts and Bars SB 6251. .................................................6

      D.    SB 6251 Violates the First and Fourteenth Amendments. ........................9

            1.    *SB 6251 Lacks Sufficient Scienter.* ..................................................9

            2.    *SB 6251 Is a Content-Based Law that Cannot Survive Strict Scrutiny.* ..........13

            3.    *SB 6251 Is Overbroad.* ....................................................................16

            4.    *SB 6251 Is Void for Vagueness.* .....................................................17

      A.    SB 6251 Violates the Commerce Clause.................................................18

III.  CONCLUSION ...................................................................................................19

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1

# TABLE OF AUTHORITIES

2
**Page(s)**

3

**FEDERAL CASES**

4
*44 Liquormart, Inc. v. Rhode Island*,
  517 U.S. 484 (1996) ......................................................................................... 14

5
*Ada v. Guam Society of Obstetricians & Gynecologists*,
6  506 U.S. 1011 (1992) .....................................................................................5, 6

7
*Almeida v. Amazon.com, Inc.*,
  456 F.3d 1316 (11th Cir. 2006) ......................................................................... 7
8

9
*Ashcroft v Free Speech Coalition*,
  535 U.S. 234 (2002) .................................................................................. 13, 15

10

11
*Azure v. Morton*,
  514 F.2d 897 (9th Cir. 1975) ........................................................................... 10

12
*Babbitt v. United Farm Workers Nat'l Union*,
13  442 U.S. 289 (1979) .......................................................................................2, 6

14
*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003) .........................................................................5, 9

15

16
*Bordell v. General Electric Co.*,
  922 F.2d 1057 (2d Cir. 1991) ............................................................................ 3

17
*Brown-Forman Distillers Corp. v. New York State Liquor Auth.*,
18  476 U.S. 573 (1986) .................................................................................. 10, 18

19
*Central Hudson Gas & Elec. Corp. v Pub. Serv. Comm'n*,
  447 U.S. 557 (1980) ........................................................................................ 16

20

21
*City of Chicago v. Morales*,
  527 U.S. 41 (1999) .........................................................................................4, 5

22
*City of Lakewood v. Plain Dealer Publ'g Co.*,
23  486 U.S. 750 (1988) .......................................................................................4, 14

24
*Compassion in Dying v. State of Wash.*,
  79 F.3d 790 (9th Cir. 1996) ............................................................................... 6

25

26
*Dart v. Craigslist, Inc.*,
  665 F. Supp. 2d 961 (N.D. Ill. 2009) ............................................................... 15
27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Doe v. GTE Corp.*,
  347 F.3d 655 (7th Cir. 2003) ........................................................................... 7

*Johnson v. Arden*,
  614 F.3d 785(8th Cir. 2010) ............................................................................ 7

*Laird v. Tatum*,
  408 U.S. 1 (1972) ............................................................................................ 3

*Mothershed v. Justices of Supreme Court*,
  410 F.3d 602 (9th Cir. 2005) ........................................................................... 2

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
  --- F.3d ----, 2012 WL 2126043 (9th Cir. 2012) ........................................... 19

*Nat'l Collegiate Athletic Ass'n v. Miller*,
  10 F.3d 633 (9th Cir. 1993) ........................................................................... 18

*Nat'l Endowment for the Arts v. Finley*,
  524 U.S. 569 (1998) ......................................................................................... 5

*New Hampshire Right to Life Political Action Comm. v. Gardner*,
  99 F.3d 8 (1st Cir. 1996) .................................................................................. 2

*New York v. Ferber*,
  458 U.S. 747 (1982) ....................................................................................... 10

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) ......................................................................... 7

*Pike v. Bruce Church, Inc.*,
  397 U.S. 366 (1976) ....................................................................................... 19

*Planned Parenthood of Idaho, Inc. v. Wasden*,
  376 F.3d 908 (9th Cir. 2004) ........................................................................... 4

*Reno v. Am. Civil Liberties Union*,
  521 U.S. 844 (1997) ....................................................................................... 17

*Santa Fe Ind. School Dist. v. Doe*,
  530 U.S. 290 (2000) ......................................................................................... 5

*Smith v. California*,
  361 U.S. 147 (1960) .................................................................................. 12, 13

*Se. Booksellers Ass'n v. McMaster*,
  282 F. Supp. 2d 389 (D.S.C. 2003) ............................................................ 2, 12

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Sprint Telephony PCS v. County of San Diego*,
    543 F.3d 571 (9th Cir. 2008) .................................................................................. 6

*Stenberg v. Carhart*,
    530 U.S. 914 (2000) ............................................................................................... 4

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) .............................................................................. 3

*United States v. Alvarez*,
    132 S. Ct. 2537 (2012) .................................................................................... 14, 15

*United States v. Bynum*,
    327 F.3d 986 (9th Cir. 2003) ................................................................................ 6

*United States v. Fletcher*,
    634 F.3d 395 (7th Cir. 2011) .............................................................................. 12

*United States v. Paris*,
    2007 WL 3124724 (D. Conn. Oct. 24, 2007) .................................................... 18

*United States v. Playboy Entm't Group, Inc.*,
    529 U.S. 803 (2000) ......................................................................................... 3, 15

*United States v. Salerno*,
    481 U.S. 739 (1987) ......................................................................................... 5, 6

*United States v. Stevens*,
    130 S. Ct. 1577 (2010) .................................................................................... 4, 14

*United States v. U.S. Dist. Court*,
    858 F.2d 534 (9th Cir. 1988) .............................................................................. 12

*United States v. Williams*,
    533 U.S. 285 (2008) ................................................................................. 13, 14, 18

*United States v. Wilson*,
    2010 WL 2991561 (S.D. Fla. July 27, 2010) .................................................... 18

*United States v. X-Citement Video, Inc.*,
    513 U.S. 64 (1994) ................................................................................. 11, 12, 13

*Village of Schaumburg v. Citizens for a Better Environment*,
    444 U.S. 620 (1980) ............................................................................................... 2

*Virginia v. Am. Booksellers Ass'n*,
    484 U.S. 383 (1988) .......................................................................................... 2, 4

BACKPAGE.COM'S REPLY ON MOTION FOR PRELIMINARY
INJUNCTION (2:12-CV-00954-RSM) — iv

*Voicenet Commun'cns, Inc. v. Corbett*,
    2006 WL. 2506318 (E.D. Pa. Aug. 30, 2006) .................................................7

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) .................................................6

**OTHER CASES**

*People v. Gourlay,*
    2009 WL 529216 (Mich. App. Mar. 3, 2009) .................................................7

*State v. Garbaccio*,
    151 Wn. App. 716, 214 P.3d 168 (2009) .................................................10, 11

*State v. Mauer*,
    741 N.W.2d 107 (Minn. 2007) .................................................12

*State v. Rosul*,
    95 Wn. App. 175, 974 P.2d 916 (1999) .................................................10, 11

**FEDERAL STATUTES**

18 U.S.C. § 704 .................................................14

18 U.S.C § 2251 .................................................12, 15

18 U.S.C. § 2252 .................................................12, 14, 18

47 U.S.C. § 230 .................................................passim

**OTHER STATUTES**

Ariz. Rev. Stat. § 13-422 .................................................15

Colo. Rev. Stat. Ann. §§ 12-25.5-103 to 5-115.................................................15

RCW 9.68A.070.................................................11

RCW 9.68A.110 .................................................12

RCW 9A.08.010 .................................................15

Tenn. Code Ann. §§ 7-51-1102(11) & (12).................................................15

Utah Code Ann. §§ 59-27-101 to -108 .................................................15

**CONSTITUTIONAL PROVISIONS**

U.S. Const., Amend. I .................................................passim

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

U.S. Const., Amend. XIV ........................................................................................ 1

**OTHER AUTHORITIES**

11 WASH. PRAC., PATTERN JURY INSTR. CRIM. .......................................................... 11

111th Cong. 215-16 (2010) .................................................................................. 8

H.R. Conf. Rep. No. 104-45 8 (1996) .................................................................... 9

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

Trafficking minors (or anyone) for commercial sex is abhorrent.  This social atrocity must be fought aggressively and intelligently on the streets and, in today's parallel digital world, online.  Although SB 6251 is aggressive, it is neither intelligent nor effective, and, as Defendants' Opposition makes clear, will needlessly stifle free speech.

First, SB 6251 creates a disincentive for online service providers to monitor their services to prevent and prohibit child sex trafficking and other abuses of their services by third-party users, in direct contravention of section 230 of the Communications Decency Act.  Section 230 preempts state laws that treat online service providers as publishers or speakers of third-party content, which, as Defendants admit, SB 6251 does.  The State tries to skirt this bar by asserting that section 230 applies only to civil liability, but section 230 expressly states that "any" inconsistent state law is prohibited (*i.e.*, criminal and civil).

Second, SB 6251 tramples on First and Fourteenth Amendment rights in its zeal to force online service providers to strictly censor or entirely ban third-party content—or risk felony criminal liability.  Bedrock First Amendment precedent forbids the government from imposing criminal liability on content distributors unless they know the nature of unlawful content—here, the age of the person depicted in a post.  Imposing a "knowledge" element under the State's strained reading of SB 6251 would in fact discourage online service providers from monitoring their services to prevent and report child sex trafficking because the safer course under SB 6251 would be to make every effort to remain ignorant of the posted content and therefore lack the requisite knowledge.

Defendants make additional arguments that are flat out legally wrong.  They argue, contrary to the language of the law, that SB 6251 would really only apply to a narrow band of conduct, but that interpretation could be adhered to or not at prosecutorial whim—a circumstance soundly rejected by solid precedent.  The State also argues that, if Defendants can prosecute a single defendant under SB 6251 without violating the Constitution, SB 6251 as a whole is constitutional, but the Supreme Court has squarely rejected that theory.

BACKPAGE.COM'S REPLY ON MOTION FOR PRELIMINARY INJUNCTION (2:12-CV-00954-RSM) — 1

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    This lawsuit and SB 6251 are a significant waste of time, attention and resources

2    brought on by the law's promoters, including Defendant Rob McKenna, who acknowledged

3    from the outset that SB 6251 was of questionable validity under section 230 and the U.S.

4    Constitution.  The Court should promptly declare SB 6251 invalid and unenforceable.

5    Devoting resources needed to find and pursue genuinely effective solutions to combating

6    sex trafficking can then properly become priorities.

7                        **II.     ARGUMENT**

8         **A.     Backpage.com Has Standing to Challenge SB 6251.**

9         Defendants claim that Plaintiffs lack standing because they "have made no

10   allegation that their speech has been chilled nor provided evidence of any self-censorship."

11   Opp. at 7.  This misunderstands standing requirements for pre-enforcement challenges.  SB

12   6251 has not taken effect and has been temporarily enjoined.  The chill on speech has

13   therefore not yet occurred, and there has been no need to censor third-party content.  As

14   Defendants agree, Plaintiffs need not expose themselves to arrest or prosecution before

15   challenging the law, but instead must only establish a credible threat of prosecution.

16   *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).  *See* Opp. at 6.[1]

17        The "credible threat" standard is "quite forgiving."  *New Hampshire Right to Life*

18   *Political Action Comm. v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996).  So long as a statute

19   "facially restricts expressive activity by the class to which the plaintiff belongs," standing

20   exists.  *Se. Booksellers Ass'n v. McMaster*, 282 F. Supp. 2d 389, 392 (D.S.C. 2003).  This

21   standard is met when a law targets a specific party's conduct.  *See Virginia v. Am.*

22   *Booksellers Ass'n*, 484 U.S. 383, 392 (1988) (a credible threat if the law "is aimed directly

23   at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant

24

25   _____
     [1] Because SB 6251 would burden and chill both commercial and non-commercial free speech, *see infra*
26   n. 10, Plaintiffs also have standing to show that SB 6251 abridges third parties' First Amendment rights.
     *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 630 (1980); *Mothershed v. Justices of*
27   *Supreme Court*, 410 F.3d 602, 610 (9th Cir. 2005).  Defendants' attempt to avoid this principle, *see*
     Opp. at 7, is misplaced.

BACKPAGE.COM'S REPLY ON MOTION FOR PRELIMINARY
INJUNCTION (2:12-CV-00954-RSM) — 2

1    and costly compliance measures or risk criminal prosecution"); *United States v. Playboy*

2    *Entm't Grp., Inc.*, 529 U.S. 803, 812 (2000) ("Laws designed or intended to suppress or

3    restrict the expression of specific speakers contradict basic First Amendment principles.").

4         SB 6251 expressly targets Backpage.com.  *See* Motion, at 7; Doran Decl., Ex. N at

5    4, 7-8, 12-15 (1/27/12 senate hearing); Ex. O (Dkt. No. 4-2).  Moreover, when "the State

6    has not disavowed any intention" of enforcing a challenged law against a party, that party is

7    "not without some reason in fearing prosecution."  *Babbit*, 442 U.S. at 302.  The State

8    defends SB 6251 and makes clear it believes the law applies to Backpage.com.  *See, e.g.*,

9    Opp. at 3-4, 26.  Defendants certainly give no assurances they will not prosecute

10   Backpage.com.  The company faces a credible threat of prosecution.[2]

11        **B.     Legal Errors Permeate Defendants' Opposition.**

12             **1.     Neither Defendants Nor The Court May Rewrite SB 6251.**

13        Throughout the Opposition, Defendants largely ignore the actual terms of SB 6251,

14   and instead try to recraft the law to overcome its many flaws.  To provide a few examples,

15   Defendants contend that SB 6251:  (1) only applies to "escort services advertising [that]

16   includes minors who are being sold for sex," (Dkt. 26 at 6), quoting the legislative findings

17   rather than the substantive provisions of the law; (2) only applies to ads that convey a

18   "timely offer" to engage in sex, Opp. at 6, even though the law has no such temporal

19   limitation; (3) provides an affirmative defense to a defendant that makes a "reasonable bona

20   fide attempt to ascertain the minor's true age," Opp. at 20, disregarding that the only

21   permissible "bona fide" effort under the statute is the impractical requirement to obtain in-

22   person identification; (4) confines the term "indirectly" to refer only to pimps (in the

23

24   _____

[2] The cases Defendants cite are inapposite.  In all three, the parties had either engaged in the proscribed

25   conduct without penalty or had alleged no plan to violate the laws.  *Laird v. Tatum*, 408 U.S. 1 (1972)
     (plaintiffs lacked standing to challenge an army surveillance program because they complained of no

26   specific action against them and the system did not target them); *Bordell v. Gen. Elec. Co.*, 922 F.2d
     1057 (2d Cir. 1991) (plaintiff had already engaged in the proscribed conduct and not been punished);

27   *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000) (court refused to consider a
     challenge by plaintiffs who had no concrete plan to violate the challenged law).

BACKPAGE.COM'S REPLY ON MOTION FOR PRELIMINARY
INJUNCTION (2:12-CV-00954-RSM) — 3

1   provision imposing liability on any party that "causes directly or indirectly" offending

2   content to be published, disseminated or displayed), Opp. at 32, even though the law is not

3   so limited; and (5) applies "knowingly" to all elements of the crime except the age of the

4   minor, while acknowledging this is "not a natural grammatical reading," Opp. at 18-21.

5          However, it is a fundamental proposition that a federal court may not rewrite a state

6   statute to save it from constitutional infirmities.  *Planned Parenthood of Idaho, Inc. v.*

7   *Wasden*, 376 F.3d 908, 925 (9th Cir. 2004).  Courts should construe ambiguous language

8   "to avoid serious constitutional doubts," but they may impose a limiting construction only

9   "if [the law] is readily susceptible to such a construction."  *United States v. Stevens*, 130

10  S. Ct. 1577, 1591 (2010); *see also Virginia v. Am. Bookseller, Ass'n,* 484 U.S. at 397;

11  *Stenberg v. Carhart*, 530 U.S. 914, 944-45 (2000) (any narrowing construction must be a

12  "reasonable and readily apparent" gloss on the language).

13         Here, Defendants' arguments about the meaning and scope of SB 6251 are just

14  that—arguments .  They are not authoritative nor binding interpretations of the law.

15  Indeed, one prosecutor (Stevens County) has already refused to defend SB 6251 (Dkt. 48,

16  49), and two others (Kitsap and Asotin Counties) have not joined Defendants' Opposition

17  (Dkt. 12, 31, 58).  Moreover, current prosecutors may develop different views of SB 6251

18  over time or later be replaced by other prosecutors with different views.  Courts do "not

19  uphold an unconstitutional statute merely because the Government promise[s] to use it

20  responsibly."  *Stevens*, 130 S. Ct. at 1591 ("the First Amendment … does not leave us at the

21  mercy of the *noblesse oblige*").  Instead, a government's representations that it will apply a

22  law "far more restrictively than its language provides is pertinent only as an implicit

23  acknowledgment of the potential constitutional problems with a more natural reading."  *Id.*;

24  *see also City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 (1988) (refusing

25  to consider city's *post hoc* interpretations of law); *City of Chicago v. Morales*, 527 U.S. 41,

26  63-64 (1999) (refusing to consider police rules limiting loitering ordinance).

27

BACKPAGE.COM'S REPLY ON MOTION FOR PRELIMINARY
INJUNCTION (2:12-CV-00954-RSM) — 4

### 2. Backpage.com Need Not Show that SB 6251 is Unconstitutional in Every Application.

Defendants also repeatedly claim that SB 6251 must survive constitutional scrutiny if it could be validly applied in even one conceivable instance. *See, e.g.*, Opp. at 11, 17. Defendants misconstrue the law and misunderstand the claims in this case.

Defendants base their argument on *United States v. Salerno*, 481 U.S. 739 (1987). However, the Supreme Court has repeatedly recognized that, whatever application *Salerno* might have, it does not apply to First Amendment free speech challenges, such as this one. *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 618 (1998); *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 318 (2000) (*Salerno* inapplicable to First Amendment overbreadth claims); *Morales*, 527 U.S. at 55 (same as to vagueness).[3] There is good reason for this rule. If the State could identify just one defendant who could be subject to an unconstitutional law, a court could never invalidate it no matter how broad or vague it is on its face or how much speech it would chill. Indeed, in the context of First Amendment challenges to content-based regulations (like SB 6251), because of the potential chilling effects, the law is exactly the opposite of what Defendants contend—it is the State's burden to prove the law is valid and that there is no less restrictive alternative. *See* Section II.D.2.[4]

Moreover, in their attempt to invoke *Salerno*, Defendants mischaracterize the claims in this action. Backpage.com asserts both a facial challenge to SB 6251 and a pre-enforcement "as-applied" challenge. In this context, an "as-applied" challenge is one in which "the plaintiff contends that the application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional." *Ada v.*

---

[3] Whether *Salerno* is the proper standard even for facial challenges outside the free speech context is doubtful. *See, e.g., Morales*, 527 U.S. at 55 n.22 ("[T]he *Salerno* formulation . . . has never been the decisive factor in any decision of this Court, including *Salerno* itself."). In *United States v. Arizona*, the Ninth Circuit found it was "not entirely clear from relevant Supreme Court cases the extent to which the *Salerno* doctrine applies to a facial preemption challenge," citing two cases decided after *Salerno* that do not reference the standard. 641 F.3d 339, 345 (9th Cir. 2011). The Supreme Court ratified this finding by affirming *U.S. v. Arizona* without applying *Salerno*. 2012 WL 2368661 (June 25, 2012).

[4] This rationale applies equally to challenges under section 230, which is Congress's embodiment of the First Amendment on the Internet. *Batzel*, 333 F.3d at 1028.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1  *Guam Soc'y of Obstetricians & Gynecologists*, 506 U.S. 1011, 1012 (1992) (Scalia, J.,

2  dissenting from denial of certiorari); *see also Compassion in Dying v. State of Wash.*, 79

3  F.3d 790 (9th Cir. 1996) (rejecting categorization of challenge as "facial" because law had

4  not yet been applied, noting "this is an incorrect usage of the 'facial' and 'as applied'

5  distinction."), *rev'd on other grounds*, *Washington v. Glucksberg*, 521 U.S. 702 (1997).[5]

6  **C.   Section 230 Preempts and Bars SB 6251.**

7  Although SB 6251 suffers numerous flaws under the First and Fourteenth

8  Amendments, the Court need not reach those issues because the law directly violates CDA

9  section 230 and cannot stand for this reason alone.  Contrary to section 230, SB 6251 seeks

10 to hold online service providers liable for content provided entirely by third parties and

11 would punish providers for making efforts to monitor their sites to prevent and preclude

12 illegal content (and, in fact, may cause most providers to abandon any such efforts).

13 First, without citing a single case, Defendants claim that because section 230 creates

14 immunity, it cannot be the basis for a preemption challenge.  Opp. at 8-10.  Defendants'

15 argument is unintelligible.  Section 230 states: "No liability may be imposed under any

16 *State or local law* inconsistent with this section."  47 U.S.C. § 230(e)(3).

17  > With respect to federal-state preemption . . . . "[W]hen Congress has
18  > 'unmistakably . . . ordained,' that its enactments alone are to regulate a
   > part of commerce, state laws regulating that aspect of commerce must
19  > fall. The result is compelled whether Congress'' command is explicitly
   > stated in the statute's language or implicitly contained in its structure and
20  > purpose." [Here], Congress' command is explicitly stated.

21 *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 334 (4th Cir. 1997) (citations omitted).[6]  The

22 Ninth Circuit and other courts agree that section 230 expressly preempts inconsistent state

23 ───────────────

24 [5] The cases Defendants cite, Opp. at 11, pre-date these latest pronouncements and do not decide free
   speech challenges.  *Sprint Telephony PCS v. Cnty. of San Diego*, 543 F.3d 571 (9th Cir. 2008) (applying

25 *Salerno* to wireless carrier's preemption challenge); *United States v. Bynum*, 327 F.3d 986 (9th Cir.
   2003) (rejecting challenge to statute already found constitutional by other courts).

26 [6] On the other hand, if Defendants' argument is that Backpage.com cannot challenge SB 6251 on
   section 230 grounds before enforcement, this contradicts well-established law permitting pre-

27 enforcement challenges.  *See* Section II.A; *Babbitt*, 442 U.S. at 298 (1979).

BACKPAGE.COM'S REPLY ON MOTION FOR PRELIMINARY
INJUNCTION (2:12-CV-00954-RSM) — 6

laws, *i.e.,* laws that treat online service providers as publishers or speakers of third-party content. *See, e.g., Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007); *Johnson v. Arden*, 614 F.3d 785, 790-91(8th Cir. 2010); *Almeida v. Amazon.com, Inc*., 456 F.3d 1316, 1321 (11th Cir. 2006); *Doe v. GTE Corp*., 347 F.3d 655, 658 (7th Cir. 2003).

Second, Defendants offer a selective, bastardized reading of section 230. Disregarding the prohibition that "no liability may be imposed under any State or local law that is inconsistent with this section," Defendants focus only on the preceding sentence, which states the corollary: "Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section." 47 U.S.C. § 230(e)(3). Opp. at 12-15. Defendants argue that Congress's purpose was to "ensur[e] the vigorous enforcement of criminal laws," and because SB 6251 is a criminal law that purports to address child sex trafficking, it is consistent. *Id.* This spin on the statute is simply wrong.

Section 230's text is unambiguous. The law preempts *all* inconsistent state laws. First, it broadly prohibits treating an online service provider as the "publisher or speaker of any information" provided by third parties. 47 U.S.C. § 230(c)(1). Second, it creates an exception for any "*Federal* criminal statute." *Id.* § 230(e)(1) (emphasis added). Third, without qualification, it states that "[n]o cause of action and no liability may be imposed under *any* State or local law that is inconsistent with this section." *Id.* § 230(e)(3) (emphasis added). The courts that have considered the issue have held that the reference to "any" inconsistent state or local law means what it says, and encompasses criminal as well as civil laws: "[T]he plain language of the CDA provides internet service providers immunity from inconsistent state criminal laws." *Voicenet Commun'cns, Inc. v. Corbett*, 2006 WL 2506318, at *3 (E.D. Pa. Aug. 30, 2006) (allowing state criminal liability would render "federal" in subsection (e)(3) meaningless); *see also People v. Gourlay,* 2009 WL 529216, at *3 (Mich. Ct. App. Mar. 3, 2009) ("the phrase 'any State or local law' includes civil and criminal laws").

BACKPAGE.COM'S REPLY ON MOTION FOR PRELIMINARY
INJUNCTION (2:12-CV-00954-RSM) — 7

Defendants' contention that Congress's purpose was to ensure "vigorous enforcement of criminal laws," Opp. at 13, is misleading at best.  In fact, section 230(b)(5) states that Congress wanted to ensure "vigorous enforcement of **Federal** criminal laws."  47 U.S.C. § 230(b)(5) (emphasis added).  If Congress had meant to exempt **all** criminal laws— state and federal—from the protections of section 230, it could and would have said so.

Nor can SB 6251 survive section 230 based on Defendants' contention that it is "substantially similar to federal criminal laws regarding sexual exploitation of children." Opp. at 12.  Section 230 preempts all state laws "inconsistent" with "this section," *i.e.,* laws inconsistent with section 230.  It has no exemption for state laws that are similar— substantially or marginally—to any federal criminal law.  "[T]his section" includes the express prohibition that online service providers may not be treated as the "publisher or speaker of any information" provided by third parties.  Under Defendants' interpretation, any state could pass criminal laws directly contrary to section 230, and could impose criminal liability on online service providers for third-party content, so long as the state law is not in conflict with some subject addressed in federal criminal law.  This would gut section 230's protections.[7]

Defendants likewise misconstrue and largely ignore the purposes of section 230. First, they suggest Congress intended in the CDA to protect only certain speech on the Internet, and SB 6251 "has no impact on the speech that Congress intended to protect …." Congress's statements of its findings and policy say no such thing, but rather indicate that "Congress wanted to encourage the unfettered and unregulated development of free speech

---

[7] In any event, SB 6251 is **not** consistent with federal criminal law.  The only statute Defendants cite prohibits knowingly or with reckless disregard causing a minor to engage in a commercial sex act.  *See* Opp. at 14 (citing 18 U.S.C. § 1591(a)(2)). The scienter requirement in this law extends to the victim's age, meaning that sites like Backpage.com and craigslist cannot be liable.  *See Domestic Minor Sex Trafficking:  Hearing Before Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 111th Cong. 215-16 (2010) (DOJ testimony that federal criminal law does not impose liability on sites such as craigslist for third-party content).  In contrast, as discussed below, even under Defendants' interpretation, SB 6251 contains no scienter requirement as to the age of persons depicted in offending ads.  *See* Section II.D.1.  In this respect, SB 6251 is inconsistent with federal criminal law (not to mention inconsistent with section 230 itself) and unconstitutional.

BACKPAGE.COM'S REPLY ON MOTION FOR PRELIMINARY INJUNCTION (2:12-CV-00954-RSM) — 8

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    on the Internet . . . ." *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003); *see* 47 U.S.C.

2    § 230(b)(2).  Congress did not say that it intended to allow states to regulate any Internet

3    communications they might believe to be unprotected.

4          Moreover, Congress also expressly intended to "remove disincentives for the

5    development and utilization of blocking and filtering technologies … to restrict … access to

6    objectionable or inappropriate online material."  *Id.* § 230(b)(4).  This goal, far from "not

7    [being] implicated by SB 6251," Opp. at 13 n.5, is critical.  Congress designed section 230

8    to "overrule … decisions which have treated … providers and users as publishers or

9    speakers of content that is not their own because they have restricted access to

10   objectionable material."  H.R. Rep. No. 104-45 8, at 194 (1996).  Congress sought to

11   "encourage interactive computer services … to self-police the Internet for obscenity and

12   other offensive material," *Batzel,* 333 F.3d at 1028, and section 230 did this by providing

13   immunity for efforts to block and screen online content.  SB 6251 directly contravenes this

14   purpose, too.  Rather than allowing review and monitoring to be voluntary, and protected

15   by immunity, SB 6251 in one sense makes review and monitoring mandatory, given the

16   risk of state criminal liability.  Alternatively, given Defendants' interpretation of SB 6251

17   now—that it criminalizes only "knowing" publication of advertisements for commercial

18   sex acts, Opp. at 13—the law creates a strong incentive for online service providers ***not*** to

19   review and monitor third-party content to avoid creating scienter for criminal liability.  This

20   not only contradicts section 230, it means that SB 6251 could accomplish exactly the

21   opposite of the State's ostensible goal, *i.e.*, causing more child sex trafficking, not less.

22        **D.    SB 6251 Violates the First and Fourteenth Amendments.**

23             **1.    *SB 6251 Lacks Sufficient Scienter.***

24        Backpage.com's Motion explained that SB 6251 on its face imposes a scienter

25   requirement only if a prosecutor attempts to establish that a person "knowingly publishe[d],

26   disseminate[d] or display[ed]" an offending ad.  *Id.* at 6.  A prosecutor need not show

27   scienter to convict a defendant of "caus[ing] directly or indirectly" the dissemination or

BACKPAGE.COM'S REPLY ON MOTION FOR PRELIMINARY
INJUNCTION (2:12-CV-00954-RSM) — 9

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

display of an offending ad.  *Id.* at 6.  However, Defendants claim the sole reference to "knowingly" used in the earlier phrase should "be interpreted to require scienter for all elements [of the crime] except the age of the minor depicted in the advertisement."  *Id.* at 18.  Defendants do not base their argument on the actual terms of the law nor its legislative history, instead admitting this may not be "a natural grammatical reading" of SB 6251, and asking the Court to indulge in various presumptions to achieve its goal.  *Id.* at 19, 21.

Defendants' strained interpretation would, among other things, require applying "knowingly" to all the following terms, even though they are preceded by the word "or."  Under settled law, statutes using the disjunctive "or" "indicate[] alternatives and require[] that [statutory provisions] be treated separately."  *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975).  Moreover, prior versions of SB 6251 contained much more express scienter requirements that legislators rejected. *See* Doran Decl., Ex. K, L (Dkt. 4-1).  And, in hearings on SB 6251, legislators made clear the law was aimed at Backpage.com and designed to force elimination of Backpage.com's adult category.  *See* Motion, at 7; Doran Decl., Ex. N, at 4, 7-8, 12-15 (1/27/12 Senate hearing); Ex. O (Dkt. No. 4-2).  Thus, the history of SB 6251 shows that successive versions of the law considered by the legislature expanded the scope of criminal liability and shrunk the element of scienter.

Even accepting Defendants' interpretation, SB 6251 still violates the First and Fourteenth Amendments because it imposes strict liability regarding whether or not a person depicted in an online post is a minor.  Indeed, the cases defendants cite—*State v. Rosul*, 95 Wn. App. 175, 974 P.2d 916 (1999), and *State v. Garbaccio*, 151 Wn. App. 716, 214 P.3d 168 (2009), *see* Opp. at 20-22—both support Backpage.com's position.

*Rosul* and *Garbaccio* concern RCW 9.68A.070, which criminalizes possession of child pornography.[8]  In *Rosul*, the court recognized that under *New York v. Ferber*, 458

---

[8] RCW 9.68A.070 provided at the time: "A person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a class C felony.  *See Rosul*, 95 Wn. App. at 180; *Garbaccio*, 151 Wn. App. at 720, n.1.

BACKPAGE.COM'S REPLY ON MOTION FOR PRELIMINARY INJUNCTION (2:12-CV-00954-RSM) — 10

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

U.S. 747 (1982), and *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), the statute would be overbroad and unconstitutional if it did not require proof that a defendant knew of the nature and content of the materials he possessed. *Rosul*, 95 Wn. App. at 184-85. It thus applied the term "knowingly" to both possession and the nature and content of the materials. *Garbaccio* followed *Rosul* and clarified what the "nature and content" scienter element requires. *Garbaccio* held that the prosecution must prove the defendant knew he possessed sexually explicit materials depicting minors, approving a jury instruction that required the State to show (beyond a reasonable doubt) the defendant "knowingly possessed visual or printed matter depicting a minor [in] sexually explicit conduct ***and [t]hat he ... knew the person depicted was a minor***." *Id.* (internal quotations omitted, emphasis added). The Washington pattern jury instructions now reflect this. *See* 11 WASH. PRAC., PATTERN JURY INSTR. CRIM., WPIC 49A.04 (3d ed. 2008) ("To convict the defendant of the crime of possession of depictions of a minor engaged in sexually explicit conduct, each of the following elements of the crime must be proved beyond a reasonable doubt ... (2) That the defendant knew the person depicted was a minor ....").

Of course, Washington Court of Appeals' interpretations of a different law are not binding with regard to interpreting SB 6251 or whether it satisfies the First and Fourteenth Amendments. Still, *Rosul* and *Garbaccio*, coupled with the differences between SB 6251 and the statute addressed in those cases, demonstrate that SB 6251 ***is*** unconstitutional. RCW 9.68A.070 requires proof that a defendant knows the person depicted in expressive materials is a minor. Moreover, RCW 9.68A.110(2) allows a defense that a defendant was not in possession of facts from which he reasonably should have known that the person depicted was a minor. In contrast, Defendants claim SB 6251 requires no proof of scienter as to whether a person depicted in an online post is a minor, and the law expressly precludes any defense based on lack of knowledge of age.

Fundamentally, Defendants fail to appreciate that SB 6251 seeks to criminalize speech and impose felony liability on parties that are the mere conduits of that speech. As

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

the Supreme Court's precedents make clear, a law imposing criminal liability for distributing sexually explicit materials concerning minors that is bereft of a scienter requirement as to the age of persons depicted raises "serious constitutional doubts." 513 U.S. at 78. Such a law would compel distributors to review every book, video, or online post to ensure that none runs afoul of the law. *See Smith v. California*, 361 U.S. 147, 153-54 (1960). Yet, under SB 6251, even that would be insufficient, because distributors could still be strictly liable whenever their censorship efforts failed—their lack of knowledge or good faith efforts are no defense to SB 6251's *sine qua non*, whether the person depicted is a minor. *See, e.g., Southeast Booksellers Ass'n*, 282 F. Supp. 2d at 397 (invalidating statute criminalizing "disseminating harmful material to minors" and providing that "mistake of age is not a defense," refusing to rewrite law); *State v. Mauer*, 741 N.W.2d 107, 110 (Minn. 2007) ("[T]he First Amendment … requires proof of some subjective awareness, not just proof that the possessor was objectively negligent in failing to know that a performer in the work was a minor."). The burden and chilling effect on speech from such a law is obvious.

*X-Citement Video* and later cases have drawn a clear line: Governments may criminalize exploitation or abuse of minors with a strict liability element as to a victim's age when the defendant has direct contact with the minor, as is the case with statutory rape, sexual exploitation, and production of sexually explicit materials depicting minors. But for crimes based on distribution or possession of such materials, the State may not dispense with this element. *See X-Citement Video*, 513 U.S. at 72 n.2 (distinguishing statutory rapists and producers of child pornography charged under 18 U.S.C § 2251 from distributors and recipients of child pornography charged under 18 U.S.C. § 2252); *United States v. Fletcher*, 634 F.3d 395, 401 (7th Cir. 2011) ("[S]tatutes requiring knowledge of a victim's age—receiving, distributing, or possessing child pornography—are all readily distinguishable from the production of child pornography, where 'the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age.'") (quotations omitted); *United States v. U.S. Dist. Court*, 858 F.2d 534, 544 (9th Cir.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1988) ("Those who arrange for minors to appear in sexually explicit materials are in a far

different position from those who merely handle the visual images after they are fixed on

papers, celluloid or magnetic tape.").

Finally, Defendants suggest that SB 6251 need not contain a scienter element

"because an advertisement for a commercial sex act is not protected speech, regardless of

whether [it] depicts a minor." Opp. at 22.  But a State law cannot dispense with scienter

just because it purportedly regulates a category of unprotected speech.  Quite the opposite,

the trilogy of Supreme Court cases requiring scienter *all* concerned laws targeting such

speech.  *Smith*, 361 U.S. at 153-54 (obscenity); *Ferber*, 458 U.S. at 765 (sexually explicit

depictions of minors); *X-Citement Video*, 513 U.S. at 78 (same).   *See also* Section II.D.2.

Because SB 6251 seeks to impose strict liability regarding whether persons depicted

are minors—as defendants admit—the law would severely chill speech and lead to self-

censorship, and therefore is unconstitutional.

### 2.   SB 6251 Is a Content-Based Law that Cannot Survive Strict Scrutiny.

Defendants do not dispute that a content-based law is one that requires officials to

examine the content of speech to determine whether it violates the law, *see* Opp. at 25, nor

that applying SB 6251 would require such an examination.  Instead, they rely on *United

States v. Williams*, 533 U.S. 285, 297 (2008), for the proposition that offers to engage in

illegal transactions are excluded from First Amendment protection, and because a

commercial sex act involving a minor would be illegal, "SB 6251 proscribes only

unprotected speech," and is therefore "facially valid" and "not content based."  Opp. at 24,

25.  This muddles First Amendment doctrines and ignores the actual terms of SB 6251.

Just because the government claims a law aims to regulate only unprotected speech

does not make it so.  Instead, courts carefully scrutinize such claims given the sensitivities

of First Amendment rights.  For example, in *Ashcroft v Free Speech Coal.*, 535 U.S. 234

(2002), the Supreme Court concluded that restrictions in the Child Pornography Prevention

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Act were unconstitutionally overbroad and not narrowly tailored, even though the law was aimed at child pornography, which is unprotected. *Id.* at 249, 255 ("The Government may not suppress lawful speech as the means to suppress unlawful speech.").[9]  The Supreme Court has long held that restrictions on the content of speech are permitted in only a few limited areas (*e.g.*, obscenity, defamation, incitement), and has repeatedly refused to expand this list merely on government's assertions that speech is harmful.  *See, e.g, United States v. Stevens*, 130 S. Ct. 1577, 1584-86 (2010) (invalidating ban on certain depictions of animal cruelty, and rejecting government's argument that the materials could be banned because they depicted illegal conduct); *United States v. Alvarez*, 132 S. Ct. 2537 (2012) (striking down Stolen Valor Act, 18 U.S.C. § 704, rejecting argument that false speech should be unprotected and instead applying the "most exacting scrutiny").

The State does not even begin to apply these standards to SB 6251, nor can it rest on its unsupported assertion any "collateral burdens … would fall only on advertisements for commercial sex acts involving adults, which are also illegal."  Opp. at 26.  In fact, the Supreme Court has rejected the proposition "that if a particular manner of speech may be prohibited entirely, then no activity protected by the First Amendment can be implicated by a law imposing less than a total prohibition."  *City of Lakewood*, 486 U.S. at 762.  This "'greater-includes-the-lesser' syllogism" ignores the burdens on speech and censorship that can result by an improperly crafted law restricting some but not all speech and is nothing more than a "legal sleight-of-hand."  *Id*. at 762-63; *see also 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 511 (1996) (plurality opinion) (rejecting argument that the power to ban a vice activity necessarily includes the power to ban the accompanying speech).

In any event, the burdens of SB 6251 are anything but "collateral" given Defendants' interpretation of the "knowledge" requirement they seek to add to the law.  Defendants

---

[9] In *Williams* itself, the Court concluded that 18 U.S.C. § 2252A(a)(3)(B) (prohibiting pandering or solicitation of child pornography) affected unprotected speech only after carefully analyzing the statute and determining that it contained both objective and subjective elements of scienter and encompassed only obscenity and child pornography involving actual children.  553 U.S. at 293-97.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

categorically assert that "[o]nline escort advertisements are thinly veiled offers of prostitution," and so, "if a website contains a section for postings for escort services … the operator would have the requisite knowledge for liability under SB 6251." Opp. at 3, 26. The view that all escort services are illegal would come as a surprise to the numerous states and communities that license, tax, and otherwise regulate such businesses. *See, e.g.* Tenn. Code Ann. §§ 7-51-1102(11) & (12); 7-51-1116; Utah Code Ann. §§ 59-27-101 to -108; Ariz. Rev. Stat. § 13-422; Colo. Rev. Stat. Ann. §§ 12-25.5-103 to 5-115; *see also Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 968 (N.D. Ill. 2009) ("Plaintiff is simply wrong when he insists that [the adult services category and related subcategories] are all synonyms for illegal sexual services."). Moreover, Defendants condemn Backpage.com for reporting and blocking posts it suspected might concern a minor, but then failing to catch other, later posts by not cross-referencing telephone numbers and photographs back to the prior ad. *See* Opp. at 4; Novisedlak Decl.¶¶ 5-20. This suggests the requisite knowledge for liability under SB 6251, in Defendants' view, is akin to negligence. *See* RCW 9A.08.010.

It is perhaps not surprising that Defendants seek to avoid treating SB 6251 as the content-based regulation it is. Strict scrutiny places the burden on the State—not Plaintiff—to justify content-based restrictions, and it is "an especially heavy burden." *Playboy Entm't Grp.*, 529 U.S. at 817. For example, Defendants urge that "[f]urther scrutiny" should be limited to cases in which the "only reasonable recourse available" is "to necessarily block a significant amount of protected speech." Opp. at 25. Strict scrutiny requires the opposite, *i.e.*, that the State must establish a content-based restriction is the "least restrictive means" of accomplishing its goal; the law is invalid if any other less speech-restrictive means exists. *Ashcroft*, 542 U.S. at 666; *Alvarez*, 132 S. Ct. at 2251.

Defendants do nothing to meet their "heavy burden." It is no answer to say that attaching criminal liability to advertisements will reduce demand, Opp. at 28; criminalizing all sexually related speech on the Internet might do that too, but is also not narrowly tailored. Defendants offer no response why existing laws targeting child sex trafficking are

1   not effective to achieve the State's goal, though plainly these laws are much less speech

2   restrictive than SB 6251.  Defendants say nothing about why a law targeting only the

3   individuals who post ads would not be effective, rather than seeking to impose felony

4   liability on online service providers, search engines, ISPs and every other party involved

5   "directly or indirectly" in disseminating speech on the Internet.  Defendants do not try to

6   rebut that SB 6251 is grossly under inclusive as well for several reasons, including because

7   posts containing no depictions are not prohibited (even an ad for a "15-year-old virgin").

8         Moreover, if the Court accepts Defendants' version of "knowledge" the law would

9   be even more illogical and ill-suited to the legislature's ostensible purpose than it is on its

10   face.  If an online service provider cannot be liable under SB 6251 unless it knows the

11   nature and content of third-party posts that may violate the law, the provider would be

12   better off not reviewing any such content.  As noted, this is flatly contrary to Congress's

13   intent in section 230 of the CDA, *see* Section II.C, but it also demonstrates that SB 6251 is

14   far from narrowly tailored to achieve the State's objective; the law could lead to more

15   sexual exploitation and trafficking and less prevention and prosecution. [10]

16               *3.    SB 6251 Is Overbroad.*

17         Other than referencing some general principles about the overbreadth doctrine,

18   Defendants say nothing, except that because they interpret SB 6251 to reach only parties

19   who knowingly advertise a commercial sex act, "the law does not facially reach a

20   substantial amount of protected speech beyond its plainly legitimate sweep."  Opp. at 30.

21   ---

22   [10] As Backpage.com predicted, Motion at 21, n.5, Defendants assert cursorily that the Court should
evaluate SB 6251 under the intermediate scrutiny standard for commercial speech set forth in *Cent.
Hudson Gas & Elec. Corp. v Pub. Serv. Comm'n*, 447 U.S. 557 (1980).  *See* Opp. at 27-28.  Again,

23   Defendants ask the Court to assume their conclusion—*i.e.*, given that SB 6251 purports to restrict
"advertisements" for "commercial sex acts" it affects only commercial speech.  Yet this is

24   demonstrably not so because the law would require online service providers to review or require
age verification for vast amounts of non-commercial speech as well, such as dating and personals

25   ads, or would cause providers to block adult-oriented third-party content to avoid felony liability.
Defendants do not dispute that a statute that burdens both commercial and non-commercial speech

26   is subject to heightened scrutiny.  *S.O.C., Inc.*, 152 F.3d at 1146-47.  And given that SB 6251 is not
even a rational fit for advancing the State's ostensible purpose (discussed above), much less the

27   least restrictive alternative, the law also cannot withstand intermediate scrutiny.

BACKPAGE.COM'S REPLY ON MOTION FOR PRELIMINARY
INJUNCTION (2:12-CV-00954-RSM) — 16

In fact, SB 6251 reaches, burdens and/or prohibits vast amounts of protected speech. First, the provision criminalizing "indirectly caus[ing]" offending third-party content to be disseminated or displayed, on its face, includes search engines, ISPs and all others involved in the delivery of third-party content, notwithstanding Defendants' strained interpretation that it only is meant to "reach pimps." Opp. at 32. Second, the law's terms are so broad that they encompass online pay-per-view or sex chat websites, because SB 6251 does not require that any in-person commercial sex act ever occur, only that there be a sex act for which "something of value" is received by "any person" and which includes a depiction of a minor. Finally, under Defendants' re-interpretation of the law, any website that fails to take down a post after receiving a comment or question about whether an individual depicted is a minor would be subject to felony liability. As a result, the law "would confer broad powers of censorship in the form of the 'heckler's veto'" on anyone who questions third-party content. *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 880 (1997).

### 4. *SB 6251 Is Void for Vagueness.*

The parties agree that a statute violates due process when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited." *See* Opp. at 30. However, rather than address whether SB 6251 provides fair notice given its terms in the context of the law as a whole, Defendants focus on individual words and read into the statute limits that are nowhere in it. Ultimately, the fact that the State offers such a radically different interpretation of the law only reinforces this conclusion.

Putting the terms together from the various subsections of the law demonstrates the vagueness by itself: SB 6251 imposes felony criminal liability on anyone who "causes directly or indirectly, to be published, disseminated or displayed," "any advertisement or offer … which includes either an explicit or implicit offer for" "any act of sexual contact or sexual intercourse … for which something of value is given or received by any person."

The State argues that the term "something of value," rather than describe virtually all consensual sex acts, is meant to include acts done in exchange for money and "other

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1   valuable things, such as drugs." Opp. at 32. "Other valuable things" provides no greater

2   specificity than SB 6251, but even so, if the statute were intended to encompass only

3   money, drugs, and other tangible goods, the legislature could have said so. As is,

4   "something of value" could denote anything from love to money. Similarly, the State

5   claims the term "indirect" reaches only pimps, but that limit once again is nowhere in the

6   statute. Instead, the term "indirect" could encompass anyone that makes it possible for an

7   offending ad to be published, including search engines and ISPs.

8   *Williams*, which Defendants cite repeatedly, Opp. at 30-31, is inapposite. There, the

9   Supreme Court found that the phrases "in a manner that reflects the belief" and "in a

10  manner … that is intended to cause another to believe" were not vague in the context of the

11  18 U.S.C. § 2252A(a)(3)(B), and in fact stated express elements of subjective and objective

12  scienter, in stark contrast to SB 6251. *See* 553 U.S. at 306.[11]

13      **A.    SB 6251 Violates the Commerce Clause.**

14      Backpage.com does not contend that SB 6251 is "invalid merely because it affects

15  interstate commerce." Opp. at 34. Instead, the Court should strike down SB 6251 because

16  it purports to directly regulate commerce outside Washington. In doing so, it threatens

17  nonresidents who may never even set foot in Washington with felony liability.

18      Although Defendants advocate the application of a balancing test to decide the

19  Commerce Clause challenge, that test is inapplicable. The Ninth Circuit, when confronting

20  a statute that "directly regulates . . . interstate commerce," has "generally struck down the

21  statute *without further inquiry*." *Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633,

22  638 (9th Cir. 1993) (quotation marks omitted; emphasis added); *see also Brown-Forman

23  Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573 (1986) (summarily affirming

24  invalidation of law that regulated out-of-state transactions). Courts only reach the

25

26  [11] Nor do the cases Defendants cite help. *United States v. Paris*, 2007 WL 3124724 (D. Conn. Oct. 24, 2007), addressed whether the term "sex act" was vague, not "anything of value." In *United States v. Wilson,* 2010 WL 2991561 (S.D. Fla. July 27, 2010), the defendant did not argue the term was vague or that his actions did not meet the definition.

27

BACKPAGE.COM'S REPLY ON MOTION FOR PRELIMINARY
INJUNCTION (2:12-CV-00954-RSM) — 18

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 1201 Third Avenue Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

balancing test of *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), when a statute does not have this effect.  For example, in the case Defendants cite, the Ninth Circuit applied the *Pike* test because the statute at issue did not regulate out-of-state commerce.  *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 2012 WL 2126043, at *5 (9th Cir. 2012).

SB 6251 is invalid *per se* because it regulates commerce outside Washington.  The State claims that the statute does not have this effect because any advertised services "would be rendered in Washington."  Opp. at 36.  But no services need be rendered for SB 6251 to apply—so long as someone posts a violative advertisement, he or she can be criminally liable.  Thus, if someone in Oregon posts an ad for an implicit offer of sex in Washington, he could be subject to felony liability even if no sex act ever occurs, let alone in this state.  For similar reasons, numerous courts have struck down statutes prohibiting transmission of "harmful" material to minors.  *See* Mot. 22.  The State claims those statutes differ because "the posting of . . . material may occur in any state and be seen in any other state."  Opp. at 36:18-19.  But the same is true here.[12]

### III.   CONCLUSION

As this Court has recognized, Backpage.com is likely to prevail on its claims.  SB 6251 threatens to chill a significant amount of protected speech, is preempted by section 230 of the CDA, and purports to regulate conduct outside Washington State.  And it will not reduce sex trafficking, instead encouraging online service providers to undertake fewer efforts to combat it.  Backpage.com respectfully asks that the Court convert the temporary restraining order into a preliminary injunction.

---

[12] Even if the *Pike* test did apply, SB 6251 fails the balancing test.

BACKPAGE.COM'S REPLY ON MOTION FOR PRELIMINARY
INJUNCTION (2:12-CV-00954-RSM) — 19

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    DATED this 18th day of July, 2012.

2                                        DAVIS WRIGHT TREMAINE LLP

3                                        By    s/ Ambika K. Doran
4                                            James C. Grant, WSBA # 15358
                                             Ambika K. Doran, WSBA # 38237
5                                            1201 Third Avenue, Suite 2200
                                             Seattle, WA  98101-3045
6                                            Phone:   206-757-8096
7                                            Fax:     206-757-8096
                                             E-mail:  jamesgrant@dwt.com,
8                                                     ambikadoran@dwt.com

9                                            Of counsel:

10
                                              s/ Elizabeth L. McDougall
11                                           Elizabeth L. McDougall, WSBA # 27026
                                             Village Voice Media Holdings, LLC
12                                           1008 Western Avenue, Suite 300
                                             Seattle, WA 98104
13                                           Tel 206-467-4347
14                                           Fax 206-467-4389
                                             Liz.McDougall@villagevoicemedia.com
15
                                             Attorneys for Backpage.com, LLC
16

17

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 22001201 Third AvenueSeattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1

<u>CERTIFICATE OF SERVICE</u>

2

       I hereby certify that on July 18, 2012, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which will send notification of such filing to

4

all counsel for record who receive CM/ECF notification, and that the remaining parties

5

shall be served in accordance with the Federal Rules of Civil Procedure.

6

7

| Lana S. Weinmann | E-mail:  lana.weinmann@atg.wa.gov |
|---|---|
| David J. Eldred | E-mail:  davideldred@kingcounty.gov |
| Amy K. Eiden | E-mail:  amy.eiden@kingcounty.gov |
| Ione S. George | Email:  igeorge@co.kitsap.wa.us |
| Jacquelyn M. Aufderheide | Email:  jaufderh@co.kitsap.wa.us |
| Jeremy A. Morris | Email:  jmorris@co.kitsap.wa.us |
| Matthew J. Zimmerman | Email:  mattz@eff.org |
| Venkat Balasubramani | Email:  venkat@focallaw.com |

8

9

10

11

12

13

14

      DATED this 18th day of July, 2012.

15

16

               D<small>AVIS</small> W<small>RIGHT</small> T<small>REMAINE</small> LLP
               Attorneys for Backpage.com, LLC

17

18

            By <u>s/ Ambika K. Doran</u>

19

              James C. Grant, WSBA # 15358

20

              Ambika K. Doran, WSBA # 38237
              1201 Third Avenue, Suite 2200

21

              Seattle, WA  98101-3045
              Telephone: 206-757-8096

22

              Fax: 206-757-8096

23

              E-mail:  jamesgrant@dwt.com
              E-mail:  ambikadoran@dwt.com

24

25

26

27

Davis Wright Tremaine LLP
<small>LAW OFFICES</small>
<small>Suite 22001201 Third AvenueSeattle, WA  98101-3045</small>
<small>206.622.3150 main · 206.757.7700 fax</small>